## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 21-653-MN |
| | DEMAND FOR JURY TRIAL |
| NANOSTRING TECHNOLOGIES, INC., | |
| Defendant. | |

## FIRST AMENDED COMPLAINT

Plaintiffs 10x Genomics, Inc. ("10x") and Prognosys Biosciences, Inc. ("Prognosys") allege in their First Amended Complaint for patent infringement against Defendant NanoString Technologies, Inc. ("NanoString") as follows:

## NATURE OF THE ACTION

1.      This is an action for infringement of U.S. Patent Nos. 10,472,669 ("the 669 Patent"); 10,662,467 ("the 467 Patent"); 10,961,566 ("the 566 Patent"); 10,983,113 ("the 113 Patent"); 10,996,219 ("the 219 Patent"); 11,001,878 ("the 878 Patent"); and 11,008,607 ("the 607 Patent") (collectively, the "Asserted Patents"). This action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

## THE PARTIES

2.      10x is a Delaware corporation with its principal place of business at 6230 Stoneridge Mall Road, Pleasanton, CA 94588.

3.      10x is a pioneering innovator of genomics and sequencing technologies that are providing life science researchers and clinicians an unprecedented understanding of biology. By

elegantly combining its proprietary hardware, chemistry, and software, 10x has developed and brought to market award-winning products that give single cell and spatial views of complex biological systems. 10x's products have enabled previously infeasible forms of research in the life sciences in areas of critical importance to human health, including cancer research, neuroscience, immunology, infectious disease, and developmental biology.

4.      Prognosys is a Delaware corporation with its principal place of business at 3960 West Point Loma Boulevard, Suite H, PMB 41250, San Diego, CA 92110. Prognosys is the owner and licensor of the Asserted Patents.

5.      On information and belief, NanoString is a Delaware corporation with its principal place of business in Seattle, WA.

6.      NanoString makes, uses, sells, offers to sell, exports, and/or imports in the United States products, services, and components that have been and are used to infringe one or more claims of the Asserted Patents, actively induces infringement by others of the Asserted Patents, and contributes to the infringement by others of the Asserted Patents.

## JURISDICTION AND VENUE

7.      Plaintiffs incorporate the foregoing paragraphs of the Complaint by reference as if fully set for herein.

8.      This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C § 1 *et seq.*, including in particular under 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendant, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because NanoString is a Delaware corporation and thus resides in this district.

## BACKGROUND

A.      **10x Develops and Commercializes its Groundbreaking Single Cell and Spatial Technologies**

10.     10x is a life sciences technology company founded in 2012 in Pleasanton, California by Drs. Serge Saxonov and Benjamin Hindson. Since its inception, 10x has focused on building new technologies to enable breakthrough discoveries and accelerate the understanding of biology. To date, 10x has invested hundreds of thousands of hours and approximately $1 billion in research and development to invent, design, and develop its proprietary line of products for understanding biology at unprecedented resolution and scale. 10x continues to invest significant time and money to further innovate and bring ground-breaking new products and capabilities to market.

11.     10x is now a worldwide leader in genomics, the comprehensive study of biological systems at a molecular and cellular level. Since 10x's first commercial launch in 2015, 10x has launched more than 15 products that have collectively catalyzed a revolution in genomics, and that have won wide acclaim and commercial success. 10x has achieved an installed base of over 2,400 instruments around the world, including at all of the top 100 research institutions and all of the top 20 biopharmaceutical companies. Annual sales of 10x products exceeded $298 million in 2020.

12.     Over 2,500 peer-reviewed scientific articles have been published based on data generated from 10x products, including hundreds of articles in top journals such as *Cell*, *Science*, and *Nature*. This scientific work details the use of 10x products to discover, for example: molecular mechanisms that lead to brain, breast and lung cancers; how the immune system reacts to COVID-19 infection; and a new type of lung cell that causes cystic fibrosis. The paradigm-

changing nature of 10x's products has led to numerous accolades, including these products being named to *The Scientist* magazine's Top 10 Innovations in 2015, 2017, 2018, 2019, and 2020.

13.     10x's Chromium platform has been essential to enabling single cell genomics—the study of biology at a cell-by-cell resolution and at a massive, system-wide scale, ushering in a single-cell revolution hailed by *Science* magazine as the 2018 "Breakthrough of the Year." 10x is also a pioneer in multi-omics—the simultaneous study of different classes of biological information such as DNA, RNA, protein, and epigenetic factors—which was named by *Nature* magazine as "Method of the Year" in 2019.

14.     10x is a pioneer in the field of spatial analysis, which allows the large-scale interrogation of biological analytes with their spatial context. In contrast to prior techniques, in which analytes from a biological tissue are blended and analyzed as an average from various parts of the tissue, spatial analysis preserves the positions of the analytes. This allows researchers and clinicians to build a comprehensive map—a kind of Google Earth—of where each analyte is, so that function can be tied to location. 10x, through its Spatial Transcriptomics and later Visium products, has catalyzed the field of spatial analysis by providing the first commercial product to enable true spatial discovery. In 2020, *Nature Methods* named spatially resolved transcriptomics its "Method of the Year" and featured 10x's spatial technology on the cover. *See* https://www.nature.com/articles/s41592-020-01033-y. The 10x Visium Spatial Gene Expression product was named among the *Scientist* magazine's Top 10 Innovations in 2020.

