# UNITED STATES DISTRICT COURT
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC. <br><br> Plaintiffs, <br><br> v. <br><br> NANOSTRING TECHNOLOGIES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 21-cv-653-MN <br><br> **JURY TRIAL DEMANDED** |

## NANOSTSRING TECHNOLOGIES INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS

Dated: July 1, 2021

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Kaitlin Paulson (admitted *pro hac vice*)
Concord Cheung (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

*Attorneys for Defendant NanoString Technologies, Inc.*

# **TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II. SUMMARY OF THE ARGUMENT .................................................................................1

III. STATEMENT OF FACTS ..................................................................................................2

    A. The Accused Products.............................................................................................2

    B. Plaintiffs' Patents And Their Infringement Allegations .........................................4

IV. LEGAL STANDARD ON A MOTION TO DISMISS.......................................................7

V. ARGUMENT .......................................................................................................................7

    A. Plaintiffs' Willfulness Allegations Should Be Dismissed ......................................7

        1. Plaintiffs Fail To Plausibly Allege Knowledge Of The Patents-in-Suit ...............................................................................................................9

        2. Plaintiffs Fail To Plausibly Allege The Required Intent And Conduct For Willfulness ......................................................................................12

    B. Plaintiffs' Inducement Patent Infringement Claim Should Be Dismissed.............14

    C. Plaintiffs' Contributory Patent Infringement Claims Should Be Dismissed .........14

VI. CONCLUSION..................................................................................................................15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*APS Tech., Inc. v. Vertex Downhole, Inc.*,
  No. 19-cv-1166 (MN), 2020 WL 4346700 (D. Del. July 29, 2020) .......................................... 7

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ........................................................................................ 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 7

*Callwave Commc'ns LLC v. AT & T Mobility LLC*,
  No. 12-cv-1701-RGA, 2014 WL 5363741 (D. Del. Jan. 28, 2014) ......................................... 9

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F.Supp.3d 465 (D. Del. 2016) .......................................................................................... 9

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
  No. 18-cv-098 (MN), 2019 WL 3069773 (D. Del. July 12, 2019) ................................... 12, 14

*Evolved Wireless, LLC v. Samsung Elecs. Co.*,
  No. 15-cv-545-SLR-SRF, 2016 WL 1019667 (D. Del. Mar. 15, 2016) ................................ 14

*Forestieri v. Wendover, Inc.*,
  No. 18-cv-1171 (MN), 2019 WL 1786042 (D. Del. Apr. 24, 2019) ........................................ 7

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
  897 F.2d 508 (Fed. Cir. 1990) ................................................................................................. 8

*Intell. Ventures I LLC v. Toshiba Corp.*,
  66 F. Supp. 3d 495 (D. Del. 2014) ........................................................................................ 11

*IpVenture Inc. v. Lenovo Grp. Ltd.*,
  No. 11-cv-588-RGA, 2013 WL 126276 (D. Del. Jan. 8, 2013) ....................................... 10, 12

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ............................................................................................. 14

*Olaf Soot Design, LLC v. Daktronics, Inc.*,
  325 F. Supp. 3d 456 (S.D.N.Y. 2018) ................................................................................... 10


*Orlando Commc'ns LLC v. LG Elecs., Inc.*,
   No. 6:14-cv-1017-ORL-22, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015) ............................. 11

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ................................................................................................ 13

*Välinge Innovation AB v. Halstead New England Corp.*,
   No. 16-cv-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ................................. 12

*Windy City Innovations, LLC v. Microsoft Corp.*,
   193 F. Supp. 3d 1109 (N.D. Cal. 2016) ................................................................................... 10

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   No. CV 19-cv-1687-CFC-CJB, 2021 WL 1134687 (D. Del. Mar. 24, 2021) .......................... 12

**Statutes and Regulations**

35 U.S.C. § 284 ................................................................................................................................ 14

**Rules**

Rule 12(b)(6) ..................................................................................................................................... 7

**I.      NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiffs 10X Genomics, Inc. ("10X" or "10X Genomics") and Prognosys Biosciences, Inc. ("Prognosys") (collectively "Plaintffs") filed their complaint against Defendant NanoString Technologies, Inc. ("NanoString") on May 6, 2021, alleging infringement of five patents. On May 19, 2021, Plaintiffs filed a first amended complaint ("FAC") alleging infringement of two additional patents. NanoString moves to dismiss Plaintiffs' claims of indirect infringement and their willful infringement allegations and accompanying request for enhanced damages.

