## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., | |
| Plaintiffs, | C.A. No. 21-cv-653-MFK |
| v. | PUBLIC VERSION |
| NANOSTRING TECHNOLOGIES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## [PROPOSED] JOINT PRETRIAL ORDER

# TABLE OF CONTENTS

I.   JURISDICTION ............................................................................................... 1

    A.   Agreed Jurisdiction ................................................................................ 1

    B.   Disputed Jurisdiction ............................................................................. 1

II.  CLAIMS ......................................................................................................... 3

III. RELIEF SOUGHT ......................................................................................... 4

IV.  WITNESSES AND OBJECTIONS THERETO ............................................ 5

    A.   Trial Witness List .................................................................................. 5

    B.   Witnesses Appearing By Deposition ..................................................... 5

    C.   Plaintiffs' Objections to Defendant's Witness List and Designations .................. 6

        1.   Plaintiffs Object To NanoString's Failure To Give Notice Of Its Intent To Play Deposition Testimony ................................................ 6

        2.   Plaintiffs' Object to Defendant's Designation Of Irrelevant Testimony Relating to 10x's Unreleased Products ...................................... 7

        3.   Plaintiffs Object To Defendant's Designation of Questions Seeking Attorney-Client Privileged Information On Non-Corporate Topics .......... 9

        4.   Plaintiffs Object To Defendant's Designation of Improper Opinion Testimony From a Lay Witness or Improper Expert Opinion ................. 11

        5.   Plaintiffs Object To Defendant's Designation Of Hearsay Deposition Testimony Of Dr. Stacey Gabriel .............................................. 15

V.   EXHIBITS AND OBJECTIONS THERETO .............................................. 26

VI.  LENGTH AND TYPE OF TRIAL ............................................................... 27

    A.   Whether Evidence Relating To Plaintiffs' Request For Injunctive Relief Should Be Addressed In A Separate Evidentiary Hearing ................................. 27

    B.   Whether Reverse Doctrine Of Equivalents Should Be Decided By The Jury Or By The Court In A Separate Bench Trial ..................................... 28

        1.   Plaintiffs' Position: RDOE Should Be Decided By The Court In A Separate Bench Trial ...................................................... 28

|   |   | a. | No 7th Amendment Right To A Jury Trial Over Reverse DOE.. 28 |
|   |   | b. | NanoString's RDOE Defense Should Be Decided Post-Trial By The Court............................................................................. 29 |
|   | 2. | | Defendant's Position: RDOE Should Be Decided By The Jury .............. 32 |

VII. PROPOSED FINDINGS AND CONCLUSIONS........................................................ 36

VIII. PROPOSED VOIR DIRE QUESTIONS..................................................................... 36

IX. PROPOSED JURY INSTRUCTIONS ........................................................................ 36

X. MOTIONS *IN LIMINE* ............................................................................................ 36

XI. ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF TRIAL ................... 37

A. Agreements Regarding Exchanges During Trial .................................................. 37

1. Exchanges of Exhibits and Demonstratives to Be Used With Opening Arguments .................................................................................................. 37

2. Exchange Of Exhibits And Demonstratives To Be Used With Witnesses During Trial ................................................................................................ 38

3. Identification of Order of Witnesses as Trial Process ............................ 39

4. Presentation Of Deposition Designations ............................................... 39

5. Outside Attorneys' Eyes Only Information ............................................ 40

6. Proposals Regarding Claim Narrowing for Trial ..................................... 41

B. Additional Agreements That Need No Attention By The Court ......................... 41

1. Agreement Regarding Updated Financial Productions Relevant To Trial 41

2. Evidentiary Agreements........................................................................... 42

3. Agreements Regarding Elements That Require No Proof At Trial ........ 42

a. Prognosys Is The Sole Owner Of The Asserted Patents.............. 42

b. No Limitation On Damages Pursuant To 35 U.S.C. § 287.......... 42

c. Prior Art Status ........................................................................... 42

## TABLE OF ATTACHMENTS

| Attachment | Description |
|---|---|
| 1 | Joint Trial Witness List |
| 2 | Plaintiffs' Designation |
| 2A | Table of deposition designations of Berdine, Anna (09/30/2022) |
| 2B | Table of deposition designations of Geiss, Gary (09/28/2022) |
| 2D | Table of deposition designations of Jung, Jaemyeong (10/14/2022) |
| 2E | Table of deposition designations of Hoang, Margaret (10/12/2022) |
| 2C | Table of deposition designations of Merritt, Chris (10/07/2022) |
| 3 | |
| 3A | Table of deposition designations of Altin, John (09/15/2022) |
| 3B | Table of deposition designations of Baumgartner, Florian (09/01/2022) |
| 3C | Table of deposition designations of Bent, Zach (09/28/2022) |
| 3D | Table of deposition designations of Branting, Annika (09/14/2022) |
| 3E | Table of deposition designations of Gabriel, Stacey (11/01/2022) |
| 3F | Table of deposition designations of Grigorova, Mira (10/27/2022) |
| 3G | Table of deposition designations of Rao, Nikhil (10/20/2022) |
| 3H | Table of deposition designations of Routenberg, David (08/17/2022) |
| 3I | Table of deposition designations of Wu, Randy (10/11/2022) |
| 4 | The Parties' Objection Keys |
| 5 | Plaintiffs' Object to Defendant's Designation Of Irrelevant Testimony Relating to 10x's Unreleased Products |
| 5A | Transcript of highlighted designations to which Plaintiffs object re: Branting, Annika (09/14/2022) |
| 5B | Transcript of highlighted designations to which Plaintiffs object re: Rao, Nikhil (10/20/2022) |
| 6 | Plaintiffs Object To Defendant's Designation of Questions Seeking Attorney-Client Privileged Information On Non-Corporate Topics |
| 6B | Transcript of highlighted designations to which Plaintiffs object re: Wu, Randy (10/11/2022) |
| 6A | Plaintiffs' email designating Topics for Dr. Wu; Plaintiffs' Objections and Responses to NanoString's 30(b)(6) Notice |
| 7 | Plaintiffs Object To Defendant's Designation of Improper Opinion Testimony From a Lay Witness or Improper Expert Opinion |
| 7A | Transcript of highlighted designations to which Plaintiffs object re: Altin, John (09/15/2022) |
| 7B | Transcript of highlighted designations to which Plaintiffs object re: Bent, Zach (09/28/2022) |
| 7C | Transcript of highlighted designations to which Plaintiffs object re: Routenberg, David (08/17/2022) |
| 8 | Table of deposition designations of Gabriel, Stacy |
| 9 | The parties' Joint Trial Exhibit List |
| 10 | Plaintiffs' Trial Exhibit List, including Defendant's specific objections thereto |

| Attachment | Description |
|---|---|
| 11 | Defendant's Trial Exhibit List, including Plaintiffs' specific objections thereto |
|  |  |
| 12 | Quackenbush Reply ¶ 52 |
|  |  |
| 13 | Plaintiffs' MIL 1 and statements |
| 13A | Plaintiffs' Opening |
| 13B | NSTG Opposition |
| 13C | Plaintiffs' Reply |
| 13D | Exhibits |
|  |  |
| 14 | Plaintiffs' MIL 2 and briefing |
| 14A | Plaintiffs' Opening |
| 14B | NSTG Opposition |
| 14C | Plaintiffs' Reply |
| 14D | Exhibits |
|  |  |
| 15 | Plaintiffs' MIL 3 and briefing |
| 15A | Plaintiffs' Opening |
| 15B | NSTG Opposition |
| 15C | Plaintiffs' Reply |
| 15D | Exhibits |
|  |  |
| 16 | Defendant's MIL 1 and briefing |
| 16A | Defendant's Opening |
| 16B | Plaintiffs' Opposition |
| 16C | Defendant's Reply |
| 16D | Exhibits |
|  |  |
| 17 | Defendant's MIL 2 and briefing |
| 17A | Defendant's Opening |
| 17B | Plaintiffs' Opposition |
| 17C | Defendant's Reply |
|  |  |
| 18 | Defendant's MIL 2 and briefing |
| 18A | Defendant's Opening |
| 18B | Plaintiffs' Opposition |
| 18C | Defendant's Reply |
| 18D | Exhibits |

Plaintiffs 10x Genomics, Inc. and Prognosys Biosciences, Inc. and Defendant NanoString, Inc. (the "Parties") offer the following Joint Pretrial Order.

Plaintiffs have followed Judge Kennelly's Final Pretrial Order requirements in preparing this proposed Pretrial Order.[1] Defendant objects to Plaintiffs' inclusion of certain high priority objections below.

## I.    JURISDICTION

### A.    Agreed Jurisdiction

This Court has jurisdiction over 10x and Prognosys's patent infringement claims Counts I through VII (D.I. 82) against NanoString pursuant to 28 U.S.C. §§ 1331 and 1338(a).

This Court has jurisdiction over NanoString's declaratory judgment First through Seventh Counts and Ninth through Fifteenth Counts (D.I. 85) against 10x and Prognosys pursuant to 28 U.S.C. §§ 2201-2202.

### B.    Disputed Jurisdiction

10x and Prognosys deny that this Court has jurisdiction over NanoString's declaratory judgment Eighth and Sixteenth Counts (D.I. 85) against 10x and Prognosys pursuant to 28 U.S.C. §§ 2201-2202.

**<u>10x and Prognosys's Position on the Nature of the Dispute</u>**

In Plaintiffs' May 6, 2021, Complaint, Plaintiffs accused NanoString of directly, indirectly, and willfully infringing U.S. Patent No. 10,662,467. D.I. 1 (Count II). On April 20, 2022, Plaintiffs moved for leave to add claims of infringement of newly issued U.S. Patent No. 11,293,917. Because the number of patents and asserted claims in the case had been hotly disputed, including submission of the issue to the Court for resolution (*see* D.I. 67-70), Plaintiffs offered to withdraw

---

[1] https://www.ilnd.uscourts.gov/PrintContent.aspx?cmpid=130

1

their assertion of the 467 Patent when adding the assertion of the 917 Patent to keep the size and complexity of the case unchanged. D.I. 78 at 2 (¶ 2). NanoString did not oppose this substitution. *Id.* The Court granted Plaintiffs' motion for leave to amend the complaint to add the 917 Patent and withdraw the 467 Patent. D.I. 81. In NanoString's answer to Plaintiffs' second amended complaint, NanoString maintained its declaratory judgment Eighth and Sixteenth Counts relating to the withdrawn 467 Patent. D.I. 91. Plaintiffs deny that the Court has jurisdiction over NanoString's declaratory judgment Eighth and Sixteenth Counts (D.I. 85) against Plaintiffs because there is no actual controversy regarding the 467 Patent where Plaintiffs stipulated to withdraw the claims. Moreover, a judicial declaration is neither necessary nor appropriate here where the withdrawal of the 467 Patent was the result of negotiated and Court-ordered case management considerations, a purpose that is flouted by NanoString's continued litigation of the 467 Patent. The issue was raised in the Parties' July 5, 2022 Joint Status Report (D.I. 95) but has not been resolved.

