IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NANOSTRING TECHNOLOGIES, INC., <br><br> Defendant. | C.A. No. 21-cv-653-MFK |

**BENCH MEMO RE: IMPROPER CONNECTIONS BETWEEN 10X'S PATENT PROSECUTION AND NANOSTRING'S COMMERCIAL PRODUCT**

Plaintiffs 10x Genomics, Inc. and Prognosys Biosciences, Inc. submit this bench memo in advance of Plaintiffs' anticipated contemporaneous objections to questioning that suggests that the timing of 10x's patent filings and continued prosecution targeted improperly NanoString's products. These implications are irrelevant under Rule 402 and present a danger of confusing the jury such that they should be excluded under Rule 403.

The Federal Circuit is clear that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235 (Fed. Cir. 1985)); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998) ("[I]t is neither illegal nor bad faith for an applicant to amend the claims in view of a competitor's product."); *Medtronic, Inc. v. Boston Sci. Corp.*, 777 F. Supp. 2d 750, 781 (D. Del. 2011) ("An applicant may

1

attempt to obtain new claims directed to inventions that he or she believes are fully disclosed and supported in an earlier application.") (quoting *Kingsdown*). Accordingly, it is proper to exclude evidence of a party's patent prosecution where that evidence is intended to leave the impression with the jury that such activity is improper or makes patentee "appear unprincipled in the jurors' eyes". *See, e.g.*, *Sonos, Inc. v. D&M Hldgs., Inc.*, No. 14-1330-WCB, D.I. 445-1 at 268 (D. Del. Nov. 16, 2017) (Ex. A) ("Even if D&M's purely speculative accusation was true, there is nothing improper, illegal, or inequitable about drafting claims to cover a competitor's product.  Thus, D&M's accusation is not only irrelevant under Rule 402, but also serves no other purpose than to make Sonos 'appear unprincipled in the jurors' eyes.'  Therefore, it should be precluded under Rule 403."); *see also Sonos, Inc. v. D&M Hldgs., Inc.*, 2017 WL 5633204, at *2 (D. Del. Nov. 21, 2017).

To be clear, Plaintiffs are not objecting to NanoString putting on evidence of the timing of the applications at issue to try to support its written description defense, but the attempts to tie those filing dates to the launch of GeoMx serve no proper purpose and can only be intended to leave the wrong impression in the minds of the jurors that there is something improper about that continued prosecution. NanoString's opening statements and questioning on cross-examination suggest that 10x altered its claims to cover NanoString's GeoMx product—which would not be improper even if true. Counsel for NanoString made this suggestion in NanoString's opening statement no fewer than five times, stating, for example: **"Every single one of them, they pull that out in 2020 – our product has been on the market for years. They pull that language out, and they get the patents through."** Trial. Tr. Vol. 1-A 11/13/23 at 120:25-121:1-3. Likewise, while cross-examining 10x's CTO and corporate representative, Dr. Schnall-Levin, NanoString asked:

2

>Q. And the **earliest issuance date for any of the patents in date [sic] was November 12th of 2019.** Do you see that in the top left corner as well?
>A. Yes, I see that.
>Q. Okay. Those are both **after NanoString's product had commercially launched, correct?**
>A. Both those dates are after March 2019.

Vol. 1-A 11/13/23 at 131:16-21. This line of argument also suggests that patents cannot rightfully continue from earlier issuances, but this is neither legally nor factually accurate. *See Digital Control, Inc. v. McLaughlin Mfg. Co.*, 248 F. Supp. 2d 1015, 1019 (W.D. Wash. 2003) ("This practice of continuation, even when it "captures" technology or devices of a competitor, is lawful and has been consistently upheld by courts") (citing *Kingsdown*, 863 F.2d at 874). From the demonstratives DDX-6.149, it appears that NanoString may continue to make these improper suggestions during the examination of Dr. Edwards (and perhaps its fact witnesses this morning) and repeat these suggestions in closing argument by attempting to tie the prosecution of the patents and the filing of the applications with the launch of GeoMx. Continuing to make these inferences are likely to confuse the jury and lead them to believe that 10x's did something improper and any probative value this suggestion might have is substantially outweighed by the prejudicial effect and potential jury confusion caused by this evidence and attorney argument. Consequently, Plaintiffs object to NanoString's continued suggestions that 10x's patent filings were targeted or improper, and NanoString should be precluded from continuing to draw these connections under Rules 402 and 403.

Based on these suggestions during trial by NanoString, Plaintiffs also respectfully request that the final jury instructions include an instruction on this issue that sets forth the Federal Circuit precedent which instruction has been adopted directly from a case in this District and request that the final jury be instructed as follows:

3

> NanoString has suggested that 10x altered its claims to cover NanoString's GeoMx product. You are instructed that there is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application.

*Padcom, Inc. v. NetMotion Wireless, Inc.*, Civil Action No. 03-983-SLR (March 24, 2006) (Ex. B). This instruction is necessary to cure any incorrect impression that has already been left in the jurors' minds with regard to the timing of the filing of the applications of the patents in suit.

| | |
|---|---|
| *Of Counsel*: | RICHARDS, LAYTON & FINGER, P.A. |
| TENSEGRITY LAW GROUP LLP<br>Matthew Powers<br>Paul Ehrlich<br>Stefani Smith<br>Robert Gerrity<br>Li Shen<br>555 Twin Dolphin Drive<br>Suite 650<br>Redwood Shores, CA 94065<br>Tel: (650) 802-6000 | */s/ Jason J. Rawnsley*<br>Frederick L. Cottrell, III (#2555)<br>Jason J. Rawnsley (#5379)<br>Alexandra M. Ewing (#6407)<br>Richards, Layton & Finger, P.A.<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>rawnsley@rlf.com<br>ewing@rlf.com |
| Samantha Jameson<br>Ronald J. Pabis<br>Kiley White<br>Joanna R. Schacter<br>8260 Greensboro Dr.<br>Suite 260<br>McLean, VA 22102-3848<br>Tel: (650) 802-6000<br>10x_NSTG_Service@tensegritylawgroup.com | *Attorneys for Plaintiffs* |

Dated: November 15, 2023