**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., | |
| Plaintiffs, | C.A. No. 21-cv-653-MFK |
| v. | |
| NANOSTRING TECHNOLOGIES, INC., | |
| Defendant. | |

**FINAL JURY INSTRUCTIONS**

Date:   November 16, 2023

## Duties of the jury

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

**The evidence**

The evidence consists of the testimony of the witnesses, and the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

**What is not evidence**

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

**Evaluating witness testimony**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

Certain testimony was presented to you by video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

**Witnesses rendering opinions**

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

**Weighing and considering the evidence**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we sometimes look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

**Patents generally**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about those aspects of patent law that specifically relate to this case.

**The parts of a patent**

You have been provided with a copy of the patents involved in this case. Please look at the one of those—the 219 patent—as I identify its different sections. Other patents are also involved in this case. I am using this particular patent as an example to describe the various parts of a patent.

The first page of the 219 patent provides identifying information, including the date the patent issued and patent number along the top; the name of the inventor, the filing date; the assignee, which is the company or individual that owned the patent on the date it was issued; and a list of documents considered in the Patent Office during the time the patent was being sought.

The next part of the patent, which is sometimes referred to as the specification, begins with a brief statement about the subject matter of the invention, which is called an abstract. This is found on the first page.

Next are the drawings, which appear as Figures 1 to 5 on the next 5 pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent.

A description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. A description of the 219 patent begins at column 1, line 1, and continues to column 32, line 58. It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.

The description of the invention is followed by one or more numbered paragraphs, which are called the claims.

**The patent claims**

The claims of a patent are the numbered paragraphs at the end of the patent. The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into parts or steps, called "limitations" or "requirements." For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together. The tabletop, legs and glue are each a separate limitation or requirement of the claim.

In this case, we are concerned with claim 21 of the 219 patent; claim 10 of the 669 patent; claim 17 of the 566 patent; claim 2 of the 113 patent; claim 25 of the 878 patent; claim 17 of the 607 patent; and claim 5 of the 917 patent.

To decide whether NanoString infringed the patent, you must compare the claims to the accused product or process. Similarly, in deciding a challenge to the validity of a patent based on the written description requirement, you must compare the claims to the written description of the invention in the patent. In reaching your determinations with respect to infringement and invalidity, you must consider each claim of the patent separately.

**Independent and dependent claims**

There are two types of patent claims, independent claims and dependent claims. An independent claim stands on its own and does not refer to any other claim of the patent. A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the requirements of the other claims to which it refers, as well as the requirements in the dependent claim itself, even though it does not repeat those requirements of the other claims.

Earlier I described a hypothetical patent claim for a table that described the tabletop, four legs, and glue to hold the legs and tabletop together. That is an example of an independent claim, which I will call claim 1. In that same hypothetical patent, a dependent claim, which I will call claim 2, might state, "the table of claim 1, where the tabletop is square." In this situation, in order to infringe dependent claim 2, it would not be enough for Plaintiffs to prove that NanoString made a table with a square tabletop – Plaintiffs would also have to prove that, as stated in claim 1, the table has four legs and glue to hold the legs and tabletop together.

**"Comprising"**

When a patent claim uses the term "comprising," it means that the invention

includes the listed requirements, but is not limited to those requirements.

**Infringement; interpretation of the patent claims**

The owner of a patent has the right to prevent others from making; using; offering for sale; selling; and importing the invention covered by the patent. A product or process infringes a patent if that product or process is covered by at least one claim of the patent.

I will tell you the meaning of any disputed terminology in the patent claims. You must use the meanings I give you when you decide whether the patent is infringed and whether it is invalid.

**Interpretation of the patent claims**

I have provided you with a copy of Plaintiffs' 219, 669, 556, 113, 878, 607, and 917 patents. I have defined certain words and phrases in some of the claims and the parties have agreed to definitions of a phrase. You must use these definitions in making your decision. The words and phrases that are defined are as follows:

| Asserted Patent | Claim Term | Court's Construction |
|---|---|---|
| 878 patent; 113 patent; 669 patent; 219 patent | "delivering a plurality of probes to a tissue sample" | Plain and ordinary meaning |
| 566 patent; 607 patent | "contacting a tissue sample with a plurality of probes" | Plain and ordinary meaning |
| 917 patent | "reagent delivery system" | Plain and ordinary meaning |
| 566 patent; 607 patent | "generating" | Plain and ordinary meaning |
| 878 patent; 113 patent; 669 patent; 219 patent; 917 patent | "sequence of the oligonucleotide"/ "sequence(s) of the oligonucleotide(s)" | "order of nucleotides in the oligonucleotide" |
| 669 patent; 219 patent; 566 patent; 607 patent; 917 patent | "oligonucleotide [having/comprising] a sequence" | "oligonucleotide having/comprising an order of nucleotides" |
| 878 patent; 113 patent; 219 patent | "removing the oligonucleotide from [the/a] region of interest"/ "removing the all [sic] or a portion of the oligonucleotide from a region of interest" | Plain and ordinary meaning |
| 917 patent | "portion of the tissue sample" | plain and ordinary meaning and means that a portion of the tissue sample is not |

| Asserted Patent | Claim Term | Court's Construction |
|---|---|---|
| | | limited to a probe or probes but encompasses any part or component of the tissue sample. |

**Preponderance of the evidence / clear and convincing evidence**

When I say a party must prove a proposition by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that the proposition is more probably true than not true.

When I say that a party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true. This is a higher burden of proof than "more probably true than not true."

**Direct infringement**

Plaintiffs contend that NanoString has infringed and is infringing claim 21 of the 219 patent; claim 10 of the 669 patent; claim 17 of the 566 patent; claim 2 of the 113 patent; claim 25 of the 878 patent; claim 17 of the 607 patent; and claim 5 of the 917 patent. To succeed on this contention, Plaintiffs must prove the both of following propositions by a preponderance of the evidence:

1.      Every requirement in the claim of Plaintiffs' patent that you are considering is found in NanoString's product or process.

2.      NanoString made, used, sold, offered for sale, or imported that product or process in or into the United States.

A requirement of a claim Is found in NanoString's product or process if the requirement is in the product or process exactly as it is in the claim or if the requirement is in the product or process in a manner that is equivalent to what is in the claim.

If all of the requirements of the claim are in NanoString's product or process exactly as they are in the claim, that is called "literal infringement."

If all of the requirements of the claim are in NanoString's product or process, but one or more of them is equivalent to what is in the claim, that is called "infringement by equivalence."   Plaintiffs infringement by equivalence for only the following claims: claim 2 of the 113 patent; claim 21 of the 219 patent; claim 25 of the 878 patent; and claim 5 of the 917 patent.  I will define the term "equivalent" in a moment.

**Direct infringement – dependent claims**

To determine whether a dependent patent claim has been infringed, you must compare NanoString's product or process to both the dependent claim and the claims to which they refer. For example, if claim 2 is dependent from claim 1, claim 2 may say, "2. The product or process according to claim 1, wherein . . . ." In this situation, dependent claim 2 cannot be "literally" infringed unless claim 1 is also infringed. For this reason, in the example you would have to compare NanoString's product or process to all the requirements of both claims 1 and 2 when deciding infringement of claim 2.

**Infringement — Definition of "equivalent"**

A part of NanoString's product or a step in NanoString's process is equivalent to a claim requirement if it performs substantially the same function, in substantially the same way, to reach substantially the same result.

One factor you may consider in making the determination of equivalence is whether a person of ordinary skill in the field of the invention would have regarded NanoString's part or step to be interchangeable with the claim requirement.

In determining infringement by equivalence, you must still use the meanings for the claim requirements that I have provided.

**Determining infringement**

You must decide whether there is infringement separately for each patent claim. There is one exception to this rule. If you decide that an independent claim is not infringed, then there cannot be literal infringement of any dependent claim that refers directly or indirectly to that independent claim.

When you decide the question of infringement, you must compare NanoString's products against the plaintiffs' patent claims, not against the plaintiffs' products.

**Indirect infringement – inducement of infringement**

Plaintiffs contend that NanoString induced NanoString's customers to infringe claim 21 of the 219 patent; claim 10 of the 669 patent; claim 17 of the 566 patent; claim 2 of the 113 patent; claim 25 of the 878 patent; claim 17 of the 607 patent; and claim 5 of the 917 patent. To succeed on this contention regarding the particular patent claim you are considering, Plaintiffs must prove each of the following propositions by a preponderance of the evidence:

1.      NanoString knew of Plaintiffs' patent.

2.       acted; encouraged; instructed; induced; or caused NanoString's customers to use and/or make a product and/or perform a process in a manner that directly infringed Plaintiffs' patent, as defined in other instructions that I have given you.

3.      NanoString knew or should have known that its acts would cause NanoString's customers to infringe Plaintiffs' patent.

4.      One or more of NanoString's customers directly infringed the patent.

Regarding claim 5 of the 917 patent, Plaintiffs can also show that NanoString induced infringement by proving each of the following propositions by a preponderance of the evidence:

1.      NanoString supplied or caused to be supplied components from the United States to a place outside the United States, which make up all or a substantial portion of the invention.

2.      NanoString intentionally took action to cause others to assemble the components outside the United States.

3.      NanoString knew of Plaintiffs' patent and knew that the encouragement, instructions, or training constituted infringement of that patent.

       4.      The encouragement, instructions, or training would constitute direct

infringement of the claim if it had been carried out in the United States.

**Indirect infringement – contributory infringement**

Plaintiffs also contend that NanoString contributed to the infringement of claim 21 of the 219 patent; claim 10 of the 669 patent; claim 17 of the 566 patent; claim 2 of the 113 patent; claim 25 of the 878 patent; claim 17 of the 607 patent; and claim 5 of the 917 patent. To succeed on this contention, Plaintiffs must prove each of the following by a preponderance of the evidence:

1.      NanoString knew of Plaintiffs' patent.

2.      NanoString sold a component that forms a significant part of the invention described in a claim in Plaintiffs' patent.

3.      The component was not a commonly available item or a product with substantial non- infringing uses.

4.      NanoString's customers infringed Plaintiffs' patent by using this component.

5.      NanoString knew the component was especially made or adapted for a use that would infringe Plaintiffs' patent.

Regarding claim 5 of the 917 patent, Plaintiffs can also show that NanoString contributed to infringement by proving each of the following propositions by a preponderance of the evidence:

1.      NanoString knew of Plaintiffs' patent,

2.      NanoString supplied or caused to be supplied a component that forms a significant part of the patented invention that is not a commonly available item with other uses, from the United States to a place outside the United States.

3.      NanoString knew the component was especially made for a use that would infringe Plaintiffs' patent;

4.      NanoString intended for the component to be used in a product that would directly infringe the claim if it had been used in the United States.

**Willful infringement**

Plaintiffs contend that NanoString infringed Plaintiffs' patents willfully since the filing of this lawsuit on May 6, 2021.

You are to consider the issue of willful infringement only if you have found that NanoString infringed Plaintiffs' patents. Not all infringement is willful.

Infringement is willful if Plaintiffs prove by a preponderance of the evidence that NanoString knew that it was infringing the patent or acted in reckless disregard of Plaintiffs' rights. In making this determination, you should consider all of the evidence, including any evidence regarding whether NanoString acted maliciously, deliberately, or in bad faith. You should consider what NanoString knew at the time that it performed the acts that are accused of infringement or manufactured or sold the accused product.

You may not determine that the infringement was willful if all that is shown is that NanoString was aware of a patent and infringed it.

**Invalidity – general**

NanoString contends that claim 21 of the 219 patent; claim 10 of the 669 patent; claim 17 of the 566 patent; claim 2 of the 113 patent; claim 25 of the 878 patent; claim 17 of the 607 patent; and claim 5 of the 917 patent are invalid.

The law presumes each of the claims of the asserted patents to be valid. For that reason, NanoString has the burden of proving invalidity by clear and convincing evidence, which I defined earlier.

You must decide the issue of validity separately for each patent claim that is at issue.

**"Person of ordinary skill"**

In the following instructions, I will use the phrase, a "person of ordinary skill in the field of the invention." In this case, the field of the invention is: 'assays of biological molecules.

It is up to you to decide the level of ordinary skill in that field. In making this decision, you should consider all the evidence, including:

- the levels of education and experience of persons working in the field of the invention;

- the types of problems encountered in the field of the invention; and

- the sophistication of the technology in the field of the invention.

**Invalidity - Written description**

The law requires that the specification section of the patent contain an adequate written description of the inventions set forth in the patent claims.

NanoString contends that claim 21 of the 219 patent; claim 10 of the 669 patent; claim 17 of the 566 patent; claim 2 of the 113 patent; claim 25 of the 878 patent; claim 17 of the 607 patent; and claim 5 of the 917 patent are invalid because the specification does not contain an adequate written description.

To succeed on this contention as to the particular patent claim you are considering, NanoString must prove that a person having ordinary skill in the field who read the patent specification as of the effective filing date would not have recognized that the inventor invented the full scope of the invention as defined by the patent claim.

To satisfy the written description requirement, it is unnecessary to spell out every detail of the invention, use the exact words found in the claim, or provide specific examples. But a mere wish or plan for obtaining the claimed invention is not an adequate written description.

In deciding whether NanoString has established that the specification did not provide an adequate written description, you may consider factors such as:

1.      the nature and scope of the patent claims;

2.      the complexity, predictability, and maturity of the technology at issue;

3.      the existing knowledge in the relevant field; and

4.      the scope and content of the prior art.

It is not improper to amend or insert patent claims intended to cover a competitor's product during patent prosecution.

**Damages – general**

If you find that NanoString infringed any valid claim of the 669, 566, 113, 219, 878, 607, and 917 patents, you must then determine the amount of damages to award to Plaintiffs.   If you do not find that NanoString infringed any valid claim of the 669, 566, 113, 219, 878, 607, and 917 patents, you should not consider the question of damages.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that NanoString infringed any valid claim of the patent, you are to award Plaintiffs damages adequate to compensate Plaintiffs for that infringement. The damages you award are intended to compensate the Plaintiffs, not to punish NanoString.

Plaintiffs must prove damages by a preponderance of the evidence.

**Date of commencement of damages**

In determining the amount of damages, you must determine when the damages began. In this case, damages, if any, began on May 6, 2021 for the '669, '566, '113, '219, '878, and '607 patents; and on April 5, 2022 for the '917 patent.

**Two types of damages**

There are two alternative types of damages that Plaintiffs may be entitled to recover for each infringing act: either lost profits or a reasonable royalty, but not both.

Lost profits consist of the additional profits that Plaintiff 10x would have made if there had been no infringement by NanoString. I will describe what Plaintiff 10x must prove to recover lost profits damages.

A reasonable royalty is defined as the amount the patent owner and someone wanting to use the patented invention would agree upon as a fee for use of the invention. I will describe what Plaintiffs must prove to recover reasonable royalty damages.

Plaintiffs are entitled to recover no less than a reasonable royalty for each infringing sale even if they cannot prove that they suffered lost profits in connection with that sale.

**Lost profits**

To recover lost profits, Plaintiffs must prove by a preponderance of the evidence that there was a reasonable probability that, but for NanoString's infringement, Plaintiff 10x would have made additional profits through the sales of all or some of the patented product or process that NanoString made. One way that Plaintiffs may establish that it is reasonably probable, that is, more likely than not, that it would have made additional sales of the patented product or process is by proving the following things:

1.      There was a demand for the patented product or process. "Demand" for the product is generally satisfied when Plaintiffs prove that there were significant sales of either Plaintiffs' patented product or of NanoString's infringing product.

2.      There was no acceptable, non-infringing substitute for the patented product or process.  An "acceptable, non-infringing substitute" is a product that does not infringe Plaintiffs' patent and has the advantages of the patented invention that were important to the purchasers of NanoString's product. If purchasers of NanoString's product were motivated to purchase that product because of features that were available only from that product and Plaintiffs' patented product, then other products are not acceptable substitutes, even if they otherwise competed with Plaintiffs' and NanoString's products.

3.      Plaintiffs were capable of satisfying the demand. To prove Plaintiffs were capable of "satisfying the demand" for the patented product, Plaintiffs here must prove that 10x had the manufacturing and marketing capacity, either itself or through the use of third parties, to make the sales it says were lost to NanoString.

4.      The amount of profit Plaintiff 10x would have made on those additional sales. If you conclude that Plaintiffs have proved that Plaintiff 10x lost profits because of

32

NanoString's infringement, the lost profits that you award should be the amount of revenue that Plaintiff 10x would have received on any sales that Plaintiff 10x lost because of the infringement, minus any additional costs that Plaintiff 10x would have incurred in making those sales. Plaintiffs are required to prove the amount of Plaintiff 10x's lost profits to a reasonable probability and may not recover amounts that are speculative. However, mathematical certainty is not required.

It is important for you to remember that lost profits damages are the profits lost by Plaintiffs due to the infringement by NanoString, not the profits made by NanoString.

**Reasonable royalty**

Plaintiffs seek to recover a reasonable royalty. Plaintiffs are entitled to recover a reasonable royalty for any of NanoString's infringing sales for which Plaintiffs did not prove lost profits.

A royalty is a payment made to the owner of a patent by another person or entity so that it can make; use; sell; offer for sale; or import the patented invention. A "reasonable royalty" is the amount Plaintiffs and NanoString would have agreed upon as a royalty at the time NanoString's infringement began.

In determining a reasonable royalty, you should assume that Plaintiffs would have been willing to allow NanoString to make; use; sell; offer for sale; or import the patented invention and that NanoString would have been willing to pay Plaintiffs to do so. You should take into account what Plaintiffs' and NanoString's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both Plaintiffs and NanoString would have believed that Plaintiffs' patent was valid and infringed. You should also assume that NanoString would have been willing to pay, and Plaintiffs would have been willing to accept, the reasonable royalty they negotiated. This is not an exact science. The evidence may support more than one reliable method for estimating a reasonable royalty. Your role is to determine what reasonable royalty Plaintiffs and NanoString would have agreed upon if they had negotiated in this manner, not just what either Plaintiffs or NanoString would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

1.      Royalties that others paid to Plaintiffs to be allowed to make; use; sell; offer for sale; or import the patented invention;

2.      Royalties that NanoString paid to others for comparable patents;

3.      Whether Plaintiffs had a policy of licensing or not licensing the patents;

4.      Whether Plaintiffs and NanoString are competitors;

5.      Whether use of the patented invention helps to make sales of other products or services;

6.      Whether the patented invention is commercially successful, as well as its profitability;

7.      The advantages of using the patented invention over products not covered by the patent;

8.      The extent of NanoString's use of the patented invention and the value of that use to NanoString;

9.      Any royalty amounts that are customary for similar or comparable patented inventions;

10.     The portion of the profit on sales that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by NanoString;

11.     Expert opinions regarding what would be a reasonable royalty.

**Damages – no double recovery**

The law does not permit double recovery for sales or profits relating to the same product. If a sale is the basis of one form of monetary recovery, that same sale cannot also be the basis of another form of monetary recovery. This means that if you award Plaintiffs their lost profits under patent infringement for the sale of a certain number of accused products, you may not also award a reasonable royalty for those same sales.

**Totaling the award of damages**

Any amounts that you award for lost profits and for reasonable royalties should be set out separately on the verdict form that I will give you.

**Deliberations by the jury**

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court. A form of verdict has been prepared for you.

[Read the verdict form.]

Take this form to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.

**Communication with the Court**

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

**Reaching a verdict**

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.