**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 21-cv-653-MFK |
| NANOSTRING TECHNOLOGIES, INC., | |
| Defendant. | |

**PLAINTIFFS 10X GENOMICS, INC. AND PROGNOSYS BIOSCIENCES, INC.'S BRIEF IN
SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)**

OF COUNSEL:

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000
10x_NSTG_Service@tensegritylawgroup.com

Samantha Jameson
Ronald J. Pabis
Kiley White
Joanna R. Schacter
TENSEGRITY LAW GROUP LLP
8260 Greensboro Dr.
Suite 260
McLean, VA 22102-3848
Tel: (650) 802-6000
10x_NSTG_Service@tensegritylawgroup.com

Dated: November 17, 2023

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................. 1

II.    LEGAL STANDARD...................................................................................................... 1

III.   NO INVALIDITY .......................................................................................................... 2

     A.    NanoString's Written Description Defense Is Incompatible with Claim
        Construction Law and the Law of the Case ......................................................... 3

     B.    NanoString's Decision Not To Contest That The Claims Are Enabled
        Negates NanoString's Argument That The Patents Are Insufficiently
        Described ............................................................................................................. 6

IV.    INFRINGEMENT........................................................................................................... 6

     A.    NanoString Offered No Evidence Under The Ordinary Meaning Of "Used"
        or "Using" ............................................................................................................ 7

     B.    NanoString Did Not Offer Any Evidence To Rebut Contributory
        Infringement...................................................................................................... 11

V.     CONCLUSION............................................................................................................. 11

i

# TABLE OF AUTHORITIES

**Cases**

*Chicago Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*,
  748 F.3d 1134 (Fed. Cir. 2014) .......................................................................... 5, 6

*Crown Packaging Tech., Inc. v. Ball Metal Bev. Container Corp.*,
  635 F.3d 1373 (Fed. Cir. 2011) .............................................................................. 7

*DealerTrack, Inc. v. Huber*,  674 F.3d 1315 (Fed. Cir. 2012) ...................................... 8

*Edwards Lifesci. AG v. CoreValve, Inc.*,
  2011 WL 446203  (D. Del. Feb. 7, 2011) .............................................................. 12

*Eshelman v. Agere Sys. Inc.*,  554 F.3d 426 (3d Cir. 2009) .......................................... 2

*Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371 (Fed. Cir. 2001) ....................... 3

*Liebel-Flarsheim Co. v. Medrad, Inc.*,  358 F.3d 898 (Fed. Cir. 2004)........................ 3

*Lightning Lube v. Witco Corp.*,
  4 F.3d 1153, 1166 (3d Cir. 1993) ........................................................................... 1

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
  No. 17-14-JFB-SRF, D.I. 1064 (D. Del. Aug. 15, 2019)......................................... 1

*Mobile Telecommc'ns Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*,
  No. 2:13-cv-947-JRGRSP, 2016 WL 454894 (E.D. Tex. Feb. 5, 2016) .................. 5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)........................ 3

*Walter v. Holiday Inns, Inc.*,  985 F.2d 1232 (3d Cir. 1993) ........................................ 1

## I.     INTRODUCTION

Plaintiffs 10x Genomics, Inc. and Prognosys Biosciences, Inc. hereby move for judgment as a matter of law on NanoString's invalidity defense and declaratory judgment counterclaims with respect to U.S. Patent No. 10,472,669; U.S. Patent No. 10,961,566; U.S. Patent No. 10,983,113; U.S. Patent No. 10,996,219; U.S. Patent No. 11,001,878; U.S. Patent No. 11,008,607; and U.S. Patent No. 11,293,917 (collectively, the "Asserted Patents"). Further, Plaintiffs move for judgment as a matter of law that NanoString directly infringed and contributed to infringement of the 669, 566, 113, 219, 878, and 607 Patents (the "Method Patents"). Based on the evidence presented at trial, no reasonable jury could have a legally sufficient evidentiary basis to find for NanoString on these issues.

## II.    LEGAL STANDARD

Judgment as a matter of law is appropriate after the moving party is fully heard and where the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party. Fed. R. Civ. P. 50(a)(1); *see Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 17-14-JFB-SRF, D.I. 1064 at 1-2 (D. Del. Aug. 15, 2019) (quoting *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). A judgment as a matter of law is properly "granted where the record is critically deficient of the minimum quantum of evidence necessary to support a jury verdict" for the nonmoving party. *Id.* (citing *Eshelman v. Agere Sys. Inc.*, 554 F.3d 426, 433 (3d Cir. 2009)) (internal quotation marks omitted).

## III.    NO INVALIDITY

NanoString's only remaining invalidity argument, written description, is its third attempt—after claim construction and summary judgment—to interpret the specification of the Asserted Patents as containing only a single embodiment, one requiring encoded probes delivered to tissue in a spatial pattern. D.I. 181; D.I. 238; Trial. Tr. Vol. 3 11/15/23 at 706:8–735:22 (Edwards). NanoString's trial showing is insufficient as a matter of law for three reasons. First, it is a basic principle of patent claiming that claims are not limited in scope to the embodiments in a specification, even where only one embodiment is disclosed. Second, NanoString limited its defense to relitigating an issue the Court has already decided as a matter of law. The Court had found, as a part of its purely legal function of claim construction, the presence in the specification of alternative embodiments and options beyond encoded probes in a spatial pattern and had construed terms accordingly. D.I. 207 (February 28, 2023 Memorandum Opinion and Order on claim construction). NanoString's expert focused on attempting to show that no such alternatives exist. Trial Tr. Vol. 3 11/15/23 at 689 (Edwards). NanoString failed to engage the actual issue of fact remaining after claim construction—whether the embodiments and principles identified in the specification as a matter of law by the Court, as a whole, would or would not be understood by those skilled in the art to evidence possession of each claim as a whole. *See* D.I. 282 at 8–10. Third, NanoString does not contest that the written description <u>enables</u> the full scope of the claims, and this inconsistency dooms NanoString's defense. No reasonable jury could conclude that NanoString carried its burden to prove that the Method Patents are invalid for lack of written description. *See Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371, 1380 (Fed. Cir. 2001) (establishing that, in light of a patent's presumed validity, even close indefiniteness challenges are properly resolved in favor of the patent holder).

2

## A.     NanoString's Written Description Defense Is Incompatible with Claim Construction Law and the Law of the Case

It is well established that claims are not limited to a preferred embodiment of the invention, even where only one embodiment is disclosed in the patent specification. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("[T]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment") (collecting cases); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) (finding no precedent to support limiting claims where only one embodiment is disclosed) (collecting cases). NanoString's contention that there is a "mismatch" between claims that were given their ordinary meaning and an allegedly single-embodiment specification is flawed as a matter of law. *See* Trial Tr. Vol. 3 11/15/23 at 706:13–15 (Edwards). That argument, if correct, would suggest that every such claim construction in a single-embodiment case should result in a finding of invalidity. This Court's February 28, 2023 Memorandum Opinion and Order on claim construction applied this law correctly in finding that the claims should not be limited to preferred embodiments. D.I. 207 at 5.[1]

NanoString directed its trial presentation to remaking the landscape of claim construction—attempting again to show that there is only a single embodiment. *See* Trial Tr. Vol. 3 11/15/23 at 706:17–22 (Edwards). Dr. Edwards's trial testimony that the written description requirement is not satisfied focused on his contention that the claims should be limited by the embodiments in the specification. *Id*. He pointed to the terms construed by the Court and described these terms as being "mismatch[ed]" to the specification because of "what the specification teaches

---

[1] The Court cited *Liebel-Flarsheim*, 358 F.3d 898 at 913
for the proposition that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."

us that Dr. Chee invented in these patents. And this involves encoded probes in spatial patterns . . . . [T]he claims are broader than that. The claims do not have these same limitations. There's a mismatch between the claims and what is described in the specification of these asserted patents." *Id*. at 707:16–23 (Edwards). When asked whether that is "the written description problem," Dr. Edwards answers: "Exactly." *Id*. at 707:24–708:1 (Edwards). Such a showing, even if meritorious, would not support a finding of invalidity by clear and convincing evidence.

Critically, the Court's *Markman* order foreclosed NanoString's attempt to interpret the intrinsic evidence as limited to a single embodiment. D.I. 207 at 5. Claim construction orders are law of the case including both the ultimate constructions and the reasoning underlying those constructions. *See Chicago Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*, 748 F.3d 1134, 1140 (Fed. Cir. 2014) ("[P]rior findings and the claim construction based thereon are the law of the case. They are not available for redetermination"); *Mobile Telecommc'ns Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 2:13-cv-947-JRGRSP, 2016 WL 454894, at *3 (E.D. Tex. Feb. 5, 2016) (limiting the scope of witness testimony at trial on the basis of claim construction).

The Court's ruling on Plaintiffs' First Motion *in Limine* confirmed that at claim construction the Court had found that the specification was *not* limited to a single embodiment. D.I. 282 at 5. The Court's MIL ruling reminded the parties that the Court had found the patents to be directed to delivery methods not requiring a spatial pattern, to oligonucleotide codes that are agnostic as to location, and to targeted removal in addition to *en masse* removal. *Id*. at 2–3. The Court noted that:

> [T]he Court ruled as it did because it rejected defendant's proposals to limit the scope of the claim language based on language cited from the specification(s). This rejection was integral to the Court's claim construction ruling. It was as much a part of the claim construction decision as the "plain meaning" determination itself.

*Id.* At 3. The Court stated that because "its rejection of defendant's arguments was part and parcel

4

of, and integral to, the Court's claim construction rulings . . . these points are not open to reexamination by the jury." *Id.* at 10. Having construed the intrinsic evidence, the Court permitted NanoString to pursue the only remaining issue of fact—whether the specification does or does not "disclose the claim requirements to one skilled in the art." *Id.* at 11–12. While the Court acknowledged that NanoString may possibly adduce testimony that was "in tension" with the Court's reasoning, the Court did not permit NanoString to meet its burden by attempting to nullify the Court's *Markman* ruling. *Id.* at 12.

At trial, NanoString did not present evidence on this issue of fact. NanoString made no showing that under the Court's interpretation of the specification, one of ordinary skill would still fail to recognize that Dr. Chee possessed the inventions in the asserted claims. *See* D.I. 282 at 9. Instead, NanoString re-argued the arguments that were expressly rejected at claim construction and at summary judgment about whether the specification had any teaching beyond encoded probes in spatial patterns. Trial. Tr. Vol. 3 11/15/23 at 706:8–735:22 (Edwards). Dr. Edwards spent the bulk of his direct examination walking through specification language that the Court had previously interpreted to support NanoString's old theory that "the specification describes one way, which is delivery of encoded probes in a spatial pattern." *Id.* at 734:6–9 (Edwards).

NanoString is bound by the Court's *Markman* order, including the reasoning integral to that order. *See Chicago Bd. Options Exch., Inc.*, 748 F.3d at 1140. A live issue of fact remained for the jury, but NanoString did not present it. D.I. 282 at 10. Judgment as a matter of law as to written description is appropriate for all seven patents. Under the Court's claim construction rulings, no reasonable jury could find that NanoString met its burden on the issue of fact.

**B.    NanoString's Decision Not to Contest that the Claims Are Enabled Negates NanoString's Argument that the Patents Are Insufficiently Described**

NanoString's written description defense hinges on whether one of skill in the art would understand the claims upon reading the specification. Trial. Tr. Vol. 3 11/15/23 at 704:25–705:7. But by failing to contest enablement, NanoString has conceded that one of ordinary skill in the art would understand the specification well enough to be able to make and use the full scope of the same claims. These are inconsistent positions. Written description and enablement "usually rise and fall together." *Crown Packaging Tech., Inc. v. Ball Metal Bev. Container Corp.*, 635 F.3d 1373, 1382 (Fed. Cir. 2011) (finding sufficient written description as a matter of law based in part on the fact that the defendant "never asserted an enablement challenge to the specification. . . ."). The patent claims are presumed enabled and NanoString has declined to challenge the facts at trial. NanoString did not present evidence to the jury to show that the full scope of the claims can be enabled while the same person of skill in the art would simultaneously have understood the inventor lacked possession of the invention claimed.

Judgment as a matter of law should be entered against NanoString on NanoString's written description defense.

## IV.    INFRINGEMENT

The evidence at trial conclusively demonstrated direct and indirect infringement of the six Method Patents. NanoString admitted that all but one claim limitation was practiced for each patent. Trial. Tr. Vol. 3 11/15/23 at 815:5–20 (Edwards). NanoString did not meaningfully dispute the *facts* about how its products work; NanoString instead contended that its workflows did not meet the claims based on a narrow interpretation of the words "using" or "used" in the claim. *Id*. at 754:22–755:5; 780:21–781:9 (Edwards). As the Federal Circuit has found in the related context of summary judgment, "[w]here… the parties do not dispute any relevant facts regarding the

6

accused product [and] disagree [only] over which of the two possible meanings of [the claim at issue] is the proper one, the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1320 (Fed. Cir. 2012). Additionally, NanoString did not dispute the facts supporting contributory infringement.

The only remaining dispute concerns the words "using" or "used" in relation to sequence information. For one set of claims the operative phrase is "<u>using</u> the determined sequence to determine the presence of the target biological molecule at the region of interest in the tissue sample." (219 Patent; *see also* 669, 878, and 113 Patents). In the other set the phrase is "one or more <u>nucleic acid tags</u> that can be <u>used</u> to determine a location of the target mRNA in the tissue sample" (607 Patent, *see also* 566 Patent). For both sets of claims there is no factual dispute that the relevant DNA sequences (the identifier oligonucleotides and i5/i7 index barcodes) are "used" to determine the presence of a target at a location. PTX-0801-0020 (Patent Application Publication No. US 2021/040399), 0058 (¶ 206). NanoString merely offered evidence that these sequences are used in conjunction with <u>additional</u> information to make these determinations. That issue is not a factual one, but turns on whether "used" means "used alone." Such a narrow interpretation of "used" and "using" is contrary to the ordinary meaning and NanoString never sought such an interpretation at any time in this case, including during the claim construction process.

A.    **NanoString Offered No Evidence Under the Ordinary Meaning of "Used" or "Using"**

There is no factual dispute that the GeoMx workflow uses the DNA sequences at issue to determine the presence of a target at a location. First, the identifier oligonucleotide sequence (the "Seq ID") that is cleaved and collected by GeoMx is used because it is the sole piece of information that can identify a target anywhere in the sample. Dr. Quackenbush testified that the probe has a

7

"target-specific region that binds a specific target, and it has an oligonucleotide with a sequence, the Seq ID." Trial Tr. Vol. 2 11/14/23 at 308:7–9 (Quackenbush). The identifier sequences are collected into wells and reagents are added for sequencing. Trial. Tr. Vol. 2 11/14/23 at 311:14–314:11 (Quackenbush); Trial. Tr. Vol. 3 11/15/23 at 816:5–14 (Edwards) (testifying that the oligonucleotide is collected from an area of illumination and primers with i-5 and i-7 indices are added). NanoString's expert conceded that GeoMx has a mapping for taking the sequences of the molecules that the Illumina sequencers are running and mapping them back to locations on the sample. Trial. Tr. Vol. 3 11/15/23 at 822:3–17 (Edwards). Dr. Hoang also described, unrebutted, that in the nCounter workflow the GeoMx system uses the "unique identifier" in conjunction with "recordkeeping" information to "pair where things are and where they came from." Hoang Depo. at 101–03.

Second, there is similarly no factual dispute about how the i5 and i7 index barcodes are used in the GeoMx NGS workflow. NanoString itself explained that the i5 and i7 barcodes are instrumental to track the location of each target in the sample. In NanoString's patent application (PTX-0801), which Dr. Hoang confirmed is the NGS readout portion of the GeoMx platform Trial Tr. Vol. 2 11/14/23 at 290:9 (playing Hoang Depo. at 19:4–8, 19:10–11), the i5 and i7 sequences are described as "nucleic acid sequence(s) which identif[y] the specific location of the sample from which the identifier oligonucleotide was released." PTX-0801-0020, 0058 (Fig. 19; ¶ 206). NanoString's patent application states that the sequencing libraries are "sequenced to identify the released oligonucleotide, thereby spatially detecting the at least one target analyte in the sample." *Id.* at PTX-0801-0058. Dr. Quackenbush explained at length how the i5 and i7 sequences are used to determine location in the GeoMx workflow. *See e.g.*, Trial Tr. Vol. 2 11/14/23 at 314:17–315:10; 318:19–24; 329:1–5 (Quackenbush).

8

NanoString's expert did not dispute that the i5 and i7 codes are used to map targets back to locations; instead he contended only that these codes are used in conjunction with <u>additional</u> mapping information. Dr. Edwards testified that the i5 and i7 codes identify "[t]he location of the sample which has already been removed." Trial. Tr. Vol. 3 11/15/23 at 820:15–25 (Edwards). He confirmed that there is a "mapping" between the sequences themselves read out by the sequencer and the regions of interest on the sample. *Id*. at 822:14–17. At most, NanoString's evidence would show that the i5/i7 sequences are used in a two-step process to determine location—each region of interest is assigned a well on a plate, and the i5/i7 codes are assigned to the region/well pairing. To determine which targets were observed at a region, the i5/i7 sequences are used to identify the well, which is then used to identify the region. Without the sequences, it would be impossible in the GeoMx workflow to determine where target sequences came from on the sample. *Id*. at 778:25–779:8 (testifying that without the i5 and i7 codes, oligonucleotides from different wells cannot be sequenced together).

NanoString's non-infringement argument effectively depends on a new construction of "using" that was not raised at claim construction. *See* D.I. 207. Under the plain and ordinary meaning of "using," the identifier sequence is used to determine the presence of a target at its location of the sample because it is sequenced together with other parts of the molecule (i.e., primers containing the i-5/i-7 indices) or Hyb Codes to provide identity and location information of the target. NanoString attempted to show that location information was generated and preserved during removal of oligonucleotides from the sample. Trial Tr. Vol. 3 11/15/2023 at 779:21–781:3 (Edwards). NanoString, however, treats "using" and "used" more restrictively to require "using only" by contending that additional information is also used. *Id*. at 827:3-6 ("There is a mapping.

You do the i5, i7. That tells you what well it came from. And then there's a mapping from that well to a region on the tissue."); *Id.* at 820:4–7.

NanoString's narrower interpretation of "using" directly contradicts the Court's claim construction ruling. The Court already found that "[a]ccording to the specification, the oligonucleotide sequence is **not the sole piece of information used to determine** the presence of targets at certain locations on the tissue, and the coding tags can be added both before collection or after collection." D.I. 207 at 18. NanoString now attempts to revive its failed claim construction argument that the patents "require the sequence to encode position" and inject it into a different term that was not construed ("used" or "using") and so must receive its ordinary meaning. Similarly, NanoString's argument that the claims somehow do not cover location information preserved in part during removal of oligonucleotides from the region of interest is also foreclosed by the *Markman* order D.I. 207 at 20. The Court rejected that the patents only cover "preserving location information as probes are introduced to the tissue—not as they are removed." *Id.* NanoString cannot now argue that removing the oligonucleotide to a well to preserve the location information and later using the label of the well (the i-5/i-7 indices) to map the well back to the ROI does not meet the claim limitation.

To the extent that NanoString's attempt to narrow the meaning of "using" / "used" was not affirmatively decided by the Court in the course of rejecting these arguments in the context of construing other claim terms, NanoString's new implicit claim construction argument is untimely and has been waived. *Edwards Lifesci. AG v. CoreValve, Inc*., 2011 WL 446203 at *3 (D. Del. Feb. 7, 2011) (rejecting a defendant's untimely attempt to reopen claim construction using a non-infringement argument).

**B.** **NanoString Did Not Offer Any Evidence to Rebut Contributory Infringement**

To establish contributory infringement, the evidence must show that NanoString knew of Plaintiffs' patent; NanoString sold a component that forms a significant part of the invention described in a claim in Plaintiffs' patent; the component was not a commonly available item or a product with substantial non- infringing uses; NanoString's customers infringed Plaintiffs' patent by using this component; and that NanoString knew the component was especially made or adapted for a use that would infringe Plaintiffs' patent. *See* Final Jury Instructions at 23. Dr. Quackenbush presented unrebutted testimony that NanoString's GeoMx products and components were especially made for the infringing workflows and that they have no other reasonable uses. Trial. Tr. Vol. 2 11/14/23 at 364–65 (Quackenbush). NanoString's expert did not challenge these facts. NanoString readily admitted to extensive use by customers of the accused workflows, as shown for example in published papers evidencing infringing use. PTX-0633 (NanoString publications graph). There is no dispute that NanoString has known of the Asserted Patents since at least the start of the litigation on May 6, 2021, and NanoString did not offer evidence at trial that its products were made for the use accused of infringement by Plaintiffs.

Because a reasonable jury could only find that NanoString contributed to infringement of the Method Patents, judgment as a matter of law is appropriate as to NanoString's contributory infringement.

**V.    CONCLUSION**

Plaintiffs 10x and Prognosys respectfully request that the Court grant judgment as a matter of law as to both infringement and validity.

Respectfully Submitted,
*Of Counsel:*

RICHARDS, LAYTON & FINGER, P.A.

TENSEGRITY LAW GROUP LLP
Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Samantha Jameson
Ronald J. Pabis
Kiley White
Joanna R. Schacter
8260 Greensboro Dr.
Suite 260
McLean, VA 22102-3848
Tel: (650) 802-6000

10x_NSTG_Service@tensegritylawgroup.com

Dated: November 17, 2023

*/s/ Jason J. Rawnsley*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for Plaintiffs*

12