## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC.,<br>*Plaintiffs*,<br><br>v.<br><br>BRUKER SPATIAL BIOLOGY, INC. AND BRUKER NANO, INC.,<br>*Defendants*. | C.A. No. 21-cv-653-MFK |

### PLAINTIFFS 10X GENOMICS, INC. AND PROGNOSYS BIOSCIENCES, INC.'S SUPPLEMENTAL POST-TRIAL BRIEF IN SUPPORT OF THEIR POST-TRIAL MOTION
### [D.I. 319]

| | |
|---|---|
| *Of Counsel*:<br><br>Matthew Powers<br>Paul Ehrlich<br>Stefani Smith<br>Robert Gerrity<br>Li Shen<br>TENSEGRITY LAW GROUP LLP<br>555 Twin Dolphin Drive<br>Suite 650<br>Redwood Shores, CA 94065<br>Tel: (650) 802-6000<br>10x_NSTG_Service@tensegritylawgroup.com<br><br>Samantha Jameson<br>Ronald J. Pabis<br>Kiley White<br>Joanna R. Schacter<br>TENSEGRITY LAW GROUP LLP<br>8260 Greensboro Dr.<br>Suite 260<br>McLean, VA 22102-3848<br>Tel: (650) 802-6000<br>10x_NSTG_Service@tensegritylawgroup.com<br><br>Dated: June 21, 2024 | Frederick L. Cottrell, III (#2555)<br>Jason J. Rawnsley (#5379)<br>Alexandra M. Ewing (#6407)<br>RICHARDS, LAYTON & FINGER, P.A.<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>rawnsley@rlf.com<br>ewing@rlf.com<br><br><br><br><br><br><br><br><br><br><br><br><br>*Attorneys for Plaintiffs* |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

A.   A Permanent Injunction Should Issue to Prevent Bruker's Infringement .......................... 2

B.   An Ongoing Royalty Should Apply to Any GeoMx Sales that Bruker Is Permitted to Make, and Bruker's Acquisition Further Supports Plaintiffs' Proposed Rates. ................ 3

C.   NanoString's Strategic Use of the Bankruptcy Stay and Bruker's Decision to Acquire and Continue to Operate the Infringing GeoMx Business Despite the Jury Verdict Support Enhancement and the Determination that This Is an Exceptional Case............... 4

i

# TABLE OF AUTHORITIES

**Cases**

*Applera Corp. v. MJ Rsch. Inc.*,
    372 F. Supp. 2d 233 (D. Conn. Mar. 30, 2005) ..................................................................... 4, 5

*Bos. Sci. Corp. v. Cordis Corp.*,
    838 F. Supp. 2d 259 (D. Del. 2012) ......................................................................................... 4

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) ............................................................................................... 1

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992) ................................................................................................. 5

For 217 days since the jury's verdict, NanoString (now Bruker) has done precisely what Plaintiffs warned of in their reply brief (D.I. 332, "Reply" at 1): NanoString leveraged the bankruptcy stay to delay entry of an order on Plaintiffs' motion for an injunction and used that time to extend the reach of its willful infringement, installing adjudicated infringing products that siphon profits from 10x at a rate of at least 61.2% per sale and seizing market share that Bruker intends never to give up. Bruker Corp. acquired NanoString's willfully infringing GeoMx business (and other assets and certain liabilities) for $392.6 million in cash. **Ex. 1** (Bruker 2024 Q1 10Q) at ECF page 16. Bruker did so with full knowledge of the jury's verdict of willful infringement and Plaintiffs' post-trial motion. *Id*. Neither NanoString nor Bruker took any remedial steps to redesign GeoMx or to otherwise curtail their infringement.

Instead, Bruker committed to expanding the willfully infringing GeoMx product lines:

> "We're very pleased with their gene expression … business. We think that has some **growth opportunities**. It has good margins, wonderful. But **the driver was spatial transcriptomics, so the GeoMx** and CosMx … product lines…. the bigger field is spatial transcriptomics, and we had no presence in that. So for us this a **huge opportunity**, and we seized it."

**Ex. 2** at 21 (Bruker 2024 Q1 earnings call discussing plans for NanoString business).

NanoString's intentional and strategic use of the bankruptcy stay to prolong its willful infringement together with Bruker's deliberate decision to purchase and continue to operate the infringing GeoMx business further confirm the appropriateness—even the necessity—to enhance the damages award under § 284 and to find this case exceptional and award fees under § 285 to deter such willful infringement in the future. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004) ("[P]atent infringement, like other civil wrongs, is disfavored, and intentional disregard of legal rights warrants deterrence.").

Following the Bruker acquisition, NanoString's previous argument against granting Plaintiffs' post-trial motions—that entry of an injunction, ongoing royalty, or enhanced damages

1

would amount to imposing "an unreviewable death sentence" (D.I. 327, "Opp." at 1)—also falls away. Bruker Corp. is a company with a $10 billion market capitalization and more than $2.9 billion in annual revenue last year. **Ex. 3** (Bruker 2023 10K) at ECF page 23; **Ex. 4.** Bruker has the resources to continue operating NanoString's non-infringing business, to pursue an appeal, to sell GeoMx consumables under the ongoing research carve-out proposed by Plaintiffs, to pay ongoing royalties, and to pay enhanced damages all without any stay of resolution of Plaintiff's post-trial motion or any waiver of posting a bond to stay a judgment pending appeal.

**A. A Permanent Injunction Should Issue to Prevent Bruker's Infringement**

Bruker's acquisition of NanoString and the increased financial resources that Bruker can now invest in the infringing GeoMx products and services only heighten the need for an injunction under the *eBay* factors. The jury's lost profits verdict and substantial evidence at trial establish that GeoMx competes directly with 10x's Visium products, forcing Plaintiffs to compete against their own patented invention, and leading to lost market share, lost first-mover opportunity in a nascent market, and tarnished goodwill and reputation. D.I. 320 ("Br.") at 3-5, 10; Reply at 2-4. In Bruker's press release announcing the acquisition, Bruker stated its intent to grow and "carry forward all the NanoString product lines" (including the infringing GeoMx products) and continued to publicly describe NanoString as a "spatial biology" "pioneer" despite the jury's finding that NanoString's purportedly "pioneering" spatial biology products willfully infringe Plaintiffs' patents. *See* **Ex. 5** at 1-2. These irreparable harms must stop now.

Bruker's greater resources also vitiate NanoString's primary arguments against an injunction. *See* Opp. at 6-15 (asserting that the balance of hardships and public interest weigh against an injunction because it would bankrupt NanoString, end its business entirely, and prevent NanoString from selling GeoMx products to existing customers for use in ongoing research even under Plaintiffs' proposed carve-out). NanoString's GeoMx product line and other

2

assets have emerged from bankruptcy with the multi-billion-dollar backing of Bruker. Both the balance of hardships and the public interest support granting an injunction here, particularly in view of Plaintiffs' proposed carve-out for ongoing research. Br. at 11-14; Reply at 4-6; D.I. 321-1 (Proposed Injunction Order); **Ex. 6** (Revised Proposed Injunction Order).

If Bruker argues now that spatial biology products introduced by the company "Curio" since the earlier post-trial briefing somehow impact the injunction or other post-trial motion analyses, they do not. Curio's products infringe Plaintiffs' same family of Prognosys patents. *See 10x Genomics, Inc. v. Curio Bioscience, Inc.*, No. 23-1375-MN (D. Del.), D.I. 1 (Complaint). Curio is already enjoined from selling its products in Germany, France, and Sweden under a UPC preliminary injunction based on infringement of another 10x patent. **Ex. 7**. Curio also admits that it has made few sales of its products. *See* Case No. 23-1375 D.I. 46 (Answer), ¶ 146.

**B. An Ongoing Royalty Should Apply to Any GeoMx Sales that Bruker Is Permitted to Make, and Bruker's Acquisition Further Supports Plaintiffs' Proposed Rates.**

If the Court determines that Bruker should be permitted to sell infringing GeoMx products or services despite the harms above, then Bruker should pay an ongoing royalty for such sales. Br. at 14-17. Bruker's acquisition of NanoString further supports Plaintiffs' proposed rates of at least 25% (and up to 61.2%) for consumables and 16% for instruments and services. *See id*. Bruker knew of the jury's verdict of willful infringement and of Plaintiffs' request for an ongoing royalty and enhanced damages, and Bruker still valued NanoString's business at more than $392.6 million—despite the $325 million in liabilities NanoString reported in its bankruptcy filing. D.I. 335-1 at ECF p. 6; **Ex. 1** at ECF p. 16. Contrary to NanoString's Opposition, Bruker thus does not view Plaintiffs' requested ongoing royalty rates and other post-trial relief as an unreasonable "death sentence" that would end NanoString's business. Opp. at 1, 16–17, 23.

In a hypothetical negotiation for an ongoing royalty, Bruker would know that the jury

3

awarded an effective royalty rate of 61.2% for GeoMx consumables based on lost profits. Br. at 14–16. That more than supports Plaintiffs' proposed consumables rate of at least 25%—it is strong evidence that Plaintiffs would accept no less than 61.2% for consumables. *See Bos. Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 275–76 (D. Del. 2012) (ordering a 32% ongoing royalty rate based on the effective rate of combining the jury's lost profits award and the 2.95% reasonable royalty rate, explaining "[t]he court declines to allow Cordis, an adjudicated willful infringer, to effectively owe less for its post-verdict infringement than the jury found for its pre-verdict infringement . . ."). As to instruments, Bruker would also know there is now an increased risk of a lost profits verdict post-trial based on 10x's Visium CytAssist, supporting an increase from the jury's reasonable royalty rate to at least the 16% rate Plaintiffs propose. Br. at 16–17.

### C. NanoString's Strategic Use of the Bankruptcy Stay and Bruker's Decision to Acquire and Continue to Operate the Infringing GeoMx Business Despite the Jury Verdict Support Enhancement and the Determination that This Is an Exceptional Case.

NanoString made clear in its bankruptcy filings that its decision to file for bankruptcy was primarily driven by the jury's finding of willful infringement, NanoString's concern that this Court would soon enter a permanent injunction against the infringing GeoMx products, and its desire to use the automatic stay to prolong its willful infringement throughout the bankruptcy and sale process. **Ex. 8,** ¶¶ 2, 4, 18; **Ex. 9**, ¶¶ 9, 37, 38. Tellingly, NanoString filed for bankruptcy on February 4, 2024, two business days after the completion of post-trial briefing in this case.

NanoString's intentional use of the bankruptcy stay to protect its ability to continue willfully infringing Plaintiffs' patents—thereby knowingly causing additional irreparable harm to 10x—supports enhancement and the award of attorneys' fees. *Applera Corp. v. MJ Rsch. Inc.*, 372 F. Supp. 2d 233 (D. Conn. Mar. 30, 2005), is analogous and instructive. In *Applera*, defendant MJ Research lost many of its defenses through summary judgment and other pre-trial motion practice (as NanoString did here) and then strategically filed for bankruptcy the day

4

before closing arguments were scheduled to postpone or disrupt a verdict and judgment of infringement. *Id.* at 240. The Bankruptcy Court permitted the trial to conclude, and the jury found MJ willfully infringed most of the asserted patents. *Id.* at 235, 237. MJ then continued its strategic use of the bankruptcy proceedings, delaying the plaintiff from seeking post-verdict injunctive relief against MJ's continuing willful infringement. *Id.* at 243–44. MJ was purchased out of bankruptcy for $31 million with its acquirer taking on a $50 million accrual for the litigation and $9 million in other liabilities. *Id.* at 240–241. The Court found that MJ's use of bankruptcy to prolong its willful infringement supported a doubling of the damages award and an exceptional case finding under at least *Read* factors 3 and 6. *Id.* at 240–44, 247–48. The *Applera* Court only stopped short of tripling the damages "to avoid endangering defendants' noninfringing business" given that the doubled damages award amounted to $35 million—more than MJ's acquirer paid to purchase it out of bankruptcy. *Id.* In this case, a trebling of the jury's verdict would still amount to only about one quarter of what Bruker paid to acquire NanoString.

NanoString's intentional extension of its willful infringement and Bruker's knowing decision to buy and commit its substantial resources to growing and operating a business already found to willfully infringe Plaintiffs' patents further support at least a doubling enhancement and an exceptional case finding under at minimum *Read* factors 2, 3, 4, 6, and 7. *See also* Br. at 17–23 (factors 2-6, 8-9 also support enhancement). *Read* factor 7 is particularly striking now— NanoString and Bruker used every tool at their disposal to expand their willful infringement instead of taking any remedial action. Tellingly, although Bruker knew of NanoString's rotten corporate culture related to Plaintiffs' patent rights (Br. at 18–20), Bruker has done nothing to clean up that culture. Dr. Beechem, NanoString's former CTO and a key player in its willful infringement (*id.*), is now a Bruker employee. **Ex. 10** (NanoString Form 8K) at ECF page 3.

5

Respectfully Submitted,

| *Of Counsel:* | RICHARDS, LAYTON & FINGER, P.A. |
|---|---|
| TENSEGRITY LAW GROUP LLP | */s/ Jason J. Rawnsley* |
| Matthew Powers | Frederick L. Cottrell, III (#2555) |
| Paul Ehrlich | Jason J. Rawnsley (#5379) |
| Stefani Smith | Alexandra M. Ewing (#6407) |
| Robert Gerrity | Richards, Layton & Finger, P.A. |
| Li Shen | 920 North King Street |
| 555 Twin Dolphin Drive | Wilmington, DE 19801 |
| Suite 650 | (302) 651-7700 |
| Redwood Shores, CA 94065 | cottrell@rlf.com |
| Tel: (650) 802-6000 | rawnsley@rlf.com |
| | ewing@rlf.com |

Samantha Jameson
Ronald J. Pabis                          *Attorneys for Plaintiffs*
Kiley White
Joanna R. Schacter
1676 International Drive
Suite 910
McLean, VA 22102-3848
Tel: (650) 802-6000

10x_NSTG_Service@tensegritylawgroup.com

Dated: June 21, 2024


Respectfully Submitted,

*Of Counsel:*                                    RICHARDS, LAYTON & FINGER, P.A.

TENSEGRITY LAW GROUP LLP            */s/ Jason J. Rawnsley*
Matthew Powers                                Frederick L. Cottrell, III (#2555)
Paul Ehrlich                                       Jason J. Rawnsley (#5379)
Stefani Smith                                     Alexandra M. Ewing (#6407)
Robert Gerrity                                   Richards, Layton & Finger, P.A.
Li Shen                                              920 North King Street
555 Twin Dolphin Drive                    Wilmington, DE 19801
Suite 650                                           (302) 651-7700
Redwood Shores, CA 94065             cottrell@rlf.com
Tel: (650) 802-6000                           rawnsley@rlf.com
                                                         ewing@rlf.com

Samantha Jameson
Ronald J. Pabis                                  *Attorneys for Plaintiffs*
Kiley White
Joanna R. Schacter
1676 International Drive
Suite 910
McLean, VA 22102-3848
Tel: (650) 802-6000

10x_NSTG_Service@tensegritylawgroup.com

Dated: June 21, 2024