**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., | |
| *Plaintiffs*, | |
| v. | C.A. No. 21-cv-653-MFK |
| BRUKER SPATIAL BIOLOGY, INC. AND BRUKER NANO, INC., | |
| *Defendants*. | |

**DEFENDANT BRUKER SPATIAL BIOLOGY, INC. AND BRUKER NANO, INC.'S
OPPOSITION TO 10X, PROGNOSYS, AND HARVARD'S
SUPPLEMENTAL POST-TRIAL BRIEF**

OF COUNSEL:

Edward R. Reines
Derek C. Walter
Concord Cheung
Karnik F. Hajjar
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Tel: (650) 802-3000
Fax: (650) 802-3100
edward.reines@weil.com
derek.walter@weil.com
concord.cheung@weil.com
karnik.hajjar@weil.com

Christopher Pepe
Amanda Branch
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: (202) 682-7000
Fax: (202) 857-0940
christopher.pepe@weil.com
amanda.branch@weil.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Yi Zhang
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
yi.zhang@weil.com

Courtland L. Reichman
Savannah H. Carnes
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA  9406
Tel: (650) 623-1401
Fax: (650) 623-1449
creichman@reichmanjorgensen.com
scarnes@reichmanjorgensen.com

Sarah Jorgensen
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Tel: (202) 894-7310
sjorgensen@reichmanjorgensen.com

Christine E. Lehman
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K St., NW
Washington, DC  2006
Tel: (202) 894.7310
clehman@reichmanjorgensen.com

*Attorneys for Defendants Bruker Spatial*
*Biology, Inc. and Bruker Nano, Inc.*

June 28, 2024

## TABLE OF CONTENTS

**Page**

I.     SUPPLEMENTAL SUBMISSION ........................................................................1

    A.    Events Since The NanoString Bankruptcy Filing Highlight Why Plaintiff's Request For Enhanced Damages And An Injunction Should Be Rejected ..........................................................................................1

    B.    Plaintiffs Consented To The Bruker Purchase And Voluntarily Abandoned Their Challenge To The Bankruptcy Stay So Their Complaints About It Now Are Illogical...............................................2

II.    CONCLUSION.............................................................................................4

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applera Corp. v. MJ Rsch. Inc.*,
    372 F. Supp. 2d 233 (D. Conn. Mar. 30, 2005)................................................................ 4

*Cuffee v. Atl. Bus. & Cmty. Dev. Corp.* (*In re Atl. Bus. & Cmty. Dev. Corp.*),
    901 F.2d 325, 327 (3d Cir. 1990) ................................................................................... 2

In *re Linear Elec. Co.*,
    852 F.3d 313, 323 (3d Cir. 2017) ................................................................................... 2

*In re NanoString Technologies, Inc. et al.*,
    No. 24-10160 (CTG) (Bankr. D. Del. Feb. 22, 2024) ................................................. 3, 4

*In re Univ. Med. Ctr.*,
    973 F.2d 1065 (3d Cir. 1992) ......................................................................................... 2

*Maritime Elec. Co. v. United Jersey Bank*,
    959 F.2d 1194, 1204 (3d Cir. 1991) ............................................................................... 2

*Raymark Indus., Inc. v. Lai*,
    973 F.2d 1125, 1130 (3d Cir. 1992) ............................................................................... 2

I.    **SUPPLEMENTAL SUBMISSION**

A.    **Events Since The NanoString Bankruptcy Filing Highlight Why Plaintiff's Request For Enhanced Damages And An Injunction Should Be Rejected**

Plaintiffs' request for an injunction and enhanced damages should be rejected.

Although Plaintiffs demanded the opportunity to submit updated information in support of their request for a permanent injunction, they do nothing to contest the power of the extraordinary 22 declarations and letters from leading scientists submitted by NanoString.  These submissions establish that the extreme remedy of removing GeoMx from the market would cause profound harm to competition and the public interest.  Plaintiffs do not even suggest that anything has happened since February to soften the clear threat to science and the public health posed by a GeoMx injunction.

Although they belabor far less salient issues, Plaintiffs do not argue against the logic of awaiting resolution of an appeal before entering an injunction that promises to impede the development of the dawning spatial field.  Indeed, Plaintiffs do not argue that there haves been legal developments that would soften NanoString's potent appeal position that the patents' claims cannot validly cover spatial removal methods because the patents expressly limit the invention to spatial delivery.  *See* D.I. 318 at 12-14.

The events of the last few months have proven that 10x, as the dominant player in the spatial field, has used aggressive, costly litigation against several smaller companies to seriously strangle competition.  To wit, since the NanoString bankruptcy filing, Bruker has now prevailed in its appeal of 10x's European UPC and German injunctions.  *See* Order of the Court of Appeal of the Unified Patent Court Issued on 2/26/2024 in the Proceedings for Interim Measures Relating to EP4108782, Reference Number UPC_CoA_335/2023.  But devastating worldwide harm to the progress of important research in this area has been done and continues by 10x.  The 22

1

declarations and letters document the unique capabilities of GeoMx that are at risk. The wrongful European injunctions, the GeoMx verdict that Bruker believes is legally flawed, and the pending CosMx litigation, which is fueled by 10x and Harvard's anti-trust violations, have caused significant damage by, among other things, impacting sales of Bruker's spatial products, including GeoMx. Plaintiffs have no evidence for their bombastic suggestion that accused sales have increased since the NanoString bankruptcy filing—they have not.

10x's systematic suppression of competition and weaponization of NanoString's weakness in bankruptcy has already been effective at achieving 10x's goals and harming research efforts across the world. The requested relief is unwarranted.

## B. Plaintiffs Consented To The Bruker Purchase And Voluntarily Abandoned Their Challenge To The Bankruptcy Stay So Their Complaints Now Are Ill-Conceived

Plaintiffs argue that NanoString's chapter 11 filing and the resulting automatic stay is culpable conduct that justify an injunction or enhanced damages against Bruker. This is an unwarranted attack on the very foundation of bankruptcy law.

As explained by the Third Circuit, the "automatic stay is one of the fundamental debtor protections supplied by the Bankruptcy Code." *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1074 (3d Cir. 1992) (citing *Cuffee v. Atl. Bus. & Cmty. Dev. Corp.* (*In re Atl. Bus. & Cmty. Dev. Corp.*), 901 F.2d 325, 327 (3d Cir. 1990)). One of the primary benefits of the automatic stay is that it offers debtors a "breathing spell" free from lawsuits and other collection activities to reorganize its affairs. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *In re Linear Elec. Co.*, 852 F.3d 313, 323 (3d Cir. 2017) ("The purpose of the automatic stay is to give breathing room for the development of . . . a plan."); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1130 (3d Cir. 1992) ("[T]he purpose of the stay is to give the debtor a breathing spell . . . and it

2

permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.") (internal citation omitted).

Here, NanoString properly utilized the chapter 11 process to address not only liquidity pressure created by unfavorable case developments in Europe and the US, but also because the company was not generating revenue sufficient to meet long-term liquidity needs, including as a result of 10x and Harvard's anti-competitive conduct, as more fully set forth in the *Declaration of R. Bradley Gray in Support of Chapter 11 Petitions and First Day Pleading*. *See In re NanoString Technologies, Inc. et al.*, No. 24-10160 (CTG) (D.I. 26).

If Plaintiffs had believed that the bankruptcy process was being misused or would cause irreparable harm, they could have sought to dismiss NanoString's filing or, alternatively, to lift the automatic stay.  In fact, they did neither.  While Plaintiffs *initially* sought to lift the stay,[1] they withdrew their motion voluntarily once it was announced that Bruker would purchase NanoString's assets and accept the Assumed Liabilities.  Indeed, notwithstanding Plaintiffs' current attack on the chapter 11 process before this Court, Plaintiffs participated in NanoString's chapter 11 process, including the § 363 sale process overseen by the Bankruptcy Court.[2]  Plaintiffs sought and received from the Debtors adequate assurance to ensure Plaintiffs that Bruker had the ability to satisfy the Assumed Liabilities (as defined in the Sale Order) and negotiated mutually-satisfactory language in the Sale Order to resolve Plaintiffs' issues with the sale.[3]  *See In re*

---

[1] *See In re NanoString Technologies, Inc. et al.*, No. 24-10160 (CTG) (Bankr. D. Del. Feb. 22, 2024) (Motion of 10X Genomics, Inc. for Entry of an Order (I) Modifying the Automatic Stay with Respect to the 653 Action and the IPR Proceedings and (II) Granting Related Relief) (D.I. 127) (the "**10x Lift Stay Motion**").

[2] *See In re NanoString Technologies, Inc.* et al., No. 24-10160 (CTG) (Bankr. D. Del. Apr. 18, 2024) (Withdrawal of Preliminary Objection of 10X Genomics, Inc. to the Debtors' Sale Motion) (D.I. 466) (the "**10x Sale Objection Withdrawal Motion**").

[3] *See In re NanoString Technologies, Inc. et al.*, No. 24-10160 (CTG) (Bankr. D. Del. Apr. 19, 2024) (Order (A) Approving Asset Purchase Agreement, (B) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief ) (the "**Sale Order**") (D.I. 470).

*NanoString Technologies, Inc. et al*., No. 24-10160 (CTG) (D.I. 466) [10x Sale Objection Withdrawal Motion].

      To support their argument, Plaintiffs rely heavily but futilely on *Applera Corp. v. MJ Rsch. Inc*., 372 F. Supp. 2d 233 (D. Conn. Mar. 30, 2005). There, *Applera* waited until the day of closing arguments in a trial that was going poorly to file for bankruptcy. In granting relief, the *Applera* court relied on the important fact that the patentee did not complain to the district court, but instead went to the bankruptcy court immediately. 372 F. Supp. 2d at 240. In the bankruptcy court, the patentee successfully explained that Applera's Chapter 11 filing was manipulatively timed and unjustified such that the bankruptcy judge "granted Applera's motion for relief from the automatic stay, stating, 'I have a difficult time believing that the potential for reorganization was discussed for the first time within the last forty-eight hours.'" 372 F. Supp. 2d at 240. Given the patentee had gone to the bankruptcy court, the district court found that the disruptive timing of the chapter 11 filing was "a cynical effort to delay the trial and the jury's return of its verdict."

      *Applera* illustrates what a responsible litigant that objects to bankruptcy events should do if they face a truly abusive situation. But none of the facts or findings in *Applera* is present here. The NanoString Bankruptcy Court did not grant—or even hear—the 10x Lift Stay Motion. Instead, Plaintiffs agreed to the bankruptcy outcome. NanoString conducted a successful sale process, confirmed a chapter 11 plan, and emerged from chapter 11.

      This case features an appropriate, sensible, and successful use of the chapter 11 reorganization process. It is nonsensical that the mere existence of a perfectly legal and proper chapter 11 process—approved of by Plaintiffs—would warrant the extraordinary relief Plaintiffs seek.

## II.   CONCLUSION

      For the foregoing reasons, Plaintiffs' request for relief should be denied.

Dated: June 28, 2024

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Concord Cheung (admitted *pro hac vice*)
Karnik F. Hajjar (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Tel: (650) 802-3000
Fax: (650) 802-3100
edward.reines@weil.com
derek.walter@weil.com
concord.cheung@weil.com
karnik.hajjar@weil.com

Christopher Pepe (admitted *pro hac vice*)
Amanda Branch (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: (202) 682-7000
Fax: (202) 857-0940
christopher.pepe@ weil.com
amanda.branch@weil.com

Yi Zhang (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
yi.zhang@ weil.com

Courtland L. Reichman (admitted *pro hac vice*)

5

Savannah H. Carnes (admitted *pro hac vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA  9406
Tel: (650) 623-1401
Fax: (650) 623-1449
creichman@reichmanjorgensen.com
scarnes@reichmanjorgensen.com

Sarah Jorgensen (admitted *pro hac vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Tel: (202) 894-7310
sjorgensen@reichmanjorgensen.com

Christine E. Lehman (admitted *pro hac vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K St., NW
Washington, DC  2006
Tel: (202) 894.7310
clehman@reichmanjorgensen.com

*Attorneys for Defendants Bruker Spatial
Biology, Inc. and Bruker Nano, Inc.*