# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., *Plaintiffs*, <br><br> v. <br><br> BRUKER SPATIAL BIOLOGY, INC., BRUKER NANO, INC., and BRUKER CORP., *Defendants*. | C.A. No. 21-cv-653-MFK |

## PLAINTIFFS 10X GENOMICS, INC. AND PROGNOSYS BIOSCIENCES, INC.'S OPPOSITION TO MOTION TO STAY PERMANENT INJUNCTION PENDING APPEAL

OF COUNSEL:

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000
10x_NSTG_Service@tensegritylawgroup.com

Azra M. Hadzimehmedovic
Aaron M. Nathan
Samantha Jameson
Ronald J. Pabis
Kiley White
Joanna R. Schacter
TENSEGRITY LAW GROUP LLP
1676 International Drive
Suite 910
McLean, VA 22102-3848
Tel: (650) 802-6000
10x_NSTG_Service@tensegritylawgroup.com

Dated: February 7, 2025

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ................................................................................................... 3

    A.    Bruker Cannot Demonstrate Any Likelihood of Success on Appeal .................... 3

    B.    Bruker Has Not Shown It Will Be Harmed Without a Stay, Let Alone Irreparably Harmed ........................................................................................ 6

    C.    The Public Interest Does Not Support Staying the Injunction ............................. 8

    1.    The Public Interest in Research and Patient Care Is Already Addressed in 10x's Proposed Injunction ..................................................................... 8

    2.    Bruker's Speculation About New Research Projects and Global Health Events Cannot Support Staying the Injunction .................................................... 10

    3.    Bruker Has Failed to Show That 10x Products Cannot Meet Future Research Needs .................................................................................................. 11

    D.    The Balance of Equities Supports Enforcing the Injunction ............................. 14

III.  CONCLUSION ............................................................................................... 16

i

# TABLE OF AUTHORITIES

**Cases**

*BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP*,
No. 24-10140 (JTD), 2024 WL 3487793 (D. Del. July 18, 2024) ........................................... 3

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ........................................................................................... 17

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
659 F. Supp. 92 (D. Del. 1987) ............................................................................................. 8

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
279 F. Supp. 2d 526 (D. Del. 2003) ..................................................................................... 7

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012) ................................................................................................... 3

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
No. 21-cv-691-GBW, D.I. 710 (D. Del. Sept. 24, 2024) ...................................................... 11

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
No. 21-cv-691-GBW, 2022 WL 17735952 (D. Del. Dec. 5, 2022) ......................................... 4

*Michigan v. U.S. Army Core of Engineers*,
667 F.3d 765 (7th Cir. 2011) ............................................................................................... 8

*Nken v. Holder*,
556 U.S. 418 (2009) .......................................................................................................... 3, 7

*Revel AC, Inc. v. IDEA Boardwalk LLC*,
802 F.3d 558 (3d Cir. 2015) ................................................................................................. 8

*United States v. Cianfrani*,
573 F.2d 835 (3d Cir. 1978) ................................................................................................. 3

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) .............................................................................................. 8

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................................................. 8

*Wonderland Switzerland AG v. Evenflo Co., Inc.*,
No. 20-cv-00727-JPM, 2023 WL 5569724 (D. Del. June 23, 2023) ....................................... 5

**Rules**

42 C.F.R. § 493.63 (2025) ................................................................................................... 13

Fed. R. Civ. P. 62 ........................................................................................................................... 3

## I.     INTRODUCTION

More than a year has passed since a jury found NanoString (now Bruker) to be a willful infringer of 10x's patents. In that time, Bruker has not redesigned its products to avoid infringement or curtailed its marketing and sale of infringing products. Instead, Bruker has doubled down, attempting to recapture market share on the back of 10x's patented technology. Incredibly, Bruker now seeks to expand its infringing beachhead for another year by delaying the injunction and making the kinds of sales the Court has already found to irreparably harm 10x. Enough is enough: under the legal standards that govern infringers whose business is based on use of a competitor's own patented technology, it is time for Bruker's infringing conduct to be enjoined without further delay.

Bruker's motion for stay of injunction pending appeal raises no basis for a stay that has not already been addressed by this Court in its order granting injunction or by 10x's proposed form of injunction. Bruker devotes little attention to the most important factor—the likelihood of success of its appeal—stating broadly that an appeal "raises multiple complex and substantial appellate questions that could result in the reversal or vacatur of the injunction" and relying on average reversal rates showing that it has a mere one-in-three chance of success. Bruker Br. at 13. Bruker identifies only its now-familiar complaints about claim construction, the purported absence of willful infringement, and Bruker's claim that monetary damages adequately compensate 10x. These are all arguments that the Court has already rejected, some repeatedly. *See* D.I. 370 (Order re: JMOL) at 23 (claim construction); 25–26 (willful infringement) 35 (adequacy of money damages). They should fare no better here or on appeal.

Nor has Bruker shown that the public interest favors a stay at all, much less "overwhelmingly," as Bruker contends. Bruker Br. at 3. Bruker devotes most of its brief to telling the Court that an injunction would disrupt both patient care and necessary life-saving research—a

1

situation that would worsen during a global public health crisis. Bruker Br. at 3–10. But even accepting Bruker's representations concerning the importance of GeoMx for patient care and research, and even if the avian flu or some other public health issue develops into a global crisis, 10x's proposed injunction *already permits that patient care and research to continue*. As 10x explained in its injunction briefing and at the hearing regarding that issue, the injunction's carveout provisions permit existing customers to continue their on-going research, whether for pure research purposes or for the scattered identified cases where Bruker asserts that GeoMx is being used for patient care. Bruker attempts to explain how these carveouts still do not address all possible ways in which researchers might wish to use its products, but this speculation demonstrates only that it will accept no injunction at all as a consequence of its infringement. Bruker's intransigence provides no basis to stay an injunction: the injunction's carveout addresses the known research and patient care needs of existing Bruker customers.

The other factors similarly weigh against a stay. Bruker contends that enforcing the injunction would irreparably harm Bruker by causing it to lose "key customer relationships, valuable scientific collaborations, and market presence" (Bruker Br. at 12), but as the Court has already found, those are the expected consequences for a company that has built a business by willfully infringing its competitor's patents. *See* D.I. 370 at 36. The possibility that Bruker's business and reputation will suffer because it can no longer infringe with impunity is not a reason to stay an injunction. Nor does balancing the equities favor a stay pending appeal. While Bruker contends that "the public interest of saving lives and developing new medical treatments dwarfs 10x's harm" (Bruker Br. at 10-11), this both ignores the carveout provisions of the injunction and misjudges the irreparable harm to 10x from being forced to compete with its own patented technology.

2

Because Bruker cannot show that any of the relevant factors favor a stay, the Court should decline to stay the injunction pending appeal.

## II.     ARGUMENT

Pursuant to Fed. R. Civ. P. 62(d), "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  As Bruker contends, that decision is guided by the *Nken* factors, although Bruker omits their actual text, such as the requirement of a "strong" showing of likelihood of success on the merits of the appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 434 (2009). Bruker similarly omits *Nken's* guidance that likelihood of success on appeal and harm to Bruker are "the most critical" factors. *Id.* "A stay pending appeal is an 'extraordinary remedy.'" *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP*, No. 24-10140 (JTD), 2024 WL 3487793, at *6 (D. Del. July 18, 2024) (quoting *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (itself quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978))). Bruker has failed to carry its burden to show a stay is warranted under ***any*** of the relevant factors.

### A.     Bruker Cannot Demonstrate Any Likelihood of Success on Appeal

For this "critical" factor, which Bruker addresses last and in summary form, Bruker has come forward only with arguments this Court has already rejected, in some cases repeatedly. Bruker's motion provides no basis for the Court to find these rejected arguments persuasive now.

***Claim construction.*** Once again, Bruker contends that "the claims should not have been construed to encompass 'targeted removal' methods when the specification exclusively describes 'spatial delivery' methods." Bruker Br. at 13-14. This contention was wrong during claim

3

construction, wrong at summary judgment, and wrong in post-trial briefing, and the Court properly rejected it each time. *See* D.I. 370 at 23. As the Court explained in its ruling on post-trial briefing: "The Court has considered NanoString's position throughout this litigation and ***has explained numerous times that the patents do not limit the invention to delivery of probes in a spatial matter on a tissue***. The Court adopts its earlier orders on this point; no further reconsideration is called for." *Id.* The Court should not credit Bruker's renewed contention in considering a stay.[1] *See Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, No. 21-cv-691-GBW, 2022 WL 17735952, at *1 (D. Del. Dec. 5, 2022) ("This Court has already considered and rejected [appellant]'s arguments . . . Accordingly, [appellant] has not made a strong showing that it is likely to succeed on the merits."); *Wonderland Switzerland AG v. Evenflo Co., Inc.*, No. 20-cv-00727-JPM, 2023 WL 5569724, at *4 (D. Del. June 23, 2023) ("[Appellant] is not likely to successfully overturn the jury's finding of infringement, and its arguments to the contrary are not convincing . . . Some of [Appellant's] arguments have been considered and rejected more than once").

***Willfulness***. Bruker contends that the evidence before the jury did not support a finding of willfulness, which if vacated on appeal would "require vacating the injunction." Bruker Br. at 15. Once again, the Court has already heard and rejected Bruker's complaint. As the Court found in its post-trial ruling, "10x presented witness testimony and exhibits that showed by a preponderance of the evidence that NanoString knew of or was willfully blind to its infringement and nonetheless continued to infringe." D.I. 370 at 26. This included evidence that "NanoString's Chief Scientific

---

[1] In a footnote, Bruker argues that the "statistical reality of patent appeals" shows that it has a reasonable probability of prevailing on appeal. Bruker Br. at 13, n. 5. This proves too much: if appellate statistics from different cases, with different facts, were sufficient to stay an injunction, then no injunction would take effect. More fundamentally, for the reasons discussed herein, Bruker's stated grounds for appeal are weak, and so predictions based on results across all appeals (both meritless and meritorious) are not predictive of its likely success.

Officer was aware of Dr. Chee's spatial work but did not search or instruct anyone to search for Dr. Chee's patents despite conceding that a patent search is routine practice" and that in "2019, NanoString's Chief Executive Officer instructed his team to mine 10x's S-1 securities filings for competitive intelligence but did not instruct them to investigate Dr. Chee's patents, notwithstanding acknowledging that Visium was a competing product." *Id.* at 39. Bruker's brief nowhere explains why its acts demonstrating willful blindness to 10x's patents is insufficient for the jury to have found willful infringement. Finally, Bruker cites no authority for the proposition that if the jury's willful infringement finding is vacated, then the Court's injunction must be vacated too. Bruker Br. at 14-15. 10x is aware of no requirement of willful infringement as a prerequisite to the issuance of a permanent injunction, and the Court's grant of an injunction was predicated on a thorough analysis and balancing of the evidence before it – not merely the jury's finding of willful infringement. D.I. 370 at 32-38.

***Adequacy of Money Damages.*** Bruker contends that it will show on appeal that an injunction was "unnecessary" because Bruker has acquired NanoString and has "billions in revenue," demonstrating that damages are an adequate remedy for its infringement. Bruker Br. at 15. Bruker misses the point. While the Court noted NanoString's precarious financial position as one basis for its finding that money damages were inadequate, the Court further found money damages inadequate because NanoString "captured part of the market that 10x created with its patented technology" – a form of competitive harm that cannot be compensated adequately by monetary damages alone. D.I. 370 at 35. As the Court explained, an "increase in the infringer's market share while infringing on the patentee's products 'underscores the profitability of infringement and suggests that mere damages will not compensate for a competitor's increasing share of the market.'" *Id.* This, the Court found, "strongly indicates that remedies at law are

5

insufficient." *Id.* Bruker's brief does nothing to disturb that finding. Bruker's relative financial might only heightens the risk of irreparable harm as Bruker ramps up its efforts to take market share. Nor does Bruker address the Court's finding that Bruker's ongoing infringement causes reputational harm to 10x. As the Court found in granting the injunction: "Having been careful not to license its technology, 10x suffers when it proclaims itself as an innovator in spatial genomics but a competitor is using the same innovative, patented technology." D.I. 370 at 34.

**B.    Bruker Has Not Shown It Will Be Harmed Without a Stay, Let Alone Irreparably Harmed**

For this next "critical" factor in the stay analysis, *Nken,* 556 U.S. at 434, Bruker contends that enforcing the injunction would irreparably harm it by "destabiliz[ing] Bruker's standing in the spatial genomics market with lasting consequences," by causing it to lose "key customer relationships, valuable scientific collaborations, and market presence." Bruker Br. at 12. None of this is supported by evidence: for example, Bruker has provided no declaration from any executive, customer, or expert witness demonstrating that these things will occur. Any reputational harm to Bruker is Bruker's own doing and has already happened—Bruker voluntarily acquired an infringing business with everyone fully aware that the Court could enjoin that business at any point after the deal closed. By contrast, the Court has found that it is *10x* that is irreparably harmed by Bruker's continuing infringement in terms of "its perception in the marketplace by customers, dealers, and distributors." D.I. 370 at 34.

More fundamentally, the speculation by Bruker's attorneys that Bruker's business will suffer if it can no longer infringe is "insufficient to warrant a stay of an otherwise appropriate injunction." *Fisher-Price, Inc. v. Safety 1st, Inc.,* 279 F. Supp. 2d 526, 529 (D. Del. 2003). As the Court has already found in granting the injunction, "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing

infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). *See also E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F. Supp. 92, 94 (D. Del. 1987) ("the loss of customers or business built upon the sale and use of infringing products does not amount, in the context of a patent infringement suit, to irreparable harm from which [the defendant] should be shielded"). Bruker has not and cannot establish that its speculative harms are likely to occur. *Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 569 (3d Cir. 2015) ("On the second factor, the applicant must 'demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay].' While a reference to 'likelihood' of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of 'likely' to mean more apt to occur than not.") (alteration in original, quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) and citing *Michigan v. U.S. Army Core of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011)).

Finally, in practically the same breath as its assertion that the injunction would "cast a long shadow over Bruker's entire business," Bruker Br. at 13, Bruker avers that GeoMx is a "sunsetting product" with limited demand beyond high-plex protein analysis. Bruker Br. at 11. The potential loss to Bruker of "market presence" is hard to credit when by Bruker's estimation the GeoMx instrument business constitutes only 0.2% of Bruker's revenue. **Ex. 1** [Bruker 12/24/2024 Press Release][2] ("GeoMx instrument revenue represent less than 0.2% of Bruker's total revenue."). This admission calls into serious doubt Bruker's account of irreparable harm to its business if there is no stay.

---

[2] Available at: https://ir.bruker.com/press-releases/press-release-details/2024/Bruker-Comments-on-Delaware-District-Courts-Post-Trial-Ruling-in-Case-Involving-GeoMx-Digital-Spatial-Profiler-Products/default.aspx.

### C.      The Public Interest Does Not Support Staying the Injunction

Bruker devotes most of its brief to contending that any injunction against its continued infringement (whether in the form proposed by 10x, or by Bruker) would be contrary to the public interest. Bruker has failed to meet its burden on this factor as well, because the specific ongoing research and patient care projects of which Bruker complains are already permitted under the injunction proposed by 10x. Bruker's further speculation about possible future projects, or global health care crises, does not support its demand to continue its willful infringement. Nor has Bruker shown that any such future research could not be designed and carried out on 10x's own products.

### 1.      The Public Interest in Research and Patient Care Is Already Addressed in 10x's Proposed Injunction

Bruker contends that enforcing the injunction would cost lives by interfering with, or ending, patient care and necessary life-saving research – activities that would take on even greater importance during a global public health crisis. Bruker Br. at 3-10. But 10x has no desire to inhibit life-saving research: that is why the company exists. 10x's core mission is to "advance human health" by delivering "powerful, reliable tools that fuel scientific discoveries and drive exponential progress to master biology" toward that very end. *See* https://www.10xgenomics.com/company. That is the reason 10x has invested hundreds of millions of dollars in research and development of its pioneering products, and why 10x has sought to protect that investment through the patent laws. And that is the reason 10x's proposed form of injunction ***already permits*** the in-progress patient care and research work Bruker identifies in its brief. Staying the injunction would have no impact on that work, and enforcing the injunction would not harm the public interest.

As 10x explained in its injunction briefing, its proposed form of injunction includes carveouts that exempt from injunction the sale by Bruker of consumables to its installed base of GeoMx customers for the purposes of conducting ongoing research. D.I. 381 at 4-5, 8-9. The

8

proposed form of injunction defines "ongoing research" broadly to include both the research *and* patient care activities Bruker has identified:

> "Ongoing Research" shall refer to experiments, studies, clinical trials, or grant projects by Existing Instrument Customers that involve the use of GeoMx consumables and that were in-progress before November 18, 2023. "Ongoing Research" shall also include the sale of consumables to Existing Instrument Customers that are currently using the GeoMx DSP Analysis Instrument in a Laboratory-Developed Test (LDT) consistent with FDA regulations for use in performing such LDT and where such LDT was validated and in use before November 18, 2023.

D.I. 381-1 at 3 (Proposed Permanent Injunction).

On its own terms, the injunction would permit Dr. Dulai of Northwestern University, a declarant and witness on behalf of Bruker, to continue his use of GeoMx; that work was in progress before November 18, 2023. There can be no real dispute that the injunction would also permit Dr. Mills, another Bruker witness, to continue to use GeoMx as part of the SMMART trials for cancer treatment. That work is also addressed in the injunction, because the SMMART trials involve a Laboratory-Developed Test (LDT) that was validated and in use before November 18, 2023. As such, Bruker may continue to sell GeoMx consumables to Dr. Mills and his lab, including in connection with the planned expansion of those trials in April 2025. *See* Bruker Br. at 5. The same is true of the work described in the various declarations submitted by Bruker (Bruker Br. at 6) describing ongoing research using GeoMx. No stay is necessary to support the public interest in continuing this research, because even under the injunction, this work can continue. Other courts in this district have declined to stay injunctions pending appeal in just such circumstances. *See Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, No. 21-cv-691-GBW, D.I. 710, at 4 (D. Del. Sept. 24, 2024) (declining to stay injunction where injunction was limited to "initiating *new* clinical trials or studies").

Bruker does not deny any of this. Nowhere does it show, or even suggest, that Drs. Dulai, Mills, or its other declarants could not continue to do the work they have described under the terms of 10x's proposed injunction, and 10x has already confirmed that this is the intent of the carveout. Bruker's brief does not identify a single specific test that these doctors could not continue to perform under the proposed injunction's carveout for ongoing research. Accordingly, Bruker's complaints that enforcing the injunction would disrupt this work are without merit and cannot support a stay.

### 2.    Bruker's Speculation About New Research Projects and Global Health Events Cannot Support Staying the Injunction

Left without facts showing existing research and patient care using GeoMx would be disrupted without a stay, Bruker provides only speculation to contend that enforcing the injunction would be against the public interest. Bruker Br. at 9-10. Bruker suggests that the injunction's carveout for ongoing research "seemingly excludes" additional work Dr. Dulai and other doctors might wish to perform, such as "follow-up research, replication studies, later rounds of clinical trials, efforts to apply the research to new patient populations, and modifications to project scope, as well as use for public health crises like the bird flu." *Id.* Again, Bruker identifies no specific research projects that would be excluded under the injunction's carveout for ongoing research. To the extent such work does not meet the carveout for ongoing research, because for example the work was not in progress as of that date, then (as discussed below) Bruker has identified no reason why GeoMx owners who are not in the process of completing research cannot stop infringing the patents and design future experiments around the newer, more powerful Visium offerings from 10x.

Similarly, Bruker cites testimony from the hearing regarding the form of injunction to contend that "10x's proposal also excludes potentially lifesaving medical research that started after

November 18, 2023—including a dozen projects discussed at the evidentiary hearing that could contribute to treatments for Alzheimer's, melanoma, and lung disease, among others." Bruker Br. at 10. But its showing is purely illusory, based on a single page of testimony from a Bruker employee who performed a keyword search in an NIH database and purported to have found 12 additional research projects using GeoMx that were "brand new" in 2024. D.I. 383-03 at 74:14-75:18. But Bruker presents nothing about these research projects other than its employee's say-so, such as evidence from the researchers themselves describing the project's use of GeoMx, when it began, and why the research could not be completed using 10x products. The only thing Bruker can say about these issues is that the project used the word "GeoMx." That is insufficient to support a stay.

### 3. Bruker Has Failed to Show That 10x Products Cannot Meet Future Research Needs

Bruker argues that its infringing GeoMx product "needs to be accessible if it is to make a difference in the next public health crisis," contending that no other products on the market (including Visium) "can serve as an acceptable substitute." Bruker Br. at 6-7. But Bruker's reliance on the specter of a global health crisis to insist that it should be free to continue to willfully infringe because its products *may* be useful in the future ignores the evidence showing that 10x's own, superior Visium product (which uses the same patented technology Bruker is unlawfully using) is more than capable of meeting the research needs of any future public health crisis.

As an initial matter, while Bruker contends that GeoMx research saved lives during the COVID-19 pandemic, Bruker's further contention that "none of it would have been possible without GeoMx" is without support. In fact, the available evidence shows that research utilizing 10x's Visium was at least as critical in responding to COVID-19, and more widely used in important research during that crisis than GeoMx. For example, a search of the bioRXiv preprint

server for biological research shows that Visium accounted for more than twice the amount of published research on COVID than did GeoMx,[3] and Bruker has not shown that Visium cannot fulfill the same central role in the next pandemic.

Bruker similarly misses the mark when it suggests that GeoMx is "CLIA approved for patient care" (Bruker Br. at 6) but that Visium is not (*id.* at 8 n.4) in arguing that Visium cannot substitute for GeoMx in CLIA-accredited labs like Dr. Mills' lab at OHSU. That misdescribes CLIA accreditation. GeoMx is not "CLIA approved," because CLIA is an accreditation for *laboratories,* not research tools. As the Centers for Medicare and Medicaid Services (CMS) explain, while the instruments used are reported in a CLIA application, the CLIA certification attaches to the laboratory based on the complexity of tests performed at the laboratory and their purpose, and the certification is not limited to the use of a specific instrument like GeoMx.[4] Accordingly, CLIA certified laboratories like Dr. Mills' lab at OHSU may continue to perform different tests, using different instruments such as 10x's Visium, so long as they are of the same complexity that characterized their accreditation within their approved specialties. Any changes in test methods only require notification to the accreditation program, not a new certificate. *See* 42 C.F.R. § 493.63 (2025) (stating that accredited labs must "[n]otify the accreditation program no later than 6 months after of any deletions or changes in test methodologies for any test or examination included in a specialty or subspecialty, or both, for which the laboratory has been issued a certificate of accreditation."). In fact, the evidence shows that Visium is already in current use in CLIA labs, including by Contract Research Organization (CRO) labs that provide services like

---

[3] *Compare* **Ex. 3** (107 articles concerning COVID research and Visium) with **Ex. 4** (44 articles concerning COVID research and GeoMx).

[4] **Ex. 5** (How to Obtain a CLIA Certificate) at 4 ("The purpose for which the test is conducted, not the test itself, determines whether a facility conducting testing is subject to the CLIA requirements.").

clinical patient trials to pharmaceutical companies.[5] So there is no bar to these researchers moving their work to Visium.

Bruker complains that only GeoMx offers high-plex protein analysis to support needed research, but that is not supported by the evidence. As 10x demonstrated in briefing and at the hearing regarding the form of the injunction, Visium now provides the capability to analyze more than 500 proteins along with RNA, and on the same slides.[6] Visium customers that wish to perform protein analysis with Visium can simply purchase antibodies to detect the proteins they want from established vendors. By doing so, customers can achieve greater than 500-plex in their protein tests, easily matching what GeoMx provides. Bruker's witnesses also did not rebut the substitutability of this newer Visium assay. Dr. Dulai admitted that he had not attempted to use the Visium assay that allows for protein detection on the same slide as RNA detection. **Ex. 2 (**1/23/25 Tr.) at 35:7-10. Dr. Mills did not know whether Visium was in use in CLIA labs around the country (*id.* at 52:12-16), and Dr. Mills had not attempted to get accredited to use Visium in his CLIA lab. *Id.* at 52:5-7.

Moreover, the unrebutted evidence shows that Visium is the superior product in comparison to GeoMx to meet any future research needs, including a public health crisis. The Visium platform now also includes a CytAssist instrument that matches GeoMx's capabilities, and provides a super high resolution Visium HD assay, which gives an order of magnitude better resolution than what Bruker's GeoMx can provide.[7]

---

[5] *See, e.g.,* https://www.seqmatic.com/services/clia-laboratory/ ("The SeqMatic CLIA/CAP laboratory provides a range of services for histopathology" and listing Visium at https://www.seqmatic.com/services/spatial-transcriptomics/).

[6] **Ex. 2 (**1/23/25 Tr.) at 94:7-95:9.

[7] **Ex. 2 (**1/23/25 Tr.) at 97:14-102:18; D.I. 381-06 (Plaintiffs' Exhibit C); and D.I. 381-07 (Plaintiffs' Exhibit D) (all describing Visium HD, including its single cell resolution); **Ex. 2 (**1/23/25 Tr.) at 84:14-84:20 and D.I. 381-04 (Plaintiffs' Exhibit A) at 52 (describing GeoMx as having a resolution of tens of cells to hundreds of cells).

This evidence shows that 10x's Visium is more than ready to meet any future research need that Bruker purports can be met only by GeoMx, and Bruker has failed to meet its burden to show that the public interest supports a stay. Finally, to the extent some true public health emergency gives rise to an unforeseen research need that might fall outside the injunction carveout, then Bruker can seek modification of the injunction from the Court.

### D.    The Balance of Equities Supports Enforcing the Injunction

The balance of the equities favors enforcing the injunction, now. Bruker contends that "the public interest of saving lives and developing new medical treatments dwarfs 10x's harm," because while a stay would be meaningful to patients and researchers, a "stay would make almost no difference to 10x's pocketbook." Bruker Br. at 10-11. But Bruker is wrong on both sides of the equation: its account of harm to research is unfounded and speculative, and its hand-waving assurances that 10x will not be harmed by a stay ignores that the harm to 10x absent an injunction would be irreparable, as this Court has already found.

As discussed above, the proposed form of injunction already addresses the legitimate current and future research needs of existing customers, by exempting all ongoing research that commenced prior to the jury verdict from the terms of the injunction. Bruker's speculation about future research projects is just that – speculation – and cannot meet Bruker's burden to show harm absent a stay. Nor has Bruker rebutted 10x's showing that 10x's superior Visium product is a more than suitable substitute for any future research and patient care needs. Bruker again suggests that its current GeoMx revenue "comes almost entirely from scientists using high-plex protein analysis" (Bruker Br. at 11), but its contention that scientists could not perform high-plex protein analysis without GeoMx is unfounded. As demonstrated at the hearing by the testimony of 10x's Dr. Peter Smibert, Visium currently has the capability to detect proteins at the *same time*, on the *same tissue*

14

*slide* as the RNA assay.[8] Bruker suggests that this capability requires "modification" of Visium as a "DIY" project beyond the capabilities of most researchers (Bruker Br. at 9), but the evidence shows that is untrue. Visium customers are not required to invent or modify anything to perform protein analysis with Visium; they can simply purchase antibodies to detect the proteins they want from established vendors. By doing so, customers can achieve greater than 500-plex in their protein test. Bruker has simply not shown that the impact on researchers and patients from enforcing the injunction now favors a stay.

While it overestimates the impacts of the injunction on its customers, Bruker also wrongly undervalues the harm to 10x from a stay of injunction. Bruker assures the Court that its remaining GeoMx sales are small, and primarily relate to high-plex protein analyses, so any harm to 10x from a stay is limited, since the dollar value of its lost sales to GeoMx is comparatively small, and in an area where Visium does not compete. Bruker is wrong on both counts. There is more harm to 10x from Bruker's continued willful infringement than lost revenue and sales. As the Court found, "10x has also shown that it has experienced harm to its reputation":

> Having been careful not to license its technology, 10x suffers when it proclaims itself as an innovator in spatial genomics but a competitor is using the same innovative, patented technology. *See id.* (stating that a company's "reputation as an innovator will certainly be damaged if customers found the same innovations appearing in competitors' products") (internal quotation marks omitted). NanoString disputes 10x's contentions of harm to its reputation, arguing that 10x has harmed its own reputation by interfering with NanoString's relationships with its customers and threatening NanoString's customers with litigation for patent infringement. But this amounts to a backhanded concession of 10x's argument about harm to its reputation. 10x would have no reason to threaten litigation against potential customers if NanoString had not sold those entities GeoMx products that infringed upon 10x's patents.

D.I. 370 at 34.

---

[8] **Ex. 2 (**1/23/25 Tr.) at 94:7-95:9.

Such reputational harm is irreparable: 10x cannot be adequately compensated for it by money damages. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."). These harms to 10x will only continue to accrue if a stay is granted. The continued reputational harm to 10x from Bruker's continued willful infringement will be particularly pronounced given that Bruker's apparent remaining business for GeoMx – high-plex protein analysis – is exactly where 10x has focused its own investment, enabling new high-plex protein analysis capabilities for Visium that it is now introducing to the research community. As the Court has noted, "10x suffers when it proclaims itself as an innovator in spatial genomics but a competitor is using the same innovative, patented technology."  D.I. 370 at 34. That is the harm threatened here if the injunction is stayed.

## III.    CONCLUSION

None of the factors to be considered in assessing the appropriateness of a stay of injunction favors a stay here. 10x respectfully requests that Bruker's motion for a stay of the Court's injunction be denied, and the proposed form of injunction requested by 10x should be entered.

Respectfully Submitted,

*Of Counsel:*                                          RICHARDS, LAYTON & FINGER, P.A.

TENSEGRITY LAW GROUP LLP            */s/ Jason J. Rawnsley*
Matthew Powers                                    Frederick L. Cottrell, III (#2555)
Paul Ehrlich                                          Jason J. Rawnsley (#5379)
Stefani Smith                                        Alexandra M. Ewing (#6407)
Robert Gerrity                                      Gabriela Z. Monasterio (#7240)
Li Shen                                                920 North King Street
555 Twin Dolphin Drive                         Wilmington, DE 19801
Suite 650                                            (302) 651-7700
Redwood Shores, CA 94065                    cottrell@rlf.com
Tel: (650) 802-6000                              rawnsley@rlf.com
                                                        ewing@rlf.com
Azra M. Hadzimehmedovic                     monasterio@rlf.com
Aaron M. Nathan
Samantha Jameson                             *Attorneys for Plaintiffs*
Ronald J. Pabis
Kiley White
Joanna R. Schacter
1676 International Drive
Suite 910
McLean, VA 22102-3848
Tel: (650) 802-6000

10x_NSTG_Service@tensegritylawgroup.com

Dated: February 7, 2025