### B.     The Infringing NanoString Products

15.     In 2019, NanoString announced the release of the GeoMx Digital Spatial Profiler and associated instruments and reagents ("GeoMx DSP"). *See* https://www.globenewswire.com/news-release/2019/03/27/1773718/26898/en/NanoString-

Announces-Commercial-Launch-of-GeoMx-Digital-Spatial-Profiler-at-the-2019-American-Association-of-Cancer-Research-Conference.html.

16.     The GeoMx DSP attempts to provide spatial profiling for protein or RNA for tissue. NanoString offers off-the-shelf assays for protein and RNA analyses using workflows that include the use of nCounter or next generation sequencing (NGS) applications. NanoString markets the GeoMx DSP as "designed to fit into a range of research and plex needs, including applications in oncology, immunology, neuroscience, and developmental biology." *See* https://www.nanostring.com/products/geomx-digital-spatial-profiler/applications/.

17.     NanoString provides GeoMx Protein Assays for spatial analysis of proteins from tissue. NanoString states that GeoMx Protein Assays "rel[y] upon antibodies coupled to photocleavable oligonucleotide tags designed for readout with nCounter® (≤96-plex) or NGS (over 100-plex) platforms. After hybridization of antibodies to slide-mounted tissue sections, the oligonucleotide tags are released from discrete regions of the tissue via UV exposure. Released tags are counted in a standard nCounter assay or sequenced using NGS, and counts are mapped back to tissue location yielding a spatially resolved digital profile of protein abundance." *See* https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/.

18.     NanoString provides GeoMx RNA Assays for spatial transcriptome analysis. For example, the NanoString Immune Pathways Panel "contains 84 targets plus controls designed for broad coverage of the tumor and tumor microenvironment. GeoMx RNA assays contain in situ hybridization (ISH) probes conjugated to unique DNA indexing-oligonucleotides via a UV-photocleavable linker. After region of interest (ROI) selection on GeoMx DSP and UV cleavage of the oligonucleotides, each DNA oligonucleotide is recognized by a unique Reporter probe that contains a fluorescent barcode. Reporter probes are imaged and counted by the nCounter®

Analysis System to provide a direct, digital readout of spatially resolved RNA expression." *See* https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-rna-assays/immune-pathways-rna-assays/.

19. NanoString practices the Asserted Patents by providing customers with a Technology Access Program (TAP), through which customers submit tissue samples to NanoString's Pathology Services Lab. NanoString processes samples using GeoMx DSP and provides customers with reports including raw data and analyzed results. *See* https://www.nanostring.com/products/geomx-digital-spatial-profiler/dsp-technology-access-program/.

### C. The Patents In Suit

20. Through the development and subsequent making, using, selling, offering for sale, and/or importing of its GeoMx DSP and GeoMx Protein and RNA Assays, NanoString has and continues directly to infringe, contributorily infringe, and/or induce the infringement of the "Asserted Patents":

(a) U.S. Patent No. 10,472,669, entitled "Spatially encoded biological assays" (Exhibit 1);

(b) U.S. Patent No. 10,662,467, entitled "Spatially encoded biological assays" (Exhibit 2);

(c) U.S. Patent No. 10,961,566, entitled "Spatially encoded biological assays" (Exhibit 3);

(d) U.S. Patent No. 10,983,133, entitled "Spatially encoded biological assays" (Exhibit 4);

(e) U.S Patent No. 10,966,219, entitled "Spatially encoded biological assays" (Exhibit 5);

(f) U.S. Patent No. 11,001,878, entitled "Spatially encoded biological assays" (Exhibit 6); and

(g) U.S. Patent No. 11,008,607, entitled "Spatially encoded biological assays" (Exhibit 7).

6

21.     The 669 Patent was duly and legally issued on November 12, 2019, by the United States Patent and Trademark Office. U.S. Application No. 16/402,098, which issued as the 669 Patent, claims the benefit of U.S. Application No. 13/080,616, filed on April 5, 2011, and Provisional Application No. 61/321,124, filed on April 5, 2010. Mark Chee is the named inventor of the 669 Patent.

22.     Prognosys is the sole legal owner of the 669 Patent. A true and correct copy of the assignment abstract and record of the 669 Patent is attached as Exhibit 8. 10x is the exclusive licensee of the 669 Patent, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

23.     The 467 Patent was duly and legally issued on May 26, 2020, by the United States Patent and Trademark Office. U.S. Application No. 16/276,260, which issued as the 467 Patent, claims the benefit of U.S. Application No. 13/080,616, filed on April 5, 2011, and Provisional Application No. 61/321,124, filed on April 5, 2010. Mark Chee is the named inventor of the 467 Patent.

24.     Prognosys is the sole legal owner of the 467 Patent. A true and correct copy of the assignment abstract and record of the 467 Patent is attached as Exhibit 9. 10x is the exclusive licensee of the 467 Patent, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

25.     The 566 Patent was duly and legally issued on March 30, 2021, by the United States Patent and Trademark Office. U.S. Application No. 16/988,284, which issued as the 566 Patent, claims the benefit of U.S. Application No. 13/080,616, filed on April 5, 2011, and Provisional Application No. 61/321,124, filed on April 5, 2010. Mark Chee is the named inventor of the 566 Patent.

26.     Prognosys is the sole legal owner of the 566 Patent. A true and correct copy of the assignment abstract and record of the 566 Patent is attached as Exhibit 10. 10x is the exclusive licensee of the 566 Patent, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

27.     The 113 Patent was duly and legally issued on April 20, 2021, by the United States Patent and Trademark Office. U.S. Application No. 16/837,924, which issued as the 113 Patent, claims the benefit of U.S. Application No. 13/080,616, filed on April 5, 2011, and Provisional Application No. 61/321,124, filed on April 5, 2010. Mark Chee is the named inventor of the 113 Patent.

28.     Prognosys is the sole legal owner of the 113 Patent. A true and correct copy of the assignment abstract and record of the 113 Patent is attached as Exhibit 11. 10x is the exclusive licensee of the 113 Patent, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

29.     The 219 Patent was duly and legally issued on May 4, 2021, by the United States Patent and Trademark Office. U.S. Application No. 16/435,295, which issued as the 219 Patent, claims the benefit of U.S. Application No. 13/080,616, filed on April 5, 2011, and Provisional Application No. 61/321,124, filed on April 5, 2010. Mark Chee is the named inventor of the 219 Patent.

30.     Prognosys is the sole legal owner of the 219 Patent. A true and correct copy of the assignment abstract and record of the 219 Patent is attached as Exhibit 12. 10x is the exclusive licensee of the 219 Patent, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

31.     The 878 Patent was duly and legally issued on May 11, 2021, by the United States Patent and Trademark Office. U.S. Application No. 17/144,965, which issued as the 878 Patent, claims the benefit of U.S. Application No. 13/080,616, filed on April 5, 2011, and Provisional Application No. 61/321,124, filed on April 5, 2010. Mark Chee is the named inventor of the 878 Patent.

32.     Prognosys is the sole legal owner of the 878 Patent. A true and correct copy of the assignment abstract and record of the 878 Patent is attached hereto as Exhibit 13. 10x is the exclusive licensee of the 878 Patent, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

33.     The 607 Patent was duly and legally issued on May 18, 2021, by the United States Patent and Trademark Office. U.S. Application No. 17/097,824, which issued as the 607 Patent, claims the benefit of U.S. Application No. 13/080,616, filed on April 5, 2011, and Provisional Application No. 61/321,124, filed on April 5, 2010. Mark Chee is the named inventor of the 607 Patent.

34.     Prognosys is the sole legal owner of the 607 Patent. A true and correct copy of the assignment abstract and record of the 607 Patent is attached hereto as Exhibit 14. 10x is the exclusive licensee of the 607 Patent, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

35.     NanoString has been on notice of its infringement of the 669, 467, 566, 113 and 219 Patents on or around May 5, 2021, when NanoString received a letter ("May 5 Letter") from 10x detailing how NanoString and other users of NanoString's GeoMx DSP and related products infringe the 669, 467, 566, 113 and 219 Patents and no later than the first Complaint (D.I. 1) in this action. On information and belief, NanoString has been on notice of the 878 Patent and 607

Patents since before this First Amended Complaint, on or around their issuances on May 11, 2021, and May 18, 2021, respectively, and was contemporaneously on notice of how NanoString and other users of NanoString's GeoMx DSP and related products infringe the 878 and 607 Patents as a consequence of its receipt of the May 5 Letter and the Complaint.

## COUNT I: Infringement of U.S. Patent No. 10,472,669

36.    Plaintiffs incorporate and reallege paragraphs 1 – 35 above as if fully set forth herein.

37.    The "669 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's GeoMx DSP for use in conjunction with an NGS platform wherein probes comprising a protein are used. The 669 Patent Accused Instrumentalities include, for example and without limitation, NanoString's GeoMx DSP and all products and components sold by NanoString for use in NanoString's GeoMx DSP workflows for NGS with GeoMx Protein Assays and all services provided by NanoString in connection with its GeoMx DSP workflows for NGS with GeoMx Protein Assays.

38.    NanoString has willfully infringed and continues to willfully infringe one or more claims of the 669 Patent, including without limitation claims 1-3, 5, and 7-30, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the 669 Patent Accused Instrumentalities and/or components thereof. Attachment A provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 669 Patent Accused Instrumentalities.

39.    NanoString, without authority and with knowledge of the 669 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 669 Patent,

including without limitation claims 1-3, 5, and 7-30, under 35 U.S.C. § 271(b) by making and selling the 669 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the 669 Patent Accused Instrumentalities, to use the 669 Patent Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 669 Patent including as described in Attachment A. *See, e.g.*, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-dsp-overview/, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/, https://blog.nanostring.com/geomx-online-user-manual-v2.1/Content/Home2.0.htm.

On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 669 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. One or more of NanoString's customers and end users of the 669 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the 669 Patent by using the 669 Patent Accused Instrumentalities in accordance with NanoString's instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment A and incorporated herein by reference.

40.    NanoString has contributed to the infringement of one or more claims of the 669 Patent, including without limitation claims 1-3, 5, and 7-30, pursuant to 35 U.S.C. § 271(c) by importing selling, and/or offering for sale GeoMx DSP and GeoMx Protein Assays, or has others perform such acts on its behalf, specifically so that the GeoMx DSP and GeoMx Protein Assays will be used in an infringing manner by others, including use as described in Attachment A by

NanoString's customers and end users. Further, the GeoMx DSP and GeoMx Protein Assays were designed specifically to be used in a manner that infringes the asserted claims of the 669 Patent. For example, and without limitation, GeoMx DSP instrument and/or GeoMx Protein Assays are material components of the claimed inventions. When the GeoMx DSP and GeoMx Protein Assay components are used, the claims of the 669 Patent are infringed, as described for one example in Attachment A. Moreover, as shown in NanoString's instructional materials in which no non-infringing use of the GeoMx DSP and GeoMx Protein Assays is described, there is no other substantial use for the GeoMx DSP with GeoMx Protein Assays. Thus, the GeoMx DSP with GeoMx Protein Assays are a material part of the claimed inventions of the 669 Patent that when used result in infringement. As a result of NanoString's selling, and/or offering for sale of GeoMx DSP with GeoMx Protein Assays, other entities on information and belief use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 669 Patent Accused Instrumentalities, directly infringe the asserted claims of the 669 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment A. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 669 Patent claims and as to the fact that the GeoMx DSP and GeoMx Protein Assays are especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and do not have substantial non-infringing uses.

41.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 669 Patent and the infringement of the 669 Patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew,

should have known, or was willfully blind to the existence of the 669 Patent on or around May 5, 2021, for the reasons described above. On information and belief, NanoString also knew, should have known, or was willfully blind to the existence of the 669 Patent on or around the issuance date of the 669 Patent as a result of NanoString's monitoring of 10x's patent portfolio. *See* U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

42.    Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 669 Patent.

43.    NanoString's infringement of the 669 Patent has been and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 669 Patent and the infringement of the 669 Patent as described above, and has proceeded to design, develop, market, and sell the 669 Patent Accused Instrumentalities in an attempt to compete with 10x, with full knowledge of the 669 patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

44.    Unless NanoString is enjoined from infringing the 669 Patent, Plaintiffs will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT II: Infringement of U.S. Patent No. 10,662,467

45.    Plaintiffs incorporate and reallege paragraphs 1 - 44 above as if fully set forth herein.

46.    The "467 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's GeoMx DSP for use in

conjunction with an NGS platform wherein probes comprising a protein are used. The 467 Patent Accused Instrumentalities include, for example and without limitation, NanoString's GeoMx DSP and all products and components sold by NanoString for use in NanoString's GeoMx DSP workflows for NGS with GeoMx Protein Assays and all services provided by NanoString in connection with its GeoMx DSP workflows for NGS with GeoMx Protein Assays.

47.     NanoString has willfully infringed and continues to willfully infringe one or more claims of the 467 Patent, including without limitation claims 1-4, 7, 9-11, and 13-30, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the 467 Accused Instrumentalities and/or components thereof. Attachment B provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 467 Patent Accused Instrumentalities.

48.     NanoString, without authority and with knowledge of the 467 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 467 Patent, including without limitation claims 1-4, 7, 9-11, and 13-30, under 35 U.S.C. § 271(b) by making and selling the 467 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the 467 Patent Accused Instrumentalities, to use the 467 Patent Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 467 Patent including as described in Attachment B. *See, e.g.*, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-dsp-overview/, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/, https://blog.nanostring.com/geomx-online-user-manual-v2.1/Content/Home2.0.htm.

On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 467 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. One or more of NanoString's customers and end users of the 467 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the 467 Patent by using the 467 Patent Accused Instrumentalities in accordance with NanoString's instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment B and incorporated herein by reference.

49.     NanoString has contributed to the infringement of one or more claims of the 467 Patent, including without limitation claims 1-4, 7, 9-11, and 13-30, pursuant to 35 U.S.C. § 271(c) by importing selling, and/or offering for sale GeoMx DSP and GeoMx Protein Assays, or has others perform such acts on its behalf, specifically so that the GeoMx DSP and GeoMx Protein Assays will be used in an infringing manner by others, including use as described in Attachment B by NanoString's customers and end users. Further, the GeoMx DSP and GeoMx Protein Assays were designed specifically to be used in a manner that infringes the asserted claims of the 467 Patent. For example, and without limitation, GeoMx DSP instrument and/or GeoMx Protein Assays are material components of the claimed inventions. When the GeoMx DSP and GeoMx Protein Assay components are used, the claims of the 467 Patent are infringed, as described for one example in Attachment B. Moreover, as shown in NanoString's instructional materials in which no non-infringing use of the GeoMx DSP and GeoMx Protein Assays is described, there is no other substantial use for the GeoMx DSP with GeoMx Protein Assays. Thus, the GeoMx DSP with GeoMx Protein Assays are a material part of the claimed

inventions of the 467 Patent that when used result in infringement. As a result of NanoString's selling, and/or offering for sale of GeoMx DSP with GeoMx Protein Assays, other entities on information and belief use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 467 Patent Accused Instrumentalities, directly infringe the asserted claims of the 467 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment B. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 467 Patent claims and as to the fact that the GeoMx DSP and GeoMx Protein Assays are especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and do not have substantial non-infringing uses.

50.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 467 Patent and the infringement of the 467 Patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 467 Patent on or around May 5, 2021, for the reasons described above. On information and belief, NanoString also knew, should have known, or was willfully blind to the existence of the 467 Patent on or around the issuance date of the 467 Patent as a result of NanoString's monitoring of 10x's patent portfolio. *See* U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

51.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 467 Patent.

52.     NanoString's infringement of the 467 Patent has been and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 467 Patent

and the infringement of the 467 Patent as described above, and has proceeded to design, develop, market, and sell the 467 Patent Accused Instrumentalities in an attempt to compete with 10x, with full knowledge of the 467 patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

53.     Unless NanoString is enjoined from infringing the 467 Patent, Plaintiffs will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT III: Infringement of U.S. Patent No. 10,961,566

54.     Plaintiffs incorporate and reallege paragraphs 1 - 53 above as if fully set forth herein.

55.     The "566 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's GeoMx DSP for use in conjunction with an NGS platform wherein probes comprising a protein are used. The 566 Patent Accused Instrumentalities include, for example and without limitation, NanoString's GeoMx DSP and all products and components sold by NanoString for use in NanoString's GeoMx DSP workflows for NGS with GeoMx Protein Assays and all services provided by NanoString in connection with its GeoMx DSP workflows for NGS with GeoMx Protein Assays.

56.     NanoString has willfully infringed and continues to willfully infringe one or more claims of the 566 Patent, including without limitation claims 1-30, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the 566 Patent Accused

Instrumentalities and/or components thereof. Attachment C provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 566 Patent Accused Instrumentalities.

57.     NanoString, without authority and with knowledge of the 566 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 566 Patent under, including without limitation claims 1-30, 35 U.S.C. § 271(b) by making and selling the 566 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the 566 Patent Accused Instrumentalities, to use the 566 Patent Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 566 Patent including as described in Attachment C. *See, e.g.*, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-dsp-overview/, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/, https://blog.nanostring.com/geomx-online-user-manual-v2.1/Content/Home2.0.htm. On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 566 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. One or more of NanoString's customers and end users of the 566 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the 566 Patent by using the 566 Patent Accused Instrumentalities in accordance with NanoString's instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment C and incorporated herein by reference.

58.     NanoString has contributed to the infringement of one or more claims of the 566 Patent, including without limitation claims 1-30, pursuant to 35 U.S.C. § 271(c) by importing selling, and/or offering for sale GeoMx DSP and GeoMx Protein Assays, or has others perform such acts on its behalf, specifically so that the GeoMx DSP and GeoMx Protein Assays will be used in an infringing manner by others, including use as described in Attachment C by NanoString's customers and end users. Further, the GeoMx DSP and GeoMx Protein Assays were designed specifically to be used in a manner that infringes the asserted claims of the 566 Patent. For example, and without limitation, GeoMx DSP instrument and/or GeoMx Protein Assays are material components of the claimed inventions. When the GeoMx DSP and GeoMx Protein Assay components are used, the claims of the 566 Patent are infringed, as described for one example in Attachment C. Moreover, as shown in NanoString's instructional materials in which no non-infringing use of the GeoMx DSP and GeoMx Protein Assays is described, there is no other substantial use for the GeoMx DSP with GeoMx Protein Assays. Thus, the GeoMx DSP with GeoMx Protein Assays are a material part of the claimed inventions of the 566 Patent that when used result in infringement. As a result of NanoString's selling, and/or offering for sale of GeoMx DSP with GeoMx Protein Assays, other entities on information and belief use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 566 Patent Accused Instrumentalities, directly infringe the asserted claims of the 566 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment C. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 566 Patent claims and as to the fact that the GeoMx DSP and GeoMx Protein

Assays are especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and do not have substantial non-infringing uses.

59.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 566 Patent and the infringement of the 566 Patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 566 Patent on or around May 5, 2021, for the reasons described above. On information and belief, NanoString also knew, should have known, or was willfully blind to the existence of the 566 Patent on or around the issuance date of the 566 Patent as a result of NanoString's monitoring of 10x's patent portfolio. *See* U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

60.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 566 Patent.

61.     NanoString's infringement of the 566 Patent has been and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 566 Patent and the infringement of the 566 Patent as described above, and has proceeded to design, develop, market, and sell the 566 Patent Accused Instrumentalities in an attempt to compete with 10x, with full knowledge of the 566 patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

62.     Unless NanoString is enjoined from infringing the 566 Patent, Plaintiffs will suffer irreparable injury for which damages are an inadequate remedy.

<u>**COUNT IV: Infringement of U.S. Patent No. 10,983,113**</u>

63.     Plaintiffs incorporate and reallege paragraphs 1 - 6262 above as if fully set forth herein.

64.     The "113 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's GeoMx DSP for use in conjunction with an nCounter or NGS platform and wherein probes comprising a protein are used. The 113 Patent Accused Instrumentalities include, for example and without limitation, NanoString's GeoMx DSP, NanoString's nCounter, and all products and components sold by NanoString for use in NanoString's GeoMx DSP workflows with GeoMx Protein Assays for nCounter or NGS and all services provided by NanoString using its GeoMx DSP workflows with GeoMx Protein Assays for nCounter or NGS.

65.     NanoString has willfully infringed and continues to willfully infringe one or more claims of the 113 Patent, including without limitation claims 1-15, 17, 19, 20, and 22-30, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the 113 Patent Accused Instrumentalities and/or components thereof. Attachment D provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 113 Patent Accused Instrumentalities.

66.     NanoString, without authority and with knowledge of the 113 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 113 Patent, including without limitation claims 1-15, 17, 19, 20, and 22-30, under 35 U.S.C. § 271(b) by

making and selling the 113 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the 113 Patent Accused Instrumentalities, to use the 113 Patent Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 113 Patent including as described in Attachment D *See, e.g.*, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-dsp-overview/, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-rna-assays/, https://blog.nanostring.com/geomx-online-user-manual-v2.1/Content/Home2.0.htm.

On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 113 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. One or more of NanoString's customers and end users of the 113 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the 113 Patent by using the 113 Patent Accused Instrumentalities in accordance with NanoString's instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment D and incorporated herein by reference.

67.     NanoString has contributed to the infringement of one or more claims of the 113 Patent, including without limitation claims 1-15, 17, 19, 20, and 22-30, pursuant to 35 U.S.C. § 271(c) by importing selling, and/or offering for sale GeoMx DSP and GeoMx Protein Assays, or has others perform such acts on its behalf, specifically so that the GeoMx DSP with GeoMx Protein Assays will be used in an infringing manner by others, including use as described in

22

Attachment D by NanoString's customers and end users. Further, the GeoMx DSP with GeoMx Protein Assays were designed specifically to be used in a manner that infringes the asserted claims of the 113 Patent. For example, and without limitation, GeoMx DSP instrument and/or GeoMx Protein Assays are material components of the claimed inventions. When the GeoMx DSP and GeoMx Protein Assay components are used, the claims of the 113 Patent are infringed, as described for one example in Attachment D. Moreover, as shown in NanoString's instructional materials in which no non-infringing use of the GeoMx DSP and GeoMx Protein Assays is described, there is no other substantial use for the GeoMx DSP with GeoMx Protein Assays. Thus, the GeoMx DSP with GeoMx Protein Assays are a material part of the claimed inventions of the 113 Patent that when used result in infringement. As a result of NanoString's selling, and/or offering for sale of GeoMx DSP with GeoMx Protein Assays, other entities on information and belief use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 113 Patent Accused Instrumentalities, directly infringe the asserted claims of the 113 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment D. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 113 Patent claims and as to the fact that the GeoMx DSP and GeoMx Protein Assays are especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and do not have substantial non-infringing uses.

68.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 113 Patent and the infringement of the 113 Patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew,

should have known, or was willfully blind to the existence of the 113 Patent on or around May 5, 2021, for the reasons described above. On information and belief, NanoString also knew, should have known, or was willfully blind to the existence of the 113 Patent on or around the issuance date of the 113 Patent as a result of NanoString's monitoring of 10x's patent portfolio. *See* U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

69.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 113 Patent.

70.     NanoString's infringement of the 113 Patent has been and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 113 Patent and the infringement of the 113 Patent as described above, and has proceeded to design, develop, market, and sell the 113 Patent Accused Instrumentalities in an attempt to compete with 10x, with full knowledge of the 113 Patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

71.     Unless NanoString is enjoined from infringing the 113 Patent, Plaintiffs will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT V: Infringement of U.S. Patent No. 10,996,219

72.     Plaintiffs incorporate and reallege paragraphs 1 - 71 above as if fully set forth herein.

73.     The "219 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's GeoMx DSP for use in

24

conjunction with an nCounter or NGS platform. The 219 Patent Accused Instrumentalities include, for example and without limitation, NanoString's GeoMx DSP, NanoString's nCounter, and all products and components sold by NanoString for use in NanoString's GeoMx DSP workflows with GeoMx Protein or RNA Assays for nCounter or NGS and all services provided by NanoString using its GeoMx DSP workflows with GeoMx Protein or RNA Assays for nCounter or NGS.

74.    NanoString has willfully infringed and continues to willfully infringe one or more claims of the 219 Patent, including without limitation claims 1-6 and 8-29, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the 219 Patent Accused Instrumentalities and/or components thereof. Attachment E provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 219 Patent Accused Instrumentalities.

75.    NanoString, without authority and with knowledge of the 219 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 219 Patent, including without limitation claims 1-6 and 8-29, under 35 U.S.C. § 271(b) by making and selling the 219 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the 219 Patent Accused Instrumentalities, to use the 219 Patent Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 219 Patent including as described in Attachment E. *See, e.g.*, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-dsp-overview/,

https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/,

https://blog.nanostring.com/geomx-online-user-manual-v2.1/Content/Home2.0.htm.

On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 219 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. One or more of NanoString's customers and end users of the 219 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the 219 Patent by using the 219 Patent Accused Instrumentalities in accordance with NanoString's instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment E and incorporated herein by reference.

76.     NanoString has contributed to the infringement of one or more claims of the 219 Patent, including without limitation claims 1-6 and 8-29, pursuant to 35 U.S.C. § 271(c) by importing selling, and/or offering for sale GeoMx DSP and GeoMx Protein and/or RNA Assays, or has others perform such acts on its behalf, specifically so that the GeoMx DSP with GeoMx Protein and/or RNA Assays will be used in an infringing manner by others, including use as described in Attachment E by NanoString's customers and end users. Further, the GeoMx DSP with GeoMx Protein and/or RNA Assays were designed specifically to be used in a manner that infringes the asserted claims of the 219 Patent. For example, and without limitation, GeoMx DSP instrument and/or GeoMx Protein Assays and/or GeoMx RNA Assays are material components of the claimed inventions. When the GeoMx DSP and GeoMx Protein and/or RNA Assay components are used, the claims of the 219 Patent are infringed, as described for one example in Attachment E. Moreover, as shown in NanoString's instructional materials in which no non-

infringing use of the GeoMx DSP and GeoMx Protein and/or RNA Assays is described, there is no other substantial use for the GeoMx DSP with GeoMx Protein and/or RNA Assays. Thus, the GeoMx DSP with GeoMx Protein and/or RNA Assays are a material part of the claimed inventions of the 219 Patent that when used result in infringement. As a result of NanoString's selling, and/or offering for sale of GeoMx DSP with GeoMx Protein and/or RNA Assays, other entities on information and belief use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 219 Patent Accused Instrumentalities, directly infringe the asserted claims of the 219 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment E. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 219 Patent claims and as to the fact that the GeoMx DSP and GeoMx Protein and/or RNA Assays are especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and do not have substantial non-infringing uses.

77.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 219 Patent and the infringement of the 219 Patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 219 Patent on or around May 5, 2021, for the reasons described above. On information and belief, NanoString also knew, should have known, or was willfully blind to the existence of the 219 Patent on or around the issuance date of the 219 Patent as a result of NanoString's monitoring of 10x's patent portfolio. *See* U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

78.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 219 Patent.

79.     NanoString's infringement of the 219 Patent has been and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 219 Patent and the infringement of the 219 Patent as described above, and has proceeded to design, develop, market, and sell the 219 Patent Accused Instrumentalities in an attempt to compete with 10x, with full knowledge of the 219 Patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

80.     Unless NanoString is enjoined from infringing the 219 Patent, Plaintiffs will suffer irreparable injury for which damages are an inadequate remedy.

**COUNT VI: Infringement of U.S. Patent No. 11,001,878**

81.     Plaintiffs incorporate and reallege paragraphs 1 - 8062 above as if fully set forth herein.

82.     The "878 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's GeoMx DSP for use in conjunction with an nCounter. The 878 Patent Accused Instrumentalities include, for example and without limitation, NanoString's GeoMx DSP, NanoString's nCounter, and all products and components sold by NanoString for use in NanoString's GeoMx DSP workflows with GeoMx Protein or RNA Assays for nCounter and all services provided by NanoString using its GeoMx DSP workflows with GeoMx Protein or RNA Assays for nCounter.

28

83.     NanoString has willfully infringed and continues to willfully infringe one or more claims of the 878 Patent, including without limitation claims 1-9 and 11-27, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the 878 Patent Accused Instrumentalities and/or components thereof. Attachment F hereto provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 878 Patent Accused Instrumentalities.

84.     NanoString, without authority and with knowledge of the 878 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 878 Patent, including without limitation claims 1-9 and 11-27, under 35 U.S.C. § 271(b) by making and selling the 878 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the 878 Patent Accused Instrumentalities, to use the 878 Patent Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 878 Patent including as described in Attachment F hereto. *See, e.g.*, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-dsp-overview/, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/, https://blog.nanostring.com/geomx-online-user-manual-v2.1/Content/Home2.0.htm.

On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 878 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. One or more of NanoString's customers and end users of the 878 Patent Accused

Instrumentalities have directly infringed and continue to directly infringe the 878 Patent by using the 878 Patent Accused Instrumentalities in accordance with NanoString's instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment F and incorporated herein by reference.

85.     NanoString has contributed to the infringement of one or more claims of the 878 Patent, including without limitation claims 1-9 and 11-27, pursuant to 35 U.S.C. § 271(c) by importing selling, and/or offering for sale GeoMx DSP and GeoMx Protein and/or RNA Assays, or has others perform such acts on its behalf, specifically so that the GeoMx DSP with GeoMx Protein and/or RNA Assays will be used in an infringing manner by others, including use as described in Attachment F by NanoString's customers and end users. Further, the GeoMx DSP with GeoMx Protein and/or RNA Assays were designed specifically to be used in a manner that infringes the asserted claims of the 878 Patent. For example, and without limitation, GeoMx DSP instrument and/or GeoMx Protein Assays and/or GeoMx RNA Assays are material components of the claimed inventions. When the GeoMx DSP and GeoMx Protein and/or RNA Assay components are used, the claims of the 878 Patent are infringed, as described for one example in Attachment F. Moreover, as shown in NanoString's instructional materials in which no non-infringing use of the GeoMx DSP and GeoMx Protein and/or RNA Assays is described, there is no other substantial use for the GeoMx DSP with GeoMx Protein and/or RNA Assays. Thus, the GeoMx DSP with GeoMx Protein and/or RNA Assays are a material part of the claimed inventions of the 878 Patent that when used result in infringement. As a result of NanoString's selling, and/or offering for sale of GeoMx DSP with GeoMx Protein and/or RNA Assays, other entities on information and belief use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of

the 878 Patent Accused Instrumentalities, directly infringe the asserted claims of the 878 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment F. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 878 Patent claims and as to the fact that the GeoMx DSP and GeoMx Protein and/or RNA Assays are especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and do not have substantial non-infringing uses.

86.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 878 Patent and the infringement of the 878 Patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 878 Patent on or around the issuance date of the 878 Patent as a result of the earlier filing of the Complaint in this matter and also as a result of NanoString's monitoring of 10x's patent portfolio. *See* U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

87.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 878 Patent.

88.     NanoString's infringement of the 878 Patent has been and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 878 Patent and the infringement of the 878 Patent as described above, and has proceeded to design, develop, market, and sell the 878 Patent Accused Instrumentalities in an attempt to compete with 10x, with full knowledge of the 878 Patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith,

deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

89.     Unless NanoString is enjoined from infringing the 878 Patent, Plaintiffs will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT VII: Infringement of U.S. Patent No. 11,008,607

90.     Plaintiffs incorporate and reallege paragraphs 1 - 89 above as if fully set forth herein.

91.     The "607 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's GeoMx DSP for use in conjunction with an NGS platform wherein RNA probes are used. The 607 Patent Accused Instrumentalities include, for example and without limitation, NanoString's GeoMx DSP and all products and components sold by NanoString for use in NanoString's GeoMx DSP workflows for NGS with RNA Assays for NGS and all services provided by NanoString in connection with its GeoMx DSP workflows with GeoMx RNA Assays for NGS.

92.     NanoString has willfully infringed and continues to willfully infringe one or more claims of the 607 Patent, including without limitation claims 1-28, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the 607 Patent Accused Instrumentalities and/or components thereof. Attachment G hereto provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 607 Patent Accused Instrumentalities.

93.     NanoString, without authority and with knowledge of the 607 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 607 Patent, including without limitation claims 1-28, under 35 U.S.C. § 271(b) by making and selling the 607 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the 607 Patent Accused Instrumentalities, to use the 607 Patent Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 607 Patent including as described in Attachment G. *See, e.g.*, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-dsp-overview/, https://www.nanostring.com/products/geomx-digital-spatial-profiler/geomx-protein-assays/, https://blog.nanostring.com/geomx-online-user-manual-v2.1/Content/Home2.0.htm. On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 607 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. One or more of NanoString's customers and end users of the 607 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the 607 Patent by using the 607 Patent Accused Instrumentalities in accordance with NanoString's instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment G and incorporated herein by reference.

94.     NanoString has contributed to the infringement of one or more claims of the 607 Patent, including without limitation claims 1-28, pursuant to 35 U.S.C. § 271(c) by importing selling, and/or offering for sale GeoMx DSP and GeoMx RNA Assays, or has others perform

33

such acts on its behalf, specifically so that the GeoMx DSP with GeoMx RNA Assays will be used in an infringing manner by others, including use as described in Attachment G by NanoString's customers and end users. Further, the GeoMx DSP with GeoMx RNA Assays were designed specifically to be used in a manner that infringes the asserted claims of the 607 Patent. For example, and without limitation, GeoMx DSP instrument and/or GeoMx RNA Assays are material components of the claimed inventions. When the GeoMx DSP and GeoMx RNA Assay components are used, the claims of the 607 Patent are infringed, as described for one example in Attachment G. Moreover, as shown in NanoString's instructional materials in which no non-infringing use of the GeoMx DSP and GeoMx RNA Assays is described, there is no other substantial use for the GeoMx DSP with GeoMx RNA Assays. Thus, the GeoMx DSP with GeoMx RNA Assays are a material part of the claimed inventions of the 607 Patent that when used result in infringement. As a result of NanoString's selling, and/or offering for sale of GeoMx DSP with GeoMx RNA Assays, other entities on information and belief use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 607 Patent Accused Instrumentalities, directly infringe the asserted claims of the 607 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment G. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 607 Patent claims and as to the fact that the GeoMx DSP and GeoMx RNA Assays are especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and do not have substantial non-infringing uses.

95.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 607 Patent and the infringement of the 607 Patent as described

above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 607 Patent on or around the issuance date of the 607 Patent as a result of the earlier filing of the Complaint in this matter and also as a result of NanoString's monitoring of 10x's patent portfolio. *See* U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

96.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 607 Patent.

97.     NanoString's infringement of the 607 Patent has been and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 607 Patent and the infringement of the 607 Patent as described above, and has proceeded to design, develop, market, and sell the 607 Patent Accused Instrumentalities in an attempt to compete with 10x, with full knowledge of the 607 Patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

98.     Unless NanoString is enjoined from infringing the 607 Patent, Plaintiffs will suffer irreparable injury for which damages are an inadequate remedy.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter the following relief in its favor and against NanoString:

A. For entry of judgment that the 669 Patent, the 467 Patent, the 566 Patent, 113 Patent, the 219 Patent, the 878 Patent, and the 607 Patent have been and continue to be directly and/or indirectly infringed by NanoString, either literally or under the doctrine of equivalents;

B. For a declaration that each of the Asserted Patents is valid and enforceable;

C. For permanent injunctions enjoining the aforesaid acts of infringement by NanoString, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, and dealers. In the alternative, if the Court finds that an injunction is not warranted, Plaintiffs request an award of post-judgment royalty to compensate for future infringement;

D. An award of all monetary relief adequate to compensate for damages resulting from NanoString's infringement, including lost profits but in no event less than a reasonable royalty under 35 U.S.C. § 284 for NanoString's infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

E. A judgment that NanoString has willfully infringed one or more claims of the Asserted Patents;

F. A judgment awarding treble patent damages pursuant to 35 U.S.C. § 284 as a result of NanoString's willful conduct in relation to the Asserted Patents;

G. A declaration that the case is an exceptional case and that NanoString be required to pay Plaintiffs' attorneys' fees pursuant to 35 U.S.C. § 285;

H.  A judgment awarding Plaintiffs such other and further relief as the Court may deem just, reasonable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

*Of Counsel*:

TENSEGRITY LAW GROUP LLP

Matthew Powers (*pro hac vice*)
Paul Ehrlich (*pro hac vice*)
Stefani Smith (*pro hac vice*)
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Samantha Jameson (*pro hac vice*)
Kiley White (*pro hac vice*)
8260 Greensboro Dr.
Suite 260
McLean, VA 22102-3848
Tel: (650) 802-6000

10x_NSTG_Service@tensegritylawgroup.com

Dated: May 19, 2021

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for Plaintiffs*