**II.     SUMMARY OF THE ARGUMENT**

NanoString moves to dismiss Plaintiffs' claims for willfulness and indirect infringement. Plaintiff's allegations are bereft of any factual allegations to plausibly suggest either pre-suit knowledge of the patents-in-suit or the requisite culpable intent required for willful or indirect infringement. They epitomize the type of inadequate pleading that *Iqbal* and *Twombly* sought to eliminate.

Given the factual history, it is no wonder that Plaintiffs' FAC lacks plausible allegations to support willful and indirect infringement claims. Almost all of the asserted patents issued mere days before Plaintiffs first filed suit, such that NanoString could not plausibly be charged with having had knowledge of them, and hence could not be a willful or indirect infringer.

Curiously, while the patents-in-suit issued only recently, they all purport to claim the benefit of a provisional application that was filed over **11 years ago** by Prognosys, a company that has long since ceased to function in any meaningful way. The address listed for Prognosys in the FAC is nothing more than a mailbox rental location in a San Diego strip mall. *See* FAC ¶ 4; Ex. 1. A question that begs to be answered, then, is why did it take so long for the claims that are now asserted against NanoString to issue?

The answer is that the claims of the patents-in-suit are part of a latent and misguided patent drafting effort by 10X Genomics to try to capture NanoString's products after 10X decided it wanted to try to compete with NanoString. As documented herein, however, the Prognosys patents disclose an approach that is the exact opposite of how NanoString's products work. Nevertheless, in November 2018, long after NanoString had publicized its pioneering products for tissue profiling, 10X Genomics licensed the Prognosys patents and assumed control of patent prosecution, drafting a bevy of claims very different from those Prognosys previously sought. It then sued NanoString mere days after issuance. Such facts are not the stuff of willful patent infringement. They do not support an allegation of advance knowledge of the patents-in-suit and intent to infringe, but rather reflect a competitor's licensing of patent rights from a defunct company and radically-shifted claiming strategy.

Unable to allege facts that plausibly suggest advance knowledge of the patents-in-suit and intent to infringe, Plaintiffs rely on allegations of the type that courts regularly reject as supporting willfulness, such as a notice letter that 10X sent *one day* before suing in a transparent effort to gin up a willfulness allegation. Likewise, Plaintiffs rely upon an Information Disclosure Statement ("IDS") that NanoString submitted in 2016 that cited to an old Prognosys patent application from 2011, roughly seven years before 10X took over and began drafting unsupportable and very different claims. Plaintiffs' reliance on such facts simply underscores the weakness of their claims.

Plaintiffs' willful and indirect infringement claims should be dismissed.

### III.   STATEMENT OF FACTS

#### A.   The Accused Products

NanoString's breakthrough products go by the tradename "GeoMx DSP," where the "DSP" stands for "digital spatial profiling." Briefly, NanoString's GeoMx DSP products are used to analyze tissue samples to assess the behavior of genes in different regions of the tissue, hence

2

providing a "spatial profile" of the tissue.  For instance, using the GeoMx DSP, one can analyze a tumor tissue sample to determine which regions of the sample are expressing certain genes and how the expression pattern of those genes across the tissue may cause the tumor to change over time.

In a nutshell, the GeoMx DSP products work by applying chemical binding reagents indiscriminately across a tissue sample.  The binding reagents are designed to adhere at any position in the tissue that happens to include a molecule that one wishes to study.  Any reagents that do not adhere are washed away.  The GeoMx DSP products then carry out a process for targeted removal of the portions of the chemical reagents from the tissue.  This is done using sophisticated instrumentation in which ultraviolet light is targeted solely to a particular region of interest.  This ultraviolet light has the effect of releasing the reagents from a tightly defined region of the tissue so that they can be aspirated and collected from the tissue via a microcapillary, as depicted in the image below:



*See* GeoMx Digital Spatial Profiler at 1:42, available at https://www.youtube.com/watch?v=mVhfZq8ppbc. The identity of the reagents that have been selectively removed at each particular region allows one to determine which molecules of interest were present at each region of interest in the tissue, thereby providing a "spatial profile" of the chemical and biological behavior of the tissue. In this regard, the NanoString products are based on the indiscriminate application of reagents, followed by the targeted removal of reagents.

The NanoString GeoMx DSP product was the first of its kind, having been conceived of in the 2016 timeframe, when NanoString employees first developed a technology to "visualize a tissue and hundreds of proteins (and eventually 22000 RNAs) with clear spatial resolution." Ex. 2. Later in 2016, NanoString presented the capabilities of DSP at a meeting of the Association for Molecular Pathology. *See* Ex. 3. By 2018, NanoString had developed the fundamental aspects of DSP, launching its Technology Access Program to accept tissue samples from researchers for spatial and quantitative detection of biomarker expression levels. *See* Ex. 4.

Quickly thereafter, studies performed using DSP were widely presented at industry conferences, such as the American Association for Cancer Research 2018 Annual Meeting and the 2018 Advances in Genome Biology and Technology ("AGBT") Conference. *See* Exs. 5-6. The GeoMx DSP was also widely described in prestigious scientific publications, such as Nature Medicine. *See* Ex. 7. The full commercial launch of the GeoMx DSP then took place in March of 2019. *See* Ex. 8.

### B. Plaintiffs' Patents And Their Infringement Allegations

The patents-in-suit were not developed at 10X Genomics, but rather at a now-defunct company known as Prognosys. To the best of NanoString's knowledge, Prognosys is currently nothing more than a patent-holding shell company that is a necessary co-plaintiff alongside 10X

for standing purposes. As noted above, its address is a PostalAnnex mailbox rental center in San Diego.

The Prognosys patents describe and claim a system that is the exact opposite of the GeoMx DSP. Unlike the GeoMx DSP, where reagents are indiscriminately applied to a tissue and then removed in a targeted fashion, the alleged inventions of the patents-in-suit rely upon the ***targeted delivery*** of reagents to specific regions followed by the ***indiscriminate removal*** of such reagents. The patents-in-suit could not possibly be clearer about this point, explaining over and over how critical the targeted delivery of reagents is:

- "***Integral*** to the assay system of the ***invention*** is instrumentation that allows for ***spatial patterning of reagents onto the biological sample***." U.S. Patent No. 10,472,669 ("the '669" Patent) at 16:1-3.[1]

- "***Integral*** to the assay system of the ***invention*** is a method for ***spatial patterning*** of reagents." *Id.* at 23:5-6.

- "An ***important aspect*** of the assay systems of the ***invention*** is that the binding agents are immobilized on a substrate surface in ***discrete, independently measurable areas***." *Id.* at 23:54-57.

- "Numerous reagent delivery systems can be used with the assay system of the ***invention***. The ***primary criteria*** of such reagent delivery systems is the ability to ***direct delivery of specific agents based on spatial patterns on the substrate surface***." *Id.* at 21:48-52.

- "The ***invention*** provides an assay system comprising an assay capable of high levels of multiplexing where ***reagents are provided to a biological sample in defined spatial patterns***; instrumentation capable of controlled ***delivery of reagents according to the spatial patterns***...." *Id.* at Abstract.

- "The reagent delivery system of the ***invention*** can be any system that allows the ***delivery of reagents to discrete portions*** of the array in order to ***keep the integrity of the defined spatial patterns*** of the encoding scheme." *Id.* at 26:54-57.

---

[1] Emphasis added unless otherwise noted. The patents-in-suit have largely overlapping specifications. For simplicity, this brief cites to the '669 Patent.

- "The reagent delivery system of the *invention* includes instrumentation that **allows the delivery of reagents to discrete portions of the biological sample**, maintaining the integrity of the spatial patterns of the encoding scheme." *Id.* at 15:54-57

- "A mechanism to register and align very precisely the biological sample for *reagent delivery* is thus an *important component of the assay systems of the invention*." *Id.* at 18:2-4.

- "The assay systems of the *invention* provide spatially encoded, multiplexed assays comprising 1) an assay capable of high levels of multiplexing with an efficient spatial encoding scheme; 2) instrumentation capable of *delivering reagents according to a spatial pattern*" *Id.* at 8:36-40.

- "The assay system further provides instrumentation with an ability to *deliver reagents in a spatially-defined pattern*." *Id.* at 8:48-49.

- "The *invention provides* an assay system comprising one or more agents provided in *defined spatial patterns* on a substrate surface...." *Id.* at 20:28-30.

- "The assay portion of the assay systems of the *present invention* comprise the following general steps: delivering probes and encoding agents where the encoding agents (in some embodiments pre-coupled to the probes) are *delivered to the sample according to a known spatial pattern*...." *Id.* at 11:47-51.

- "The assay system and methods of the *invention* are based on relational, solid-state substrates with positions that represent *specific spatial locations* within a biological sample, e.g., a cell, organelle or tissue." *Id.* at 21:3-6.

- "A *primary feature of the invention* is the preservation of the *spatial organization of elements* in a sample of interest through the use of an encoding scheme." *Id.* at 21:13-15.

As noted above, the patents-in-suit were not conceived of or developed at 10X Genomics, which is the primary plaintiff in this action and is a late entrant into the spatial profiling field. Rather, the patents-in-suit were developed at Prognosys, which has long ago ceased to be a going concern. In the late 2018 time frame, however, 10X Genomics licensed the Prognosys patent family and assumed control over patent prosecution activities. Having apparently become aware of NanoString's breakthrough GeoMx DSP products, 10X began drafting claims very different

6

from those that were originally pursued by Prognosys in an apparent attempt to target NanoString's spatial profiling products.

Even though the disclosure of the Prognosys patents describes something very different from NanoString's products, and even though almost all of 10X's patents issued mere days before Plaintiffs' filed suit as a result of 10X's patent drafting efforts, Plaintiffs allege that NanoString has induced and contributed to infringement in a willful manner.

## IV.   LEGAL STANDARD ON A MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter...to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The [c]ourt is not obligated to accept as true bald assertions or unsupported conclusions" where plaintiff has not stated "enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element of a plaintiff's claim." *Forestieri v. Wendover, Inc.*, No. 18-cv-1171 (MN), 2019 WL 1786042, at *2 (D. Del. Apr. 24, 2019) (internal quotations and citations omitted).

## V.   ARGUMENT

### A.   Plaintiffs' Willfulness Allegations Should Be Dismissed

To "state a claim of willful infringement to withstand a motion to dismiss, a plaintiff must plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement." *APS Tech., Inc. v. Vertex Downhole, Inc.*, No. 19-cv-1166 (MN), 2020 WL 4346700, at *4 (D. Del. July 29, 2020). "Hence a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge.

7

Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990).

Plaintiffs fail to allege facts that plausibly state a claim for willful infringement under this standard. As a matter of pure commonsense, such claims are not plausible. Almost all of the patents-in-suit issued mere days before Plaintiffs' first filed suit.

Plaintiffs' willful infringement allegations are thus based solely on two paragraphs in their Complaint that are virtually identical for each of the patents-in-suit and that provide little factual support. Plaintiffs' allegations for the '669 Patent, for instance, are encompassed solely by the following two paragraphs:

> 35. NanoString has been on notice of its infringement of the 669, 467, 566, 113 and 219 Patents on or around May 5, 2021, when NanoString received a letter ("May 5 Letter") from 10x detailing how NanoString and other users of NanoString's GeoMx DSP and related products infringe the 669, 467, 566, 113 and 219 Patents and no later than the first Complaint (D.I. 1) in this action. On information and belief, NanoString has been on notice of the 878 Patent and 607 Patents since before this First Amended Complaint, on or around their issuances on May 11, 2021, and May 18, 2021, respectively, and was contemporaneously on notice of how NanoString and other users of NanoString's GeoMx DSP and related products infringe the 878 and 607 Patents as a consequence of its receipt of the May 5 Letter and the Complaint.
>
> 41. On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 669 Patent and the infringement of the 669 Patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 669 Patent on or around May 5, 2021, for the reasons described above. On information and belief, NanoString also knew, should have known, or was willfully blind to the existence of the 669 Patent on or around the issuance date of the 669 Patent as a result of NanoString's monitoring of 10x's patent portfolio. See U.S. Patent No. 10,501,777 (citing to US 2011/0245111).

D.I. 8 ¶¶ 35, 41.

As documented below, such allegations, in addition to failing to plausibly allege knowledge of the patents-in-suit, fall far short of suggesting the type of conduct that could rise to the level of intentional patent infringement.

### 1. Plaintiffs Fail To Plausibly Allege Knowledge Of The Patents-in-Suit

Plaintiffs' allegations of knowledge are based on three things: (1) citation in an IDS to an old Prognosys patent filing from long before 10X began its prosecution activities, (2) a notice letter sent one day before Plaintiffs filed suit, and (3) the filing of Plaintiffs' original complaint. None of these plausibly support knowledge of the patents-in-suit required for willfulness.

#### a) Plaintiffs' Reliance On NanoString's Information Disclosure Statement Is Implausible

Plaintiffs allege that NanoString was aware of the patents-in-suit and willfully infringed by virtue of the fact that NanoString cited one of Prognosys's 2011 patent applications in an IDS in connection with a 2016 patent filing. This does not plausibly support knowledge for the purposes of willfulness.

Indeed, courts regularly reject reliance on this kind of isolated citation to a patent application in an IDS to allege willfulness. *See, e.g.*, *Callwave Commc'ns LLC v. AT & T Mobility LLC*, No. 12-cv-1701-RGA, 2014 WL 5363741, at *2 (D. Del. Jan. 28, 2014) ("The only other willfulness issue is that as early as 2008, Google had knowledge of one of the patents...as evidenced by citation to the patent in multiple Information Disclosure Statements relating to Google patents. This solitary piece of information is insufficient to support an allegation of willfulness."); *DermaFocus LLC v. Ulthera, Inc.*, 201 F.Supp.3d 465, 471 (D. Del. 2016) (finding "no plausible inference arises from the alleged facts that defendant had knowledge" where patent-in-suit was listed as one of seven prior art references in an IDS); *Olaf Soot Design, LLC v.*

*Daktronics, Inc.*, 325 F. Supp. 3d 456, 464 (S.D.N.Y. 2018) ("Nor is Schwegman's work preparing information disclosure statements...suggestive of willfulness by Daktronics.").

Here, the facts associated with NanoString's 2016 IDS are particularly thin. During prosecution, NanoString submitted multiple IDSs encompassing 114 references. *See* Ex. 9. It is implausible to believe that at the time anyone within NanoString analyzed this single buried patent application in any sort of depth. *See, e.g.*, *Olaf,* 325 F. Supp. 3d at 464 ("[R]eference to the '485 patent is buried among 139 patents listed on one such IDS. And courts have held that such citations to patents-in-suit are insufficient to prove knowledge for purposes of willful infringement.").

And, even if someone had conducted such an analysis of the Prognosys 2011 Patent application, it would be irrelevant because the cited patent filing is not even one of the patents-in-suit, but rather an old patent application that dates back to a time long before 10X licensed the patents and began morphing the claims drastically in an attempt to capture NanoString's products. It is implausible to believe that anyone would assess this single patent application to predict whether NanoString's ***future*** products might infringe claims that ***could be*** drafted based on the Prognosys specification at odds with the existing claims in the application. Unsurprisingly, courts regularly reject attempts to allege the knowledge requirement for willful infringement based on oblique theories of knowledge of patent applications or related patents that are not themselves the asserted patents. *See, e.g.*, *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1117 (N.D. Cal. 2016) ("[P]laintiff failed to allege the existence of pre-suit knowledge in its complaint because plaintiff based this knowledge solely on communications it had with defendant regarding the patent application of the '356 patent and Patent No. 5,956,491, on which plaintiff is not suing."); *IpVenture Inc. v. Lenovo Grp. Ltd.*, No. 11-cv-588-RGA, 2013 WL 126276, at *2 (D. Del. Jan. 8, 2013) (rejecting pre-suit willfulness allegation where "[a]t most, the factual allegations

plausibly support the conclusion that both the Plaintiff and Dell had patents in the thermal power and management field....").

NanoString's IDS does not lend itself to a plausible inference that it was aware of any of the patents-in-suit.

### b) Plaintiffs' Reliance On Its Notice Letter Is Implausible

Plaintiffs further attempt to allege willfulness based on its May 5 notice letter, which they do *not* attach to their complaint. Regardless, as Plaintiffs acknowledge, they did not send their notice letter until the *day before* they filed suit. As such, Plaintiffs' notice letter cannot be regarded as a genuine attempt to provide notice, but rather an attempt to fabricate an artificial willfulness claim for the purpose of this lawsuit.

Courts regularly reject such attempts to bootstrap an allegation of patent knowledge based on last-second notice letters. *See, e.g.*, *Intell. Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 500 (D. Del. 2014) ("Moreover, notice of the infringement risk via the letter written only one day before the complaint was filed does not constitute a showing of objective recklessness on the part of the defendants. Therefore, the court grants defendants' motion to dismiss in this regard."); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-cv-1017-ORL-22, 2015 WL 1246500, at *12 (M.D. Fla. Mar. 16, 2015) ("The Court is not convinced that sending a letter merely one day before filing a lawsuit confers on a defendant the requisite knowledge for indirect infringement."). Plaintiffs' FAC includes nothing to justify departing from this law.

### c) Plaintiffs' Reliance On Its Original Complaint Is Implausible

Finally, Plaintiffs attempt to rely upon the filing of their original complaint to allege that Defendant had knowledge of the patents-in-suit for purposes of willfulness. This, however, makes little sense. The purpose of a complaint is to notify a party of a claim, not to create a claim in the first place. *See, e.g.*, *ZapFraud, Inc. v. Barracuda Networks, Inc.*, No. CV 19-cv-1687-CFC-CJB,

11

2021 WL 1134687, at *4 (D. Del. Mar. 24, 2021) ("ZapFraud has identified, and I know of, no area of tort law other than patent infringement where courts have allowed a plaintiff to prove an element of a legal claim with evidence that the plaintiff filed the claim.").

Even to the extent the Court concludes that the filing of Plaintiffs' complaint is sufficient to support knowledge of the patents-in-suit for the purposes of ***post***-suit willfulness, the complaint should nonetheless be dismissed to the extent it alleges ***pre-***suit willfulness. Where, as here, there is no plausible allegation of pre-suit knowledge of the relevant patents, courts regularly dismiss claims based on pre-suit conduct. *See, e.g. IpVenture*, 2013 WL 126276, at *2 (allowing only post-suit willfulness based on filing of complaint); *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-cv-098 (MN), 2019 WL 3069773, at *4 (D. Del. July 12, 2019) ("Regardless of the sufficiency of Plaintiff's allegations for post-suit inducement, the Court will not allow Plaintiff to pursue a claim of pre-suit inducement where there are insufficient allegations to render that claim plausible.").

### 2. Plaintiffs Fail To Plausibly Allege The Required Intent And Conduct For Willfulness

As one judge in this District explained, "there must be some other factual allegations that go to the accused infringer's subjective intent to infringe—i.e., that plausibly demonstrate that the accused infringer not only knew of the patent-in-suit, but also knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent." *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-cv-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018). There are no such plausible allegations in the FAC, a fact that is unsurprising given that there is no basis to plausibly suggest that NanoString was even aware of the patents-in-suit.

With regard to NanoString's IDS, Plaintiffs' complaint includes no allegations to suggest that the claims of the Prognosys patent it submitted to the Patent Office are remotely relevant to the claims of those that Plaintiffs ultimately asserted. As documented above, it was not until November 2018 that 10X Genomics acquired the Prognosys patent portfolio, at which point NanoString's product had already been publicly announced. *See supra* Part III. Only then did 10X engage on its misguided effort to draft claims directed to NanoString's products based on a patent disclosure that teaches nothing like NanoString's product. *See id.*

The Federal Circuit has been clear that this fact pattern is the exact opposite of that which supports a willfulness case:

> It bears repeating that it was not until November 19, 1979, that State commenced its efforts in the PTO to obtain claims which would cover the agitator structure in the LIME TAMER, which structure it did not invent or disclose in either of its patents, that its patent containing those claims issued April 28, 1981, after the LIME TAMER had been placed on the market, and that the LIME TAMER had been designed and built and was being tested before the progenitors of claims 7 and 8 in suit were submitted to the PTO, Smith being in the dark about State's patent application prosecution activity and knowing nothing about State's patent until it was sued.
>
> Against this factual background, we are constrained to agree with Smith that there can be no "willful infringement." To willfully infringe a patent, the patent must exist and one must have knowledge of it. A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

*State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

As to Plaintiffs' last-second notice letter, it goes without saying that a party cannot plausibly be labeled as an intentional infringer by virtue of having received a notice letter one day before being sued. "When a notice letter is filed one day before the infringement suit commences, the defendant does not have sufficient time to react to the notice letter to prevent a suit from being

13

filed." *Evolved Wireless, LLC v. Samsung Elecs. Co.*, No. 15-cv-545-SLR-SRF, 2016 WL 1019667, at *4 (D. Del. Mar. 15, 2016). The exact same logic applies with regard to Plaintiffs' attempt to rely on their original complaint to allege intent for the purposes of willfulness.

Because 10x's willful infringement allegations are insufficiently pleaded, they should be stricken and/or dismissed along with 10x's request for increased damages pursuant to 35 U.S.C. § 284.

### B. Plaintiffs' Inducement Patent Infringement Claim Should Be Dismissed

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotations and citations omitted).

For the same reasons stated above in connection with Plaintiffs' willfulness allegations, Plaintiffs have not stated facts that plausibly allege knowledge of the patents-in-suit or culpable intent to cause infringement. *See supra* Part V.A. To the extent the Court nonetheless concludes that Plaintiffs' original complaint can form the basis of plausible allegations of **post**-suit knowledge, any claims based on **pre**-suit inducement should still be dismissed. Courts in this district regularly pare "inducement claims down by time period when Plaintiff fails to adequately plead pre-suit inducement." *DoDots*, 2019 WL 3069773, at *4.

### C. Plaintiffs' Contributory Patent Infringement Claims Should Be Dismissed

"To survive a motion to dismiss, a plaintiff alleging contributory infringement must plausibly allege that the accused infringer knew of the asserted patents...." *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (internal citations omitted). As documented above, Plaintiffs' FAC includes no allegations to plausibly allege knowledge of the patents-in-suit. *See*

14

*supra* Part V.A.1. To the extent the Court nonetheless concludes that the filing of Plaintiffs' FAC is sufficient to show knowledge for the purposes of contributory infringement, the FAC should be dismissed to the extent it alleges ***pre***-suit contributory infringement.

## VI. CONCLUSION

For the foregoing reasons, the court should dismiss Plaintiffs' contributory infringement claims, inducement claims, and willful infringement allegations and request for enhanced damages.

Dated: July 1, 2021

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Kaitlin Paulson (admitted *pro hac vice*)
Concord Cheung (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Defendant NanoString Technologies, Inc.*

15