NanoString's attempt to maintain its declaratory judgment counterclaims for the 467 Patent has caused the Parties to litigate claims in excess of the Court-ordered limit. NanoString's assertion that Plaintiffs' reservation regarding substitution of claims turns the question of DJ jurisdiction on its head where Plaintiffs expressly stipulated to withdrawal of the entire patent in its motion for leave to add the 917 Patent and the 467 Patent has only been in the case at all on NanoString's insistence. Moreover, the reservation to which NanoString refers stated that "Parties may make timely amendments—due to on-going fact discovery and claim construction—to the selection of Asserted Claims … **through the close of fact discovery.**" D.I. 81, n.2. Now NanoString insists that Plaintiffs narrow the case to six claims across three patents while NanoString's own DJ claims implicate an additional five patent claims. Nothing in NanoString's position supports a finding that

2

there is a ripe controversy. For these reasons, the Court should decline to exercise declaratory judgment jurisdiction. The issue is ripe, and Plaintiffs respectfully request a hearing on the issue, with further briefing if the Court wishes.

### NanoString's Position on the Nature of the Dispute

As the 467 Patent was asserted against Defendant's accused products in this case for nearly a year, is related to the other asserted patents, and Plaintiffs expressly reserved the right to revisit their claim elections through the close of fact discovery, there is a ripe controversy relating to the 467 Patent that warrants a judicial determination. Plaintiffs also did not seek to resolve this issue before the parties completed expert discovery. Plaintiffs have refused to dismiss the 467 Patent with prejudice, and given 10x's multiple suits against NanoString across a variety of forums, NanoString should not be forced to risk litigating the 467 Patent again separately. Accordingly, Defendant is entitled to proceed with its declaratory judgement counterclaims for non-infringement and invalidity of the 467 Patent.

## II.    CLAIMS

This is a patent infringement action in which the Plaintiffs, 10x Genomics, Inc. and Prognosys Biosciences, Inc., accuse Defendant NanoString Technologies, Inc., of infringing U.S. Patent No. 10,472,669; U.S. Patent No. 10,961,566; U.S. Patent No. 10,983,113; U.S. Patent No. 10,996,219; U.S. Patent No. 11,001,878 ("the 878 Patent"); U.S. Patent No. 11,008,607; and U.S. Patent No. 11,293,917 (collectively, the "Asserted Patents"). NanoString is accused of infringing the Asserted Patents directly by making, selling, and using the Accused Instrumentalities, NanoString's GeoMx DSP (Digital Spatial Profiler) and associated products. NanoString is also accused of indirectly infringing the Asserted Patents by inducing others to infringe and by contributing to the infringement by others. NanoString is also accused of willfully

infringing the Asserted Patents after being sued for patent infringement. *See* Plaintiffs' Second Amended Complaint (D.I. 82).

NanoString denies all of Plaintiffs' claims of patent infringement and asserts defenses of non-infringement and invalidity of the Asserted Patents. NanoString also denies that its conduct has been willful. NanoString counterclaims for a declaration that it does not infringe any of the Asserted Patents and that each of the Asserted Patents is invalid. NanoString also counterclaims against Plaintiffs for a declaration that the 467 Patent is invalid and not infringed. *See* NanoString's Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint (D.I. 85).

Plaintiffs 10x Genomics and Prognosys Biosciences deny Defendant NanoString's counterclaims related to the Asserted Patents and asserted defenses of infringement and validity. Plaintiffs also deny that this Court has and/or denies that this Court should exercise jurisdiction of NanoString's counterclaims of non-infringement and invalidity of the 467 Patent. Plaintiffs assert defenses of infringement and validity of the 467 Patent. *See* Plaintiffs' Answer to NanoString's Second Amended Counterclaims (D.I. 91).

## III.    RELIEF SOUGHT

Plaintiffs seek a combination of lost profits and reasonable royalties for NanoString's infringement totaling $18,914,685 based on financial information produced prior to expert discovery. For the period from May 6, 2021, through Q3.2022, 10x seeks lost profits in the amount of $14,501,461. For the period from May 6, 2021, through Q3.2022, Plaintiffs seek reasonable royalties in the amount of $4,413,224. Plaintiffs expect to update these requests for damages for trial subsequent to the exchange of updated financial productions as described below. 10x also seeks injunctive relief to guard against future infringement and enhanced damages pursuant to 35 U.S.C. § 284 upon a finding of willful infringement. Plaintiffs seek a declaration on Defendant's

Eighth and Sixteenth Counterclaims that the 467 Patent is infringed and valid. Plaintiffs also seek

fees and costs pursuant to 35 U.S.C. § 285.

Defendant seeks a declaration that the Asserted Patents and the 467 Patent are not infringed

and/or not valid. Defendant also seeks fees and costs pursuant to 35 U.S.C. § 285.

## IV.    WITNESSES AND OBJECTIONS THERETO

### A.    Trial Witness List

A list of names and addresses of all witnesses: (a) who will be called; (b) who may be

called; and (c) whose deposition will be used at trial is appended hereto as **Attachment 1**.

### B.    Witnesses Appearing By Deposition

Tables containing (a) a listing, by page and line, of deposition testimony designated by

Plaintiffs, counter-designated by Defendant, and counter-counter-designated by Plaintiffs are

appended hereto as **Attachment 2** as provided in the table below. The parties' objection keys are

provided as **Attachment 4**. A (b) summary and concise statement of Defendant's high priority

objections to these designations is provided below in Section D. Plaintiffs' (c) concise statement

of the asserted *general* basis of admissibility of the transcript is provided in the following table

and their responses on Defendant's specific objections to admissibility are provided below in

Section D.

| Designation & Objections | Witness | Plaintiffs' Statement of Admissibility of Deposition Testimony |
|---|---|---|
| **Attachment 2A** | Anna Berdine | FRE 801(d)(2): NanoString 30(b)(6) FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2B** | Gary Geiss | FRE 801(d)(2): NanoString 30(b)(6) FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2C** | Margaret Hoang | FRE 801(d)(2): NanoString 30(b)(6) FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2D** | Jaemyeong Jung | FRE 801(d)(2): NanoString 30(b)(6) FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2E** | Chris Merritt | FRE 804(b)(1): Declarant Unavailable |

Plaintiffs reserve the right to designate personal testimony of Joe Beechem and Brad Gray if

NanoString withdraws them as live witnesses.

Tables containing (a) a listing, by page and line, of deposition testimony designated by Defendant, counter-designated by Plaintiffs, and counter-counter-designated by Defendant are appended hereto as **Attachment 3** as provided in the table below. The parties' objection keys are provided as **Attachment 4**. A (b) summary and concise statement of Plaintiffs' high priority objections to these designations is provided below in Section C. Defendant's (c) concise statement of the asserted *general* basis of admissibility of the transcript is provided in the following table and its response on Plaintiffs' specific objections to admissibility are provided below in Section C.

| Designation & Objections | Witness | Defendant's Statement of Admissibility of Deposition Testimony |
|---|---|---|
| **Attachment 3A** | John Altin | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3B** | Florian Baumgartner | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3C** | Zach Bent | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3D** | Annika Branting | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3E** | Stacey Gabriel | FRE 804(b)(1): Declarant Unavailable *See also* section IV.C.5 |
| **Attachment 3F** | Mira Grigorova | FRE 801(d)(2): 10x 30(b)(6) FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3G** | Nikhil Rao | FRE 801(d)(2): 10x 30(b)(6) FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3H** | David Routenberg | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3I** | Randy Wu | FRE 801(d)(2): 10x 30(b)(6) FRE 804(b)(1): Declarant Unavailable |

Defendant reserves the right to designate personal testimony of Mark Chee and Michael Schnall-Levin if Plaintiffs withdraw them as live witnesses.

### C.      Plaintiffs' Objections to Defendant's Witness List and Designations

### 1.      Plaintiffs Object To NanoString's Failure To Give Notice Of Its Intent To Play Deposition Testimony

Plaintiffs object that NanoString has designated 20 hours of deposition testimony (approximately 12.5 hours of initial designations and 7.5 hours of counter designations) to be played within its allotment of 11 hours of total trial time. These designations already represent a

reduction, subsequent to Plaintiffs' objection, by approximately seven hours from NanoString's first disclosure. NanoString's designations fail to provide Plaintiffs with adequate notice and are not proper Rule 26 pretrial disclosures.

Defendant objects to the inclusion of this and the remainder of Section IV and believes a ruling on Plaintiffs' objections is premature.

### 2. Plaintiffs' Object to Defendant's Designation Of Irrelevant Testimony Relating to 10x's Unreleased Products

Plaintiffs object pursuant to Rule 401, 402, and 403 to NanoString's designation of testimony relating to 10x's unreleased products, the details of which remain a trade secret and are not at issue in this case. The probative value of this testimony is substantially outweighed by unfair prejudice to 10x of disclosing its trade secrets as well as confusing the issues and misleading the jury. The prejudice is deepened where Plaintiffs have had to counter-designate with context—a waste of time—to mitigate the impact of the misleading testimony. The testimony and exhibits for the unreleased products should be excluded.

NanoString's arguments show that the probative value of this testimony is low and does not outweigh the prejudice to Plaintiffs. NanoString's experts can provide their opinions about 10x not having products on the market without having to make public exhibit out of 10x's internal sales and technical documents on those issues. There is no live dispute about what products 10x has on the market. And 10x's live witnesses will be able to testify to it without having to make public 10x's irrelevant and confidential documents.

| Attachment | Designation | Exhibit | Objection |
|---|---|---|---|
| **Branting Attachment 5A** | 42:4-20; 43:1, 43:3-4; 43:14-16, 43:19-22 | Branting Dep. Ex. 2 | R, P, TS |
| | 48:2-4; 48:5, 48:7-10; 48:19-20, 48:22-25; | Branting Dep. Ex. 2 | R, P, LF, LK, TS |
| | 49:12-14 | Branting Dep. Ex. 2 | R, P, TS |

| Attachment | Designation | Exhibit | Objection |
|---|---|---|---|
| | 98:23-99:3; 99:7-15; 99:20-24; 104:2-5; 105:15-19, 105:20-24; 105:25-106:6 | Branting Dep. Ex. 5 | R, P, TS |
| | 106:7-10, 106:13-18; 106:20-21, 106:24-107:10; 108:15-17, 108:20-21, 108:23-109:19; 109:20-21, 109:25-110:1, 110:5-7 | Branting Dep. Ex. 5 | LF, LK, IO, R, P, TS |
| Rao **Attachment 5B** | 242:23-243:3, 243:5-10 | Rao Dep. Ex. 18 | S, R, P, TS |

**Defendant's Response:**

Defendant believes a ruling on Plaintiffs' objections is premature.  The parties have a procedure in place for how to address objections to deposition designations involving exchanging designations two days before a witness is called by deposition.  *See infra* XI.A.4.  Defendant will not know which of the contested designations will be played at trial until Plaintiffs have begun presenting their case in chief.

Regardless, Plaintiffs' objections based on trade secrets at this stage are meritless.  None of the designated testimony is about the processes, know-how, or secret business information of the unreleased 10x products.  Instead, the designated testimony is relevant to market competition and the competition between 10x and Nanostring in the spatial analysis field.  10x's plan to market Visium HD—a high resolution Visium product—is no secret, it is referenced publicly on 10x's website. Similarly, the designated testimony regarding Visium shows that 10x does not currently have a high-plex protein product, which is relevant to whether Visium is commercially acceptable. Hence, the designations are relevant to damages issues and present no prejudice against Plaintiffs.

### 3.   Plaintiffs Object To Defendant's Designation of Questions Seeking Attorney-Client Privileged Information On Non-Corporate Topics

Plaintiffs object pursuant to Rule 401, 402, and 403 to NanoString's improper designation of non-corporate testimony where the witness was unable to answer on the basis of privilege. Dr. Wu, an attorney, is 10x's Vice President of Intellectual Property and Litigation. As the lead negotiator on behalf of 10x in the Prognosys licensing discussion, Dr. Wu was the right witness to designate under FRCP 30(b)(6) on matters relating to those negotiations. Beyond that corporate testimony, NanoString asked a series of questions of Dr. Wu in his personal capacity and for which Dr. Wu did not have any non-privileged on non-work-product information, including broadly information reflecting his impressions, conclusions, opinions, or legal research or theories. *See* Cal. Code Civ. P. § 2018.030. NanoString's designation of Dr. Wu's privileged non-response is only designed to confuse and mislead the jury into thinking that 10x was not forthcoming in discovery. The designations are not directed to any issue in the case. The probative value of this testimony is substantially outweighed by unfair prejudice to 10x from confusing the issues and misleading the jury.

NanoString's argument that these designations are on topics for which Dr. Wu was a corporate designee is factually incorrect. None of the questions and answers identified below fall within the topics that Dr. Wu was designated on. *See* **Attachment 6A** (Plaintiffs' designation email, Plaintiffs' narrowing designation email, and the corporate topics). To address NanoString's response below, Dr. Wu directly answered the questions about 10x's first awareness and any valuation of the patents without invoking privilege, and those passages are not included below as objectionable.

| Attachment | Designation | Objection |
|---|---|---|
| Wu **Attachment 6B** | 180:25-181:2, 181:11-12 | R, P, S, V, AMB, IO, LF, LK, PP |

| Attachment | Designation | Objection |
|---|---|---|
| | 182:13-14, 182:17-18 | R, P, S, PP |
| | 183:10-11, 183:15-16 | R, P, S, IO, LF, LK, PP |
| | 191:22-24, 192:3-5 | R, P, S, IO, PP |
| | 192:20-22, 193:9-12 | R, P, S, IO, PP |
| | 196:2-4, 196:6-12, 196:14-15 | R, P, S, PP |
| | 197:9-13, 197:17-20 | R, P, S, PP |
| | 198:2-3, 198:8-9 | R, P, S, PP |
| | 199:2-6, 199:10-11 | R, P, S, PP |
| | 205:21-23, 206:2-3 | R, P, S, PP |
| | 206:4-6; 206:8-9 | R, P, S, PP |
| | | |

**Defendant's Response:**

Defendant believes a ruling on Plaintiffs' objections is premature. The parties have a procedure in place for how to address objections to deposition designations involving exchanging designations two days before a witness is called by deposition. *See infra* XI.A.4. Defendant will not know which of the contested designations will be played at trial until Plaintiffs have begun presenting their case in chief. In any event, the designated testimony does not implicate privilege. Plaintiffs elected to designate an attorney as their corporate designee regarding, among other issues, 10x's first awareness of the patents in suit and 10x's valuation of the asserted patents. The witness repeatedly invoked that he had no "non-privileged information" in response to questions or prefaced his answer with "without getting into privileged information." To the extent 10x puts issues such as the value of the asserted patents at issue, NanoString should be entitled to play the relevant deposition testimony from the corporate designee even if it is a "non answer" as 10x contends.

**4.     Plaintiffs Object To Defendant's Designation of Improper Opinion Testimony From a Lay Witness or Improper Expert Opinion**

Plaintiffs object pursuant to FRE 701,702, 401, 402, and 403 to NanoString's designation of testimony comprising improper opinion from a lay witness or improper expert opinion. Drs. Altin and Routenberg were former employees at Prognosys who joined the company and worked with Dr. Chee *after* the filing of the original patent application that led to the issuances of the asserted patents. Dr. Bent is a current employee at 10x who was the technical lead for the development of 10x's Visium (Fresh Frozen) product. All three were deposed as fact witnesses in this matter, and NanoString has now designated certain portions of the testimony where NanoString attempted to elicit opinion testimony from them. While these individuals all have technical and specialized knowledge, the testimony designated by NanoString is not "based on sufficient facts or data," is not "the product of reliable principle and methods" and they have not "reliably applied the principles and methods to the facts of the case." Rule 702. These witnesses were given minutes to review litigation materials while being deposed, often materials they had never seen before or had no recollection of seeing, and then asked to provide spontaneous opinion testimony. This testimony does not qualify as expert testimony under Rule 702. The testimony also does not meet the requirements of lay testimony under Rule 701, because the testimony was not based on their own knowledge and perceptions, but rather upon information that they were supposed *adduce while testifying* by examining documents for the first time during deposition. Such testimony is not proper opinion testimony from a lay witness. The probative value of these designations is substantially outweighed by the danger of unfair prejudice to Plaintiff and misleading the jury into believing their opinion testimony should be given any weight at all as compared to the testifying experts who spent many months studying and preparing their well-informed opinions.

NanoString's argument that Plaintiffs have relied on this testimony is not accurate. NanoString points to interrogatory responses for which Plaintiffs are under a duty to respond with information that supports Plaintiffs' contentions, not to identify admissible evidence. NanoString knows that ***Plaintiffs' interrogatory responses are not admissible by Plaintiffs***. And Plaintiffs experts do not rely affirmatively on the improper expert opinions of Drs. Altin, Bent, and Routenberg in their presentations. They do rebut Dr. Edwards's reliance on those designations by pointing to the testimony saying that Drs. Altin, Bent, and Routenberg are not qualified to answer the questions put to them by counsel. That rebuttal evidence will not be heard at trial if NanoString is not permitted to rely on these improper opinions in the first place.

| Attachment | Designation | Objection |
|---|---|---|
| Altin **Attachment 7A** | 40:3-14, 40:18-41:1 | IO, LF, LK, P, R |
| | 43:8-19, 43:22-25 | IO, LF, LK, P, R |
| | 44:23-45:5, 45:9-15 | IO, LF, LK, P, R |
| | 55:7-9, 55:12-18 | IO, LF, LK, P, R |
| | 64:21-65:1, 65:5-12 | IO, LF, LF, P |
| | 66:13-18, 66:22-67:6, 67:9-17, 67:20-68:4, 68:6-11 | IO, LF, LK, R, P |
| | 69:2-11, 69:14-18 | IO, LF, LK, R, P |
| | 69:20-23, 70:1-6, 70:8-10, 70:13-18, 70:20-71:1, 71:4-8, 71:11-13 | IO, LF, LK, R, P, ERR (69:22), ERR (70:2), ERR (7:18), ERR (7:20), ERR (71:4) |
| | 73:20-22, 73:25-74:12, 74:15-16 | IO, LF, LK, R, P |
| | 164:3-5, 164:8-11 | IO, LF, LK, P, R, c |
| | 164:21-165:1, 165:5-7 | IO, LK, LF, P, R, C |
| | 166:5-13, 166:17-19, 166:21-23, 167:1, 167:6, 167:9-10, 167:12-14, 167:18-22, 167:24-25, 168:3-7 | IO, LK, LF, P, R, C |
| | 168:21-169:4, 169:7-12 | IO, LK, LF, P, R, NP (168:21-169:1), C |
| | 169:14-16, 169:19-21 | IO, LK, P, R, C |

| Attachment | Designation | Objection |
|---|---|---|
| Bent **Attachment 7B** | 35:17-19, 35:24-36:1, 36:4-5 | LK, AMB, IO, R, P, C |
| | 36:17-21, 36:24 | LK, AMB, IO, R, P, C |
| | 135:22-23, 135:25-136:4 | LF, LK, IO, R, P, C |
| | 139:2-4 | LF, LK, IO, R, P, C |
| | 140:5-8 | LF, LK, IO, R, P, C |
| | 142:9-15, 142:18-20 | LF, LK, IO, R, P, C |
| | 147:13-17, 147:21-23 | LF, LK, IO, R, P, C |
| | 147:25-148:1, 148:5-7 | LF, LK, IO, R, P, C |
| | 148:9-18, 148:21-24, 149:1-2, 149:4-5 | LF, LK, IO, R, P, C |
| | 149:18-23, 150:2-5, 150:7-9, 150:12 | LF, LK, IO, R, P, C |
| | 150:14-17, 150:21 | LF, LK, IO, R, P, C |
| | 150:23-24, 151:2-3 | LF, LK, IO, R, P, C |
| | 152:2-5, 152:9-11 | LF, LK, IO, R, P, C |
| | 152:13-153:2, 153:6-9 | LF, LK, IO, R, P, C |
| | 153:10-13, 153:16 | LF, LK, IO, R, P, C |
| | 153:18-20, 153:23-24 | LF, LK, IO, R, P, C |
| | 155:11-13, 155:15-18 | LF, LK, IO, R, P, C |
| | 156:1-4, 156:9-11, 156:13 | LF, LK, IO, R, P, C |
| Routenberg **Attachment 7C** | 62:7-12 | LK, P, R, C, IO |
| | 62:13-25 | LK, P, R, IO |
| | 63:12-64:25 | LF, LK, P, R, C, IO |
| | 67:24-68:2 | LF, LK, P, R, C, IO |
| | 70:16-19, 70:22-25 | LF, LK, P, R, C, IO |
| | 84:5-12, 84:15-85:4 | CS, IO, LF, LK, P, R, H, C |
| | 150:2-7, 150:9, 150:11-15, 150:21-22, 150:24-151:8 | LF, LK, P, R, IO |
| | 179:15-18, 179:20-22 | IO, LF, P, R |
| | 180:15-20, 180:23-25, 181:2-182:11 | IO, LF, P, R |
| | 182:12-14, 182:16-25 | IO, LF, P, R |

**Defendant's Response:**

Defendant believes a ruling on Plaintiffs' objections is premature. The parties have a procedure in place for how to address objections to deposition designations involving exchanging

13

designations two days before a witness is called by deposition.  *See infra* XI.A.4.  Defendant will not know which of the contested designations will be played at trial until Plaintiffs have begun presenting their case in chief.

And, in any event, the various objections to the testimony as, for instance, lacking foundation or reflecting expert witness testimony, are without merit.  Indeed, in their discovery responses Plaintiffs expressly rely upon the deposition testimony of these individuals for numerous purposes:

- Plaintiffs' Response to NanoString Interrogatory No. 7, seeking identification of "all portions of the specification, including any embodiments, that You contend provide written description support pursuant to 35 U.S.C. § 112 for a method of delivering or contacting probes to a tissue sample without utilizing a defined or known spatial pattern to do so." Plaintiffs rely on entire deposition transcripts of Altin and Routenberg.

- Plaintiffs' Response to NanoString Interrogatory No. 11, seeking identification of "all factual and legal bases for any contention that the asserted claim is not invalid."  Plaintiffs rely on entire deposition transcripts of Altin and Routenberg.

- Plaintiffs' Response to NanoString Interrogatory No. 23, seeking identification "by line or paragraph number any portions of the Asserted Patents (including provisional applications) that discuss, describe, or provide written description support for the claim element "remove a portion of the tissue sample from the region of interest" in claim 1 of U.S. Patent No. 11,293,917." Plaintiffs rely on entire deposition transcripts of Altin, Bent, and Routenberg

- Plaintiffs' Response to NanoString Interrogatory No. 24, seeking an identification "by line or paragraph number the portions of the Asserted Patents (including provisional applications) that discuss, describe, or provide written description support for a reagent delivery

14

system capable of removing a first portion of a tissue sample from a first region of interest….”
Plaintiffs rely on entire deposition transcripts of Altin, Bent, and Routenberg.

Having relied upon Drs. Altin, Routenberg, and Bent in this manner, Plaintiffs cannot
now credibly contend that their testimony should be excluded.

### 5.    Plaintiffs Object To Defendant's Designation Of Hearsay Deposition Testimony Of Dr. Stacey Gabriel

Plaintiffs object to NanoString's solicitation of trial testimony, either live or by deposition,
from Plaintiffs' former claim construction expert Dr. Stacey Gabriel. *See* **Attachment 8**. Her sole
participation as an expert in this matter was related to claim construction and indefiniteness, issues
that were decided by the Court's claim construction order and summary judgment order,
respectively. Dr. Gabriel was never asked to offer opinions on the factual issues remaining in the
case applying the Court's *Markman* Order. Defendants seek to admit two hours' worth of this
testimony to support their written description defense (on which she was not asked to opine) even
though parties will both offer validity experts at trial on that issue. The Court should exclude this
claim construction testimony for three reasons.

*First*, Dr. Gabriel's opinions were limited to claim construction issues, and in particular
rebutting NanoString's proposed narrowing constructions. The Court ruled on claim construction
and adopted claim constructions consistent with Dr. Gabriel's opinions. Dr. Gabriel was never
asked to offer opinions applying the Court's *Markman* Order to issues such as written description
or enablement. NanoString's proffer of Dr. Gabriel's claim construction testimony is far more
prejudicial than probative because the jury will be given the impression that the issues in the
*Markman* Order are still in dispute. That chapter of the case is closed.

*Second*, it is improper for NanoString to call Dr. Gabriel as a testifying expert at trial
because it never disclosed her as such or served a written report pursuant to 26(a)(2)(B). Dr.

15

Gabriel's declaration in this case relates solely to claim construction and indefiniteness, neither of which will be tried to the jury. NanoString did not disclose Dr. Gabriel under Rule 26 as a trial expert because NanoString is presenting testimony from its own hired expert, Dr. Edwards. NanoString has no need for Dr. Gabriel to testify and even if NanoString were correct that her testimony would support NanoString's case, her testimony would be cumulative. *See Reckitt Benckiser v. Watson Lab., Inc.*, No. 13-1674-RGA, 2015 WL 6456551, D.I. 350 at 2, n.1 (D. Del. Oct. 26, 2015) ("The general rule of thumb, in this District, at least, is that a party is not allowed to present more than one expert to say the same thing."). NanoString asserts that Dr. Gabriel's testimony is generally permissible under Rule 32, but NanoString fails to identify that NanoString still has to satisfy 32(a)(2)-(8) and ignores that even under *Teva*, the Court acknowledged that the admissibility was subject to a 403 inquiry, including "If the testimony of the retaining party's expert is being offered to buttress the testimony of the opposing party's own expert, is the testimony merely cumulative?" *Teva Pharm. USA, Inc. v. Abbott Labs.*, No. 02-1512-SLR, 2008 U.S. Dist. LEXIS 89777, at *7 (D. Del. Nov. 5, 2008).

*Third*, NanoString's attempt to use Dr. Gabriel's claim construction deposition either on its own or during Dr. Edwards's examination is objectionable as hearsay. Dr. Gabriel's testimony does not meet any of the hearsay exceptions, including Rules 804(b)(1), 801(d)(2)(C), or 801(d)(2)(D) as NanoString contends. Rule 804(b)(1) does not apply because Dr. Gabriel is not unavailable. *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 165 (3d Cir. 1995) ("[I]t is the proponent of the statement offered under Rule 804 who bears the burden of proving the unavailability of the declarant."). NanoString appears to have assumed that Dr. Gabriel was unavailable because she was not identified as a "will call" witness on Plaintiffs' witness list. Plaintiffs have consistently stated that Dr. Gabriel's claim construction testimony would be

unnecessary, confusing to the jury, and prejudicial given the law-of-the-case status of the issues on which Dr. Gabriel offered a declaration, and thus Plaintiffs did not propose Dr. Gabriel as a trial witness. But NanoString has long been aware that Plaintiffs reserved the right to call Dr. Gabriel live to the extent NanoString was permitted to call her, and further that Plaintiffs expressly listed Dr. Gabriel as a "may call" witness a week before this Pretrial Order was submitted. There is no basis for Defendants to have conflated Plaintiffs' objections to her testimony with physical unavailability for hearsay purposes.

Dr. Gabriel's testimony is not an admission by a party opponent as Dr. Gabriel is neither a person authorized under 801(d)(2)(C) or an agent under 801(d)(2)(D). Under Third Circuit precedent, expert testimony does not fall under either exception as an expert is "charged with the duty of giving *his or her* expert opinion" and "is not an agent of the party who called him" because "despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise." *Kirk*, 61 F.3d at 164 (prior trial testimony found to be hearsay and 801(d)(2)(C) exception did not apply); *see Pfizer, Inc. v. Ranbaxy Labs., Ltd.,* No. 03-209 JJF, 2005 WL 2296613, at *1-2, 2005 U.S. Dist. LEXIS 20793, at *3-4 (D. Del. Sep. 20, 2005) (finding 801(d)(2)(C) exception did not apply to deposition testimony in the same case, noting that *Kirk* is not "limited to circumstances involving the prior trial testimony of a witness," and rejecting argument that "the circumstances in *Kirk* are distinguishable from the circumstances here, because in *Kirk*, the movant was trying to use expert testimony from a prior trial [and] [i]n this case, [experts] were deposed in connection with this litigation"); *Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*, 316 F. Supp. 3d 816, 820 (D. Del. 2018) (801(d)(2)(D) exception to hearsay does not apply to experts, and noting that *Kirk* is applicable to 801(d)(2)(C) and (D)).

While NanoString's expert Dr. Edwards has cited passages of Dr. Gabriel's testimony in his own expert report, Dr. Edwards's trial examination is not a backdoor to admit this hearsay claim construction testimony into evidence under Rule 703. "[I]f the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. *See Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990) ("Rule 703 does not automatically mean that the *information itself* is independently admissible in evidence.").[2] Dr. Gabriel's claim construction testimony is not necessary to explain Dr. Edwards's independently-formed opinions about the patents' intrinsic evidence. *See Chanbond, LLC v. Atl. Broadband Grp., LLC*, No. 15-842-RGA, 2021 WL 1539182, at *4, 2021 U.S. Dist. LEXIS 74608, at *16 (D. Del. Apr. 19, 2021) (excluding testimony under 703 and 403, "Dr. Nettles does not rely upon the Wechselberger testimony to form any of his opinions. He formed them independently."). NanoString does not seek to explain Dr. Edwards's testimony, but to offer Dr. Gabriel's opinions as substantive evidence, which is not permitted under Rule 703 even if the hearsay were presented to the jury. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984).

**Defendant's Response:**

Plaintiffs oddly object to the introduction of testimony from their own expert, Dr. Stacey Gabriel, whom they previously stated is a "renowned scientist at the Broad Institute of Harvard

---

[2] The cases cited by NanoString do not support the proposition that Dr. Gabriel's deposition (the relied upon testimony) is admissible evidence. *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998) and *Gray v. United States*, No. 05CV1893JBLM, 2007 WL 4644736, at *5 (S.D. Cal. Mar. 12, 2007) are inapposite as they address whether the expert properly relied upon certain evidence, and here Plaintiffs have not moved to exclude the testimony of Dr. Edwards or his report.  In *Hunter* a party moved to exclude a deceased expert's declaration and to exclude every opinion expressed by the new expert that had relied upon that opinion. The Court denied the motion, but effectively stated it would decide the issue at a later time: "it is unclear at this juncture how, and to what extent, Mr. Twomey's past work in this litigation may form the basis of Mr. Orsey's opinions."

and MIT and is a very, very well respected expert in the field, has a ton of experience in sequencing, and is very, very well positioned to describe why these portions of the specification support the broader reading of the claims." 2/17/23 Tr. at 42:24-42:4. Plaintiffs relied upon her in this case to provide extensive opinions regarding how the skilled artisan would understand the specifications and the scope of disclosed embodiments. *See, e.g.*, D.I. 175 ¶¶ 42-46, 50-64, 67, 72, 78, 83-85. While such testimony was directly relevant to claim construction, it continues to be highly relevant to written description.

Indeed, while plaintiffs have confirmed that they will not bring Dr. Gabriel to trial,[3] both of the technical experts that they ***do*** plan to present (Drs. Quackenbush and Satija) continue to cite her testimony. *See, e.g.*, Quackenbush Report ¶ 29 ("I understand that Dr. Stacey Gabriel previously offered an opinion in this case about the level of ordinary skill in the art in April 2010, and I have reviewed that opinion. I agree with Dr. Gabriel's opinion and view my description and Dr. Gabriel's description as describing and identifying the same level of ordinary skill in the art."); Satija Report ¶ 150 ("My understanding is consistent with Dr. Gabriel's testimony...."); *id.* ¶ 178 ("Dr. Gabriel explained that the patents do teach targeted removal as a use of the segments described in columns 16 and 24...."); *id.* ¶ 184 ("Dr. Gabriel testified in accord with my understanding that the patent describes a series of method steps in a natural and logical order...."); *id.* ¶ 263 ("It is my opinion that Plaintiffs' claim construction brief and Dr. Gabriel's declaration

---

[3] After not including Dr. Gabriel on their witness list and presenting lengthy objections to the presentation of any testimony from her, Plaintiffs inexplicably revised their portion of the pre-trial order the day before filing to state that "Plaintiffs have never stated that they are unwilling to bring Dr. Gabriel to the trial...." Upon seeing this, NanoString asked Plaintiffs to promptly commit to bringing Dr. Gabriel to trial, but they have refused to do so. Plaintiffs' gamesmanship by not including Dr. Gabriel on their witness list and seeking to exclude her testimony while at the same time stating that they "have never stated that they are unwilling to bring Dr. Gabriel to the trial" is improper.

are consistent with the perspective of a skilled artisan…."). Importantly, NanoString's own expert,

Dr. Jeremy Edwards, also relies extensively upon Dr. Gabriel's testimony, citing it dozens of times.

Plaintiffs' peculiar request to prevent the jury from seeing such evidence that all parties

agree is highly probative should be denied. Plaintiffs have waived any such objections by not

moving *in limine* and in any event, their objections are unsupported by law.

**Plaintiffs' Waived Their Objection To Dr. Gabriel's Testimony:** If Plaintiffs wished to

raise an evidentiary objection to the introduction of Dr. Gabriel's testimony, they needed to move

*in limine*. But they did not. Instead of using one of their three motions *in limine* on this important

evidentiary issue, they wasted it on an untimely motion to strike NanoString's reverse DOE theory

that is inappropriate for a motion *in limine*. *See* Plaintiffs' MIL No. 2. Having declined to move

*in limine* with respect to Dr. Gabriel in favor of filing a belated motion to strike, Plaintiffs have

waived any objection to the introduction of her testimony. They should not now be permitted a

fourth untimely motion *in limine* simply by inserting a lengthy objection into the pre-trial order.

*See Idenix Pharms. LLC v. Gilead Scis., Inc.*, No. CV 13-1987-LPS, 2016 WL 7380530, at *1 (D.

Del. Dec. 4, 2016) ("In essence, Gilead, by stating objections (based on a single issue) to nearly

the entirety of the Schinazi testimony, has filed another motion in *limine*, which is also not

permitted at this time under the PTO (and exceeds the Court's limit of three such motions per side").

**Dr. Gabriel's Testimony Is Admissible Under Rule 703:** Plaintiffs objections above

ignore the primary avenue through which Dr. Gabriel's testimony will appear at trial. Specifically,

NanoString's own expert, Dr. Jeremy Edwards, plans to rely upon her testimony with regard to at

least written description. This is permissible pursuant to Rule 703.

Under Rule 703, an expert may provide an opinion based on inadmissible evidence as long

as it is of the type reasonably relied on by experts in the field—such as the testimony of other

experts. *See, e.g.*, *Hayes v. Raytheon Co.*, 808 F.Supp.1326, 1329 (N.D. Ill. 1992); *Wilbern v. Culver Franchising System, Inc.*, No. 13-c-3269, 2015 WL 5722825, at *14 (N.D. Ill. Sept. 29, 2015) ("In general, however, Rule 703 permits an expert to rely on the opinions of other experts in a related field."); *Inc.*, *Kovary v. Honeywell Int'l, Inc.*, No. CV 10-494-GW(CWX), 2014 WL 12564090, at *4 (C.D. Cal. Mar. 17, 2014) ("Experts are permitted to rely on hearsay, including the opinions of other experts, if proper foundation is laid that others in the field would likewise rely on them.").  Here, Plaintiffs cannot possibly deny that Dr. Gabriel's testimony is of the type reasonably relied upon because, as noted above, they have described her as "renowned" and "a very, very well respected expert in the field."  2/17/23 Tr. at 42:24-42:4.

In such circumstances, courts routinely deny requests of the type Plaintiffs now make.  *See, e.g.*, *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998) (affirming district court's decision to permit expert testimony based in part on "collaboration with other academics" where the expert relied on other authors and academics in the field who "discussed theories consistent with his"); *see also Hunter v. Cty. of Sacramento*, No. 2:06-CV-00457-GEB, 2013 WL 684649, at *2 (E.D. Cal. Feb. 22, 2013) (denying motion in limine were defendant sought to exclude the expert report of plaintiff's former "use of force" expert which was attached in its entirety to plaintiff's designated use of force expert's report); *Gray v. United States*, No. CIV. 05CV1893JBLM, 2007 WL 4644736, at *5 (S.D. Cal. Mar. 12, 2007) (denying motion to exclude expert report where the expert relied on opinions of other experts as well as medical records, interviews, and other sources of information in reaching her opinion).

Importantly, Rule 703 expressly allows an expert to disclose the inadmissible statements he or she relied on to the jury as long as their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. FRE 703 (The "proponent of the opinion

may disclose [inadmissible hearsay statements] to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."); *see also Hayes v. Raytheon Co.*, 808 F.Supp. at 1329 ("Rule 703 liberarulizes the admissibility of expert testimony by permitting experts to base their opinions on hearsay and other evidence not admissible in court."); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984) (noting that FRE 703 permits "hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion.").

The testimony from Plaintiffs' own expert clearly meets the Rule 703 test. The testimony is highly probative of material issues in this case, in particular, written description.  Plaintiffs have previously touted Dr. Gabriel as "very, very well positioned to describe why these portions of the specification support the broader reading of the claims."   2/17/23 Tr. at 42:24-42:4.  And the fact that the testimony is from Plaintiffs' own witness, who is a highly qualified expert, make the propositions on which she testified substantially more likely to be true and are especially credible when compared to other evidence – given they are against Plaintiffs' interest.

Any suggestion that admitting Dr. Gabriel's testimony would be unduly prejudicial is unfounded.  Rule 703 "[respects] the functions and abilities of both the expert witness and the trier of fact, while assuring that the requirement of witness confrontation is fulfilled[,]" because the expert himself (in this case, Dr. Edwards) is present in court and subject to cross-examination about both his opinions and the reasonableness of his reliance on particular material. *United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975). In this manner, Plaintiffs would have a way to contextualize and respond to Dr. Edwards' opinions and the bases for those opinions and will be able to cross-examine him at trial.

Notably, in circumstances virtually identical to those at issue here, a court overruled a party's attempt to exclude testimony because "any potential prejudicial effect is low, and the probative value in explaining the full basis of [the expert's] opinion outweighs any prejudicial effect." *See Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc.*, 2017 WL 9831550 (N.D. Cal.).

**Dr. Gabriel's Deposition Testimony Is Not Hearsay And Is Allowed Pursuant To Rule 32:** The foregoing establishes that Dr. Gabriel's testimony should be allowed notwithstanding Plaintiffs' hearsay objections. But it should be allowed for the additional reason that her testimony is not even hearsay to begin with pursuant to Rules 801(d)(2)(C) and 804(b)(1) and is permitted pursuant to Rule 32.

In *Vandenbraak v. Alfieri*, Judge Jordan, formerly of this district but now on the 3d Circuit, considered a motion *in limine* to "prevent the plaintiffs from introducing testimony at trial from one of the experts that the defendants retained to testify in this matter but whom the defendants have now determined that they will not call to the stand." 2005 WL 1242158, *1 (D. Del. May 25, 2005). The Court rejected virtually every argument Plaintiffs now makes in seeking to exclude Dr. Gabriel's testimony, including objections based on lack of a Rule 26 report, hearsay, and prejudice. *Id.* at *2-3.

Citing Rule 32, which allows introduction of deposition testimony when the witness is unavailable or in the interests of justice, the Court ruled that "plaintiffs will be permitted to read into the record during their rebuttal case pertinent portions of the expert's deposition testimony that are not otherwise objectionable, and the plaintiffs will be permitted to place before the jury evidence demonstrating that Dr. Fortuin was hired by the defendants as an expert witness." *Id.* at *1, *5. The Court held that the "hearsay objection simply does not bear scrutiny" in view of Rule 32. *Id.* at *4. What's more, the Court distinguished the *Kirk* case relied upon by Plaintiffs,

explaining that it "is entirely inapposite. It involved a party's use at trial of testimony given by a witness in a different case, and therefore the opinion in *Kirk* did not involve or even mention the import of Federal Rule of Civil Procedure 32, which is the basis of decision here." *Id.* at *5 n.9. As documented below, *Kirk* has been repeatedly distinguished on this basis. Regardless, Judge Jordan's rationale in *Vandenbraak* applies equally here, where the interests of justice call for the admissibility of Dr. Gabriel's deposition testimony, which is highly probative and that Plaintiffs have relied upon but strangely seek to exclude solely because they now find it harmful.

Any suggestion that the hearsay ought to block such testimony is without basis.

***First***, Dr. Gabriel's prior testimony is an authorized admission by a party opponent under Rule 801(d)(2)(C). *See, e.g.*, *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (holding that expert's testimony in prior trial was admission of party opponent); *see also Glendale Fed. Bank, FSB v. United States*, 39 Fed.Cl. 422, 424-25 (1997) ("[W]hen an expert is put forward for trial it is reasonable and fair to presume they have been authorized . . . [and] it is fair to tie the party to the statements of its experts."). Plaintiffs retained Dr. Gabriel specifically to testify regarding the scope of the disclosure of the patents-in-suit—testimony that necessarily relates to parties' ongoing written description issue. Her testimony this constitutes an authorized admission.

While Plaintiffs rely upon *Kirk* as supposedly holding that Rule 801(d)(2)(C) does not apply here, it is inapplicable because, as Judge Jordan explained in *Vandenbraak*, it involved a witness in a ***different*** case. *Vandenbraak*, 2005 WL 1242158, *1. Other courts have rejected *Kirk* on this basis, including for instance the court in *ONTI*:

> Thus, while some of the reasoning in *Kirk* stands contrary to my opinion, that case can be distinguished from this case on its facts: in the present case the Experts' testimony did not arise in unrelated litigation. Furthermore, each of the parties was free to select and present the testimony of the experts of their choosing, and neither

24

> party claims that the testimony in the present case falls outside the scope of the
> Experts' expertise. Therefore, the designated depositions and other testimony
> should be admitted.

*ONTI, Inc. v. Integra Bank*, No. CIV. A. 14514, 1998 WL 671263, at *3 (Del. Ch. Aug. 25, 1998).

This rationale is directly applicable here. *See also Teva Pharms. USA, Inc. v. Abbott Lab'ys*, No.

CIV. 02-1512-SLR, 2008 WL 4809116, at *1 (D. Del. Nov. 5, 2008) (quoting *ONTI* statement that

"it is unclear why a statement made by an expert in the course of his testifying on behalf of a party,

which is adverse to that party, should not be admissible against that party"); *Brandt v. Rokeby

Realty Co.*, No. CIV.A.97C-10-132-RFS, 2007 WL 2229659, at *2 (Del. Super. Ct. Aug. 3, 2007)

(following *ONTI* and holding "White's report is an admission under D.R.E. 801(d)(2)(c)").

**Second**, Plaintiffs ignore that Dr. Gabriel is unavailable to testify at trial.  Rule 804(b)(1)

provides that former testimony "given as a witness at a trial, hearing, or lawful deposition, whether

given during the current proceeding or a different one" is not excludable as hearsay where the

witness is unavailable and the testimony is offered against a party who had "an opportunity and

similar motive to develop [the testimony through] direct, cross, or redirect examination." FRE

804(b)(1). Sworn testimony provided in trial or in a deposition qualifies as "former testimony"

under Rule 804(b)(1).  *See United States v. Paling*, 580 F. App'x 144, 148-49 (3d Cir. 2014).

Dr. Gabriel is unavailable for trial because she resides in Massachusetts—far outside of the

subpoena power of this Court—and Plaintiffs have confirmed that she will not be brought to trial

Since Dr. Gabriel is unavailable, her testimony is admissible under Rule 804 because Plaintiffs

had the full motive to develop her testimony in this case. FRE 804(b)(1). *See Cordance Corp. v.

Amazon.com, Inc. et al.*, 639 F. Supp. 2d 406, 431 (D. Del. July 27, 2009) ("There is no dispute

that since Kaphan resides in Washington state, he is beyond the subpoena power of this court, and

therefore, is considered unavailable."); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d

998, 1019 (9th Cir. 2004) (affirming district court ruling that an expert witness was "unavailable"

under FRE 804(b)(1) and Fed. R. Civ. P. 32(a) because he was outside the subpoena power of the

court and the party seeking to exclude the expert's prior testimony had a similar motive to develop

his testimony in the prior action).

While Plaintiffs may contend that their motives were somehow different, "similar motive"

does not mean identical motive. *See Paling*, 580 F. App'x at 148 ("Significantly, the text of Rule

804(b)(1) does not require that a party had an identical motive to develop the testimony, only that

the party had a "similar' motive."). Dr. Gabriel's testimony regarding how one of skill in the art

would understand the specification (*see* D.I. 175 ¶¶ 42-46, 50-64, 67, 72, 78, 83-85) was directly

within the scope for which Plaintiffs retained her as an expert—to testify to whether the person of

ordinary skill in the art would understand the specification to support various claimed

embodiments. Plaintiffs even had the opportunity to have her prepare a detailed report to serve as

the foundation for her testimony.  *See id.*

**Dr. Gabriel's Testimony Is Proper For Impeachment:**  None of Plaintiffs' objections

would preclude NanoString from using Dr. Gabriel's testimony for impeachment of any witness

who may testify at trial.  It is well-established that a deposition may be used by any party for the

non-hearsay purpose of impeachment. FRE 801(d)(1)(A); Fed. R. Civ. P. 32(a)(1). This is true

regardless of whether the testimony is otherwise admissible.  *See Ostad v. Oregon Health Sciences*

*Univ.*, 327 F.3d 876, 886 (9th. Cir. 2003) (affirming district court decision admitting out of court

statement that did not meet exceptions to hearsay rule for impeachment purposes). The testimony

from Dr. Gabriel in this case is classic impeachment evidence that would assist the jury in assessing

the credibility and reliability of Plaintiffs' witnesses at trial and therefore, should not be excluded.

## V.    EXHIBITS AND OBJECTIONS THERETO

The parties' Joint Trial Exhibit List is appended hereto as **Attachment 9**.

Plaintiffs' Trial Exhibit List, including Defendant's specific objections thereto, is appended hereto as **Attachment 10**. *See* Section X regarding Defendant's motions *in limine*.

Defendant's Trial Exhibit List, including Plaintiffs' specific objections thereto, is appended hereto as **Attachment 11**. *See* Section X regarding Plaintiffs' motions *in limine*.

The parties agree that trial exhibits must be introduced through a sponsoring witness to be admitted, even if there is no objection to the exhibit. Experts may sponsor exhibits they rely upon. Each party reserves the right to object to a fact witness's sponsoring of an exhibit for which the witness has no personal knowledge or foundation.

## VI.    LENGTH AND TYPE OF TRIAL

The Parties understand that each side is permitted **eleven (11) hours** for its jury presentations, including openings and closings. The parties understand that opening statements are limited to 30 minutes per side and closings are limited to one hour per side.

Defendant NanoString respectfully objects to the constraint of 11 hours for presentation of its case, given the scope and complexity of the subject matter in this case.

The Parties agree that Plaintiffs' patent infringement claims and Defendant's counterclaims shall be tried to a jury, with the exception of the following:

### A.    Whether Evidence Relating To Plaintiffs' Request For Injunctive Relief Should Be Addressed In A Separate Evidentiary Hearing

Plaintiffs respectfully request that evidence relating to Plaintiffs' request for a permanent injunction should be presented in a separate evidentiary hearing set after the jury has rendered its verdict and the Court has ruled on the Parties' post-trial motions.

Defendant believes this determination is premature, and whether there is a need for an evidentiary hearing on injunctive relief should be determined after the jury trial.

**B.     Whether Reverse Doctrine Of Equivalents Should Be Decided By The Jury Or By The Court In A Separate Bench Trial**

**1.     Plaintiffs' Position: RDOE Should Be Decided By The Court In A Separate Bench Trial**

Plaintiffs respectfully request that, if NanoString is permitted to proceed with its untimely reverse doctrine of equivalents defense (*see* Plaintiffs' MIL 2, **Attachment 14**), NanoString's defense should be determined by the Court in a separate bench trial set after the jury has rendered its verdict and the Court has ruled on the Parties' post-trial motions.

**a.     No 7th Amendment Right To A Jury Trial Over Reverse DOE**

In *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, the Supreme Court found that the "reverse" doctrine of equivalents can prevent a finding of infringement "where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim." 339 U.S. 605, 608-609 (1950). The Federal Circuit Court of Appeals has called the defense an "anachronistic exception, long mentioned but rarely applied." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1368 (Fed. Cir. 2002). The Federal Circuit has noted that the rare district court finding of noninfringement based on RDOE has *never* been affirmed on appeal.[4] *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009) (quoting *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008)). The question of a right to a jury trial on RDOE has never been addressed by either the Supreme Court or the Federal Circuit Court of Appeals.

---

[4] *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009) appears to be the last time the Federal Circuit spoke on reverse doctrine of equivalents. The Supreme Court has not addressed reverse doctrine of equivalents since *Graver Tank* (1950).

The 7th Amendment does not provide a right to a jury trial over NanoString's RDOE theory. RDOE is a judicially created "equitable doctrine" whose application "requires that facts specific to the accused device be determined and weighed against the equitable scope of the claims, which in turn is determined in light of the specification, the prosecution history, and the prior art." *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1581 (Fed. Cir. 1991). *See also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2001) (the doctrine is "equitably applied based on underlying questions of fact."). For these reasons this Court held that "a reverse doctrine of equivalents defense is ***grounded in the rules of equity*** and is not required to be submitted to a jury for decision." *Ciena Corp. v. Corvis Corp.*, No. 00-cv-662-JJF, 2004 WL 253481, at *2, 2004 U.S. Dist. LEXIS 1706, at *5-6 (D. Del. Feb. 6, 2004) (finding reverse DOE "***can be decided by the Court***") (emphasis added). The Federal Circuit denied the *Ciena Corp.* defendant's post-trial *mandamus* petition noting the availability of non-mandamus remedies more than a year after the jury trial. *In re Corvis Corp.*, 95 Fed. Appx. 308 (Fed. Cir. 2004). Following the holding in *Ciena Corp.*, this Court subsequently declined to consider RDOE in summary judgment briefing in anticipation of a jury trial. *See Izumi Prods. Co. v. Koninklijke Phillips Elecs. NV*, 315 F. Supp. 2d 589, n.2 (D. Del. 2004). In other instances, the Court has acknowledged the holding in *Ciena Corp.* and noted that the Federal Circuit has not decided the issue to find that a bench trial is permissible but not required. *AVM Techs., LLC v. Intel Corp.*, No. 15-cv-33-RGA, 2017 U.S. Dist. LEXIS 65691, at *2-3 (D. Del. Apr. 29, 2017). No Court has ever held that a party has a right to present RDOE to the jury.

**b.    NanoString's RDOE Defense Should Be Decided Post-Trial By The Court**

RDOE is a defense to a finding of literal infringement. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) (en banc). After a finding of literal infringement, a defendant must

present a *prima facie* case that "facts specific to the accused device be determined and weighed against the equitable scope of the claims, which in turn is determined in light of the specification, the prosecution history, and the prior art." *Scripps*, 927 F.2d at 1581. The fact finder must decide whether "even if [the accused article] is within the literal words of the claim, [] it is 'so far changed in principle from a patented article that it performs the same or similar function in a substantially different way.'" *Id.* The issues presented by NanoString's RDOE theory and by 10x and Prognosys's rebuttal are better decided by the Court, and withholding the issue from the jury will mitigate jury confusion on issues the jury must decide, including literal infringement, indirect infringement, and validity.

In this case, NanoString's RDOE argument begins with its assertion that the "principle" of the invention of the Asserted Patents is "the 'spatial patterning' of the coding tags (either as part of the encoded probes or separately from the binding probes), which 'identify the positions in the sample of the biological targets being assayed' and 'are used to encode the location of the biological targets in the biological sample.'" **Attachment 14D** at Ex. 2A, pp. 5-6. Dr. Quackenbush has opined that the correct principle is "the use of a coding scheme that allows researchers to decode (for example via high-throughput sequencing) where target molecules were found in a tissue sample." Quackenbush Reply, ¶ 52 (**Attachment 12**). A fact finder must first decide if Defendant's proposal—in view of the specification, the prosecution history, and the prior art—best describes the *equitable* scope of the patents while simultaneously assuming that all facts about the scope of the literal claim language, the meaning of the prosecution history, the disclosure of the specification, and the scope and content of the prior art are consistent with the findings that the patents are literally infringed. For example, the fact finder must take the Court's claim construction that supported the fact finder's finding of literal infringement and then consider

whether the patent specification *equitably* describes a narrower invention than the literal claims, then compare that potentially-narrower equitable scope to NanoString's products that must be assumed to literally infringe, and then perform a technical equivalents analysis to determine substantial similarity or differences between that determined equitable scope and the *literally infringing* products. The jury would be asked to determine what the scope of the claims *should have been* while also making infringement determinations assuming the claims have the scope ordered by the Court on claim construction, a Herculean task in this case where, as the competing MIL briefing shows, the parties hotly dispute what can and cannot be said to the jury on claim scope. Having a jury perform that task in a short and fast trial while simultaneously deciding the threshold question of whether there is literal infringement at all, in addition to deciding non-obviousness, written description, and enablement is too much to ask. The Court is best positioned to consider NanoString's RDOE defense after there is a jury finding of literal infringement and after findings on non-obviousness, written description, and enablement.

Ironically, the *Steuben Foods* case that NanoString relies on in support of its position below is further evidence that RDOE is better addressed by the Court in complicated cases such as this one. There, Judge Connolly first allowed RDOE to be presented to the jury, but ultimately took the issue away from the jury by granting JMOL after trial. While NanoString analogizes RDOE to DOE in theory, the issue here is not whether RDOE *can* be heard by a jury in theory, it is whether the RDOE arguments in this case are better addressed by the Court given the complicated interactions with NanoString's written description arguments and the hot disputes about what the jury can and cannot hear about the Court's claim construction findings. *See* Plaintiffs' MIL 1 (Attachment 13) and Defendant's MIL 1 (Attachment 16).

## 2.        Defendant's Position: RDOE Should Be Decided By The Jury

Plaintiffs' suggestion that the reverse doctrine of equivalents ("RDOE") must be tried to

the Court in a bench trial and not the jury is without basis.

Strangely, Plaintiffs' lead argument on this point is that the reverse doctrine of equivalents

("RDOE") is supposedly rarely applied and has never been affirmed by the Federal Circuit.  This,

however, is irrelevant to whether RDOE ought to be tried to the jury.  And, in any event, Judge

Connolly from this district has fully rejected exactly this type of misguided argument:

> Steuben offers two counterarguments to Defendants' invocation of the reverse
> doctrine of equivalents. It points first to a statement by the Federal Circuit in *Roche
> Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2008), that "[t]he
> reverse doctrine of equivalents is rarely applied, and this court has never affirmed
> a finding of non-infringement under the reverse doctrine of equivalents."  But this
> dictum is of no moment.  Indeed, the Federal Circuit noted a year after Roche that
> "the unusual nature of the reverse doctrine of equivalents is not itself a reason to
> sanction a party for invoking it.  The Supreme Court has recognized it to be a viable
> defense, even if it is rarely asserted."  *DePuy Spine, Inc. v. Medtronic Sofamor
> Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009)

*Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, No. CV 19-2181-CFC-CJB, 2021 WL 4775996,

at *3 (D. Del. Oct. 13, 2021).

As to the actual issue of whether RDOE ought to be tried to the jury, there is no question

that RDOE raises a fact question, and as such, must be decided by the jury.  The Federal Circuit,

for instance, has unambiguously stated that "the reverse doctrine of equivalents also raises a fact

question, determinable on inquiry into whether a product has been so far changed in principle that

it performs the same or similar function in a substantially different way. Though the second inquiry

differs (literal infringement being present) it is nonetheless directed to a fact issue."  *SRI Int'l v.

Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985).  As such, NanoString is

guaranteed a right to a jury trial on RDOE by the 7th amendment.

Given the foregoing, the RDOE is unsurprisingly routinely tried to the jury. Judge Connolly in this district recently did exactly this and specifically instructed the jury on RDOE. *See Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, Civ. 19-2181-CFC-CJB, D.I. 784 § 4.2 (D. Del. Nov. 18, 2021) (instructing the jury that "[u]nder the reverse doctrine of equivalents, if an accused machine is so far changed in principle from a patented machine that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the machine does not infringe the claim"). While Plaintiffs contend that RDOE is a dead letter, Judge Connolly subsequently granted JMOL on this basis. *See Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, No. CV19-2181-CFC, 2023 WL 2498810, at *5-*8 (D. Del. Mar. 14, 2023).

Consistent with Judge Connolly and the fact that RDOE is a fact question, other district courts have been submitting RDOE to the jury for literally decades. *See, e.g.*, *Wicker Grp. v. Standard Reg. Co.*, No. CIV.A. 94-1209-A, 1995 WL 17883632, at *3 (E.D. Va. June 1, 1995) ("However, unlike the construction of patent claims, the reverse doctrine of equivalents is a question of fact to be decided by the jury."); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 61 F. Supp. 2d 133, 138 (D. Del. 1999) ("In June 1998, a jury returned a verdict finding that the defendants' products literally infringe the '365 patent, but that the defendants' products are so far changed from the principle of the invention claimed in the '365 patent that they do not infringe by application of the reverse doctrine of equivalents."); *Cordis Corp. v. Bos. Sci. Corp.*, 188 F. App'x 984, 985 (Fed. Cir. 2006) ("The jury concluded, however, that under the reverse doctrine of equivalents Boston Scientific was not liable for the infringement."); *Schubert & Salzer Maschinenfabrik Aktiengesellschaft v. W. Schlafhorst & Co.*, 856 F.2d 202 (Fed. Cir. 1988) ("Finally, Schlafhorst argues that the magistrate erred in instructing the jury on the reverse doctrine of equivalents. For

33

us to disturb the jury's verdict on that issue, Schlafhorst has the burden of establishing that the error was so egregious, considering the instructions as a whole, as to require the verdict to be set aside….Schlafhorst failed to carry its burden on appeal."); *Thomson S.A. v. Quixote Corp.*, 979 F. Supp. 286, 287 (D. Del. 1997), aff'd, 166 F.3d 1172 (Fed. Cir. 1999) ("On July 30, 1996, the jury found that all of the representative claims were literally infringed; that the reverse doctrine of equivalents did not relieve Defendants from liability for infringement…").    The foregoing confirms that RDOE must be tried to the jury.

Plaintiffs nonetheless cite a few cases holding that RDOE is an "equitable" doctrine that should be tried by the Court.    These cases, however, reflect a misreading of the law and its use of the word "equitable" in the context of the RDOE.    Indeed, this **exact** mistake was made in the context of the doctrine of equivalents itself, which both the Supreme Court and Federal Circuit have long ago corrected.    Specifically, these courts have both explained that the word "equitable" in the context of the DOE does not invoke "equity in the technical sense of a set of principles originating in England," but merely "general fairness:"

> In several recent opinions, this court has referred to the doctrine of equivalents as "equitable."    The term "equitable" can have many meanings.    The Supreme Court explained in *Graver Tank* that the doctrine prevents the unfairness of depriving the patent owner of effective protection of its invention, 339 U.S. at 607, 70 S.Ct. at 855–56, thereby achieving a fair or "equitable" result.    Thus, in doctrine of equivalents cases, this court's allusions to equity invoke equity in its broadest sense—equity as general fairness. While recognizing the equity, or fairness, promoted by the doctrine of equivalents, furthermore, the Supreme Court stated unequivocally that application of the doctrine is a question of fact.    *Id.* at 609, 70 S.Ct. at 856–57. This court has followed.    *SRI*, 775 F.2d at 1118 ("It is settled that the question of infringement (literal or by equivalents) is factual. Graver Tank.").

> By referring to the doctrine as a doctrine of fairness, neither the Supreme Court nor this court has invoked the myriad implications of an alternative to legal remedies. In addition, neither the Supreme Court nor this court has invoked equity in the technical sense of a set of principles originating in England to compensate for the historically harsh rules of common law.

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1521 (Fed. Cir. 1995).  As the Federal Circuit has explained, the DOE is "equitable" in the sense of relating to "general fairness," but is nonetheless a fact question that must be tried to the jury.

In fact, courts continue to frequently refer to the doctrine of equivalents itself as "equitable," but there is no dispute that doctrine of equivalents—just like RDOE—is a fact question and must be tried to the jury.  *See, e.g.*, *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1333 (Fed. Cir. 2019) (referring to the "equitable spirit that animates the doctrine of equivalents"); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 315 F. Supp. 3d 977, 1007 (N.D. Ill. 2018) ("True, infringement under the doctrine of equivalents is an equitable doctrine…."); *Noven Pharms., Inc. v. Watson Lab'ys, Inc.*, No. 11-CV-5997 DMC JBC, 2013 WL 6190182, at *8 (D.N.J. Nov. 26, 2013) ("The doctrine of equivalents, however, is an 'equitable' tool…."); *Clearwater Sys. Corp. v. Evapco, Inc.*, 596 F. Supp. 2d 291, 306 (D. Conn. 2009) ("Under the equitable doctrine of equivalents…."). Plaintiffs reliance on case law that has misinterpreted the use of the word "equitable" in the context of the RDOE is without merit.

To the extent Plaintiffs contend that RDOE is somehow uniquely different from the doctrine of equivalents itself such that the former must be decided by the Court while the latter is tried by the jury, Judge Connolly has also firmly rejected this.  As he explained, RDOE and doctrine of equivalents are two sides of the same coin:

> Defendants have asserted the doctrine of equivalents.  The doctrine is typically invoked by patentees to support a finding of infringement, but parties accused of infringement can also avail themselves of this equitable principle.
>
> Both parties refer to the doctrine in their briefing as the "reverse doctrine of equivalents" because it is Defendants who have invoked the doctrine. The Supreme Court, however, has never adopted that term. On the contrary, the Supreme Court made clear in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605 (1950), that the doctrine of equivalents applies equally to plaintiffs and defendants in a patent infringement case….***Because the doctrine of equivalents applies equally to the patentee and the accused infringer, "reverse doctrine of***

35

*equivalents" is really a misnomer*.

*Steuben Foods*, 2021 WL 4775996, at \*2-\*3 (citations omitted).  Notably, Judge Connolly described the RDOE as "equitable," but then instructed the jury on the issue, confirming unambiguously that references to RDOE in the law as "equitable" is not an indicator that the issue must be decided by the Court.

Plaintiffs cite no credible support for their position that the Court must hold a bench trial on RDOE after the jury trial.  RDOE should be tried to the jury.

## VII.    PROPOSED FINDINGS AND CONCLUSIONS

The Parties' positions on evidentiary hearings on injunctive relieve and reverse doctrine of equivalents are described above in Section VI. To the extent any issue is addressed in a bench trial, the Parties will submit proposed findings of fact and conclusions of law with the pretrial order governing the bench trial.

## VIII.    PROPOSED VOIR DIRE QUESTIONS

Pursuant to the Scheduling Order (D.I. 199), the Parties will submit proposed voir dire questions on October 20, 2023.

## IX.    PROPOSED JURY INSTRUCTIONS

Pursuant to the Scheduling Order (D.I. 199), the Parties will submit proposed jury instructions on October 20, 2023.

## X.    MOTIONS *IN LIMINE*

Pursuant to the limits and procedures of the Scheduling Order (D.I. 39), briefing for the sides' *in limine* motions are attached hereto as follows.

| Attachment | Briefs | Title |
|---|---|---|
| **13** | A: Plaintiffs' MIL 1 | To Exclude Evidence Or Argument Contradicting The Markman Order (D.I. 207) |
| | B: Opposition | |
| | C: Reply | |
| | D: Exhibits | |

36

| Attachment | Briefs | Title |
|---|---|---|
| **14** | A: Plaintiffs' MIL 2 | To Exclude Evidence Or Argument On The Reverse Doctrine Of Equivalents |
| | B: Opposition | |
| | C: Reply | |
| | D: Exhibits | |
| **15** | A: Plaintiffs' MIL 3 | To Exclude Evidence Or Argument About A Prior Unrelated Litigation |
| | B: Opposition | |
| | C: Reply | |
| | D: Exhibits | |
| **16** | A: Defendant's MIL 1 | To Preclude Reliance On Pre-Trial Proceedings |
| | B: Opposition | |
| | C: Reply | |
| | D: Exhibits | |
| **17** | A: Defendant's MIL 2 | To Preclude Reliance On Alleged Pre-Suit Knowledge |
| | B: Opposition | |
| | C: Reply | |
| **18** | A: Defendant's MIL 3 | To Preclude Evidence And Argument Regarding Other Proceedings Involving 10x And NanoString |
| | B: Opposition | |
| | C: Reply | |
| | D: Exhibits | |

## XI.   ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF TRIAL

### A.   Agreements Regarding Exchanges During Trial

The Parties propose the following procedures to aid trial in the present action:

#### 1.   Exchanges of Exhibits and Demonstratives to Be Used With Opening Arguments

The parties have agreed to an exchange on November 1, 2023, no later than 2:00 pm of up to 30 trial exhibits (per side) that a party seeks to pre-clear of objections so that the parties might use the documents in opening statements. The parties shall exchange objections by 2:00 pm on November 2, 2023. If the parties are unable to resolve the objections cooperatively, the documents and objections may be raised at the pre-trial conference or left to the regular exhibit objection process. Under the agreement, a party is not required to disclose any or all of the exhibits it might use in opening as part of pre-clearance.

The parties shall exchange complete representations of any demonstratives or exhibits (in color if in color, and with animations if applicable) that they intend to use for opening statements no later than 3:00 pm on November 12, 2023. The parties shall exchange any objections by 5:00 pm that evening. The parties shall meet by 6:00 pm to resolve any objections. Any objections to their use that cannot be resolved shall be raised with the Court on Monday morning before trial begins.

The parties agree that demonstratives need not be exchanged for closing statements.

### 2. Exchange Of Exhibits And Demonstratives To Be Used With Witnesses During Trial

By 7:00 p.m.[5] the night before a witness is put on the stand, the side offering the witness will identify exhibits that the side intends to use for examination. By 8:00 p.m. the side offering the witness will provide color, PDF copies of illustrative exhibits to be used with the witness. For any video or animations to be used, the side seeking to use illustrative exhibits will provide such illustrative exhibits in an electronic form that enables the receiving side to play the video or animation as it is intended to be used in court. For any physical exhibits to be used, the side seeking to use the exhibit must make it available for inspection. The sides need not identify exhibits or illustrative exhibits for use in cross-examination.

By 9:00 p.m. the evening before a witness is put on the stand, the opposing side will identify any objections to the trial exhibits and illustrative exhibits.

The Parties shall meet and confer on any objections by 9:30 pm that evening.

Any unresolved issues will be presented to the Court the morning of the proposed use of the disputed trial exhibits and/or illustrative exhibits.

---

[5] All times set forth herein are reflected in Eastern Time.

The notice provisions in this section do not apply to illustrative exhibits created in the courtroom, or to the enlargement, highlighting, ballooning, or excerpting of trial exhibits or of testimony by attorneys or by the witness.

### 3. Identification of Order of Witnesses as Trial Process

Each side will identify all live trial witnesses in the order that the side expects to call them by 7:00 pm two (2) calendar days before the witness will be called (e.g., notice must be given by 7:00 p.m. on Monday for witnesses to be called on Wednesday).

A side shall provide reasonable notice if for any reason it does not intend to call a witness that it had previously indicated would appear live as a "will call" witness. In that event, the other side may designate and offer deposition testimony from such witness (subject to the Federal Rules of Evidence). Counter-designations may also be provided. If such designations cannot be completed by the times agreed to below, the sides shall work in good faith to set deadlines for the disclosure of such designations, counter-designations, and objections.

### 4. Presentation Of Deposition Designations

All counter-designations designations will be played/read together with the affirmative designations in the order that the witness provided the testimony.

The side offering the witness will prepare the video clips/transcript to be played/read presenting all portions of the designated testimony in sequence. To that end, the following procedure will apply.

By 12:00 p.m. two calendar days before a witness is called by deposition, the side offering the witness will identify those portions of the transcript that will be presented to the jury and any exhibits that will be admitted through the testimony. If the side intends to include any colloquy between counsel or objections, they will be specifically and separately identified.

By 5:00 p.m. two calendar days before the witness is called by deposition, the responsive side will identify any objections and counter-designate portions of the transcript that will be presented to the jury and identify any objections to the testimony. If the side intends to include any colloquy between counsel or objections, they will be specifically and separately identified.

By 7:00 p.m. two calendar days before the witness is called by deposition, the side offering the witness will identify objections to the counter designations.

The Parties shall meet and confer on any objections by 8:00 p.m. two calendar days before the witness is called by deposition and will present any unresolved issues to the Court the following morning (one calendar day before the witness is to be called by deposition). The Parties shall submit highlighted copies of the disputed materials (with each side's designated testimony highlighted in a different color) and an itemized list of the remaining objections.

By 5:00 p.m. the evening before the witness is called by deposition, the side offering the witness will provide a copy of the video or transcript containing all Parties' designations, consistent with any objections resolved by the Court. All irrelevant and redundant material, including colloquy between counsel, objections, and pauses will be eliminated when the deposition is read or played at trial, unless there is good cause for the inclusion of such material.

The parties shall provide the Court with a per-side percentage breakdown of the testimony presented to the jury by deposition designations.

### 5.      Outside Attorneys' Eyes Only Information

Any party may request that particular exhibits marked "CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" under the Protective Order entered in this case be displayed on monitors visible to the Court, the jury, and the Parties, but not otherwise be displayed in the courtroom during trial and not be filed publicly. Such requests should be made the morning before the exhibit will be used, and must be supported by good cause.

### 6.    Proposals Regarding Claim Narrowing for Trial

Plaintiffs reduced their asserted claims to 20 on June 24, 2022. D.I. 81. The parties have been litigating 5 additional claims of the unasserted 467 Patent in connection with NanoString's declaratory judgment counterclaims.

Defendant reduced its invalidity contentions relating to 10x's asserted claims on July 22, 2022, to 25 or fewer prior art references, 4 or fewer prior art grounds per claim, and 4 or fewer non-prior art grounds. D.I. 81.

**10x and Prognosys's Position on Further Narrowing for Trial**

Plaintiffs will agree to reduce the number of asserted claims for presentation at trial to **twelve (12)** by October 23 if Defendant agrees to reduce its invalidity theories to **three (3) total assertions per claim** by October 31. For purposes of this agreement, each obviousness combination counts as a separate assertion, as does each written description assertion and each enablement assertion.

**NanoString's Position on Further Narrowing for Trial**

NanoString proposes that by October 13, 2023, Plaintiffs will elect no more than **six** (6) claims from **three** (3) Asserted Patents for presentation at trial. NanoString will likewise agree to reduce its obviousness theories to two obviousness combinations per claim by October 20.

### B.    Additional Agreements That Need No Attention By The Court

### 1.    Agreement Regarding Updated Financial Productions Relevant To Trial

By **October 20, 2023,** [6] the Parties tentatively agree to supplement their respective productions of financials to include data through Q3 2023. 10x and Prognosys's expert, Julie Davis,

---

[6] The Parties agree to meet and confer in good faith regarding this deadline if logistical issues relating to the production arise.

will tentatively provide a short supplemental report by **October 27, 2023**, to update her damages calculation to include the supplemental financial production. NanoString's damages expert, Michael Lasinski, will provide a short supplemental report by **November 3, 2023**, updating his damages calculations to include the supplemental financial productions. The Parties will strictly limit the agreed-to supplements to update only the final damages calculations based on the updated financials and will be strictly limited to applying the same methodologies applied prior to their depositions.

### 2. Evidentiary Agreements

Each Party agrees not to seek to introduce evidence, elicit testimony, or make attorney argument about the net worth or compensation of any other party's current or former employee(s).

Each Party agrees that in the presence of the jury it will not seek to introduce evidence, elicit testimony, or make attorney argument referencing the summary judgement motions or the Daubert motions filed in this matter.

### 3. Agreements Regarding Elements That Require No Proof At Trial

#### a. Prognosys Is The Sole Owner Of The Asserted Patents

Defendant admits only for purposes of this case such that Plaintiffs need not present proof at trial that Prognosys is the sole owner of the asserted patents.

#### b. No Limitation On Damages Pursuant To 35 U.S.C. § 287.

Defendant admits only for purposes of this case such that Plaintiffs need not present proof at trial that Plaintiffs' damages in this case are not limited by 35 U.S.C. § 287.

#### c. Prior Art Status

Plaintiffs admit only for purposes of this case that Defendant need not present proof at trial that JTX-0026, 0027, 0029-0037 qualify as prior art to the claims at issue.

42

Respectfully Submitted,

*Of Counsel*:                                          RICHARDS, LAYTON & FINGER, P.A.

TENSEGRITY LAW GROUP LLP              */s/ Jason J. Rawnsley*
Matthew Powers                                       Frederick L. Cottrell, III (#2555)
Paul Ehrlich                                              Jason J. Rawnsley (#5379)
Stefani Smith                                            Alexandra M. Ewing (#6407)
Robert Gerrity                                          920 North King Street
Li Shen                                                    Wilmington, DE 19801
555 Twin Dolphin Drive                          (302) 651-7700
Suite 650                                                 cottrell@rlf.com
Redwood Shores, CA 94065                    rawnsley@rlf.com
Tel: (650) 802-6000                                ewing@rlf.com

Samantha Jameson                                  *Attorneys for Plaintiffs*
Ronald J. Pabis
Kiley White
8260 Greensboro Dr.
Suite 260
McLean, VA 22102-3848
Tel: (650) 802-6000

10x_NSTG_Service@tensegritylawgroup.com

*Of Counsel*:

WEIL, GOTSHAL & MANGES LLP

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Karnik F. Hajjar (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000
Fax: (650) 802-3100
edward.reines@weil.com
derek.walter@weil.com
karnik.hajjar@weil.com

Christopher Pepe (admitted *pro hac vice*)
Amanda Branch (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: (202) 682-7000
christopher.pepe@weil.com
amanda.branch@weil.com

Yi Zhang (admitted *pro hac vice*)
Natalie Kennedy (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
yi.zhang@weil.com
natalie.kennedy@weil.com

Nanostring.10X@weil.com

Dated: October 13, 2023

